1

1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2    ------------------------------x
                                        21-CR-64(KAM)
3    UNITED STATES OF AMERICA,
                                        United States Courthouse
4              Plaintiff,               Brooklyn, New York

5              -against-                May 5, 2022
                                        10:00 a.m.
6    LARBY AMIROUCHE,

7              Defendant.

8    ------------------------------x

9              TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
        PARTIES PRESENT VIA TELECONFERENCE AND/OR VIDEOCONFERENCE
10              BEFORE THE HONORABLE KIYO A. MATSUMOTO
                     UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES

13   For the Government:      UNITED STATES ATTORNEY'S OFFICE
                              Eastern District of New York
14                            271 Cadman Plaza East
                              Brooklyn, New York 11201
15                            BY:  DAVID C. PITLUCK, ESQ.
                              Assistant United States Attorney
16

17   For the Defendant:      KUSHNER LAW GROUP, PLLC
                              16 Court Street - Suite 36th Floor
18                            Brooklyn, New York 11241
                              BY:  MICHAEL PETER KUSHNER, ESQ.
19

20   ALSO PRESENT:           RYANN CARR, INTERNAL REVENUE SERVICE

21

22   Court Reporter:         LINDA D. DANELCZYK, RPR, CSR, CCR
                              Phone:  718-613-2330
                              Fax:    718-804-2712
23                            Email:  LindaDan226@gmail.com

24

25   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.

PROCEEDINGS                                        2

1              (In open court.)

2              THE COURTROOM DEPUTY:  Good morning, everyone.

3              This is criminal cause for a pleading.  Docket

4     21-CR-64.  U.S.A. versus Larby Amirouche.

5              Will the government's attorney please state your

6     appearance.

7              MR. PITLUCK:  Good morning, Your Honor.  For the

8     United States, David Pitluck.  Joining me on the phone, not on

9     video, is Special Agent Ryann Carr from the Internal Revenue

10    Service Criminal Investigations.

11             Special Agent Carr may have to drop off for a

12    work-related event, but she wanted to be here and note her

13    appearance.

14             THE COURT:  All right, thank you.

15             THE COURTROOM DEPUTY:  And on behalf of the

16    defendant?

17             MR. KUSHNER:  Good morning, Your Honor.  Michael

18    Kushner on behalf of the defendant Larby Amirouche, who is

19    here by video as well.

20             THE COURT:  All right, good morning, Mr. Amirouche.

21             Sir, do you speak and understand English without any

22    difficulty?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Please raise your right hand and take an

25    oath to tell the truth.

PROCEEDINGS                                    3

1                (Whereupon, **LARBY AMIROUCHE** was sworn/affirmed.)

2           THE DEFENDANT:  Yes, I do.

3           THE COURTROOM DEPUTY:  Thank you.

4           THE COURT:  Thank you.

5           Mr. Amirouche, before I decide whether to accept

6    your guilty plea, there are a number of questions I must ask

7    you in order to assure myself that your plea is valid.

8           So if you do not understand my question, or if you

9    need me to repeat it or clarify it, please let me know.  All

10   right, sir?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Do you understand that because you've

13   taken an oath to tell the truth, your answers to my questions

14   will be subject to penalties of perjury, or making false

15   statements if you do not answer truthfully?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Sir, are you a United States citizen?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  All right.  What is your full legal

20   name, please?

21          THE DEFENDANT:  Larby Said Amirouche.

22          THE COURT:  How do you spell your middle name, sir?

23          THE DEFENDANT:  S-A-I-D.

24          THE COURT:  Okay, thank you.

25          And, Mr. Amirouche, how old are you?

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

1          THE DEFENDANT:  Thirty-two.

2          THE COURT:  Would you please tell me what schooling

3    or education you've had?

4          THE DEFENDANT:  Some college, a year and a half at

5    Purdue University.

6          THE COURT:  All right, thank you.

7          And do you have any difficulty reading, writing,

8    speaking or understanding English?

9          THE DEFENDANT:  No difficulties, Your Honor.

10          THE COURT:  Mr. Kushner, have you detected any

11    difficulty on your client's part with reading, writing,

12    speaking or understanding the English language?

13          MR. KUSHNER:  No, Your Honor.

14          THE COURT:  Mr. Amirouche, are you presently or have

15    you recently been under the care of any physician or a

16    psychiatrist?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Would you tell me how recently you've

19    had a visit with one of your health care providers, a

20    physician or a psychiatrist?

21          THE DEFENDANT:  Yes, within the last two months.

22          THE COURT:  And were you being treated for a

23    physical or a mental health issue?

24          THE DEFENDANT:  Mental health, Your Honor.

25          THE COURT:  All right.

PROCEEDINGS                          5

1            Are you prescribed any medication?

2            THE DEFENDANT:  Yes, Your Honor, I'm prescribed

3    Asenapine.  It's an antipsychotic for bipolar disorder.

4            THE COURT:  Asenapine?

5            THE DEFENDANT:  A-S-E-N-A-P-I-N-E.  Asenapine.

6            And Mydayis.  It's M-Y-D-A-Y-I-S.  It's for ADHD.

7            And also Lamotrigine.  It's L-A-M-O-T-R-I-G-I-N-E.

8    And it's also for bipolar disorder.  It's a mood stabilizer.

9            THE COURT:  It's also for what, sir?

10           THE DEFENDANT:  Bipolar disorder.

11           THE COURT:  All right, sir.

12           Now, do any of these -- when did you last take these

13   medications?

14           THE DEFENDANT:  I take them everyday.  I took them

15   this morning, Your Honor.

16           THE COURT:  All right.  And do any of these

17   medications affect your ability to think clearly?

18           THE DEFENDANT:  No, Your Honor.

19           THE COURT:  Do any of these medications affect your

20   ability to understand what is going on around you?

21           THE DEFENDANT:  No, Your Honor.

22           THE COURT:  Do any of these medications affect your

23   ability to make important decisions?

24           THE DEFENDANT:  No, Your Honor.

25           THE COURT:  All right.  Other than these three

PROCEEDINGS                                          6

1   medications, have you taken any other medicine or pills?

2              THE DEFENDANT:  I take a multivitamin, fish oil.

3              THE COURT:  All right.  And I take it those

4   multivitamins and fish oil do not affect your ability, your

5   mental abilities; is that correct?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  And have you consumed any alcoholic

8   beverages or narcotic drugs in the past 24 hours?

9              THE DEFENDANT:  No, Your Honor.

10              THE COURT:  Have you -- other than the mental health

11   treatment that you said you last received two months ago, have

12   you had any hospitalizations or treatment for any drug or

13   alcohol addiction, or any other mental health problems?

14              THE DEFENDANT:  I've been hospitalized before for

15   bipolar disorder, but not recently.

16              THE COURT:  Recently, sir?  How recently?

17              THE DEFENDANT:  Not recently.  Not at all recently.

18              THE COURT:  All right.  How long ago were you

19   hospitalized for bipolar disorder, sir?

20              THE DEFENDANT:  March of last year.  So about a

21   month after the indictment, Your Honor.

22              THE COURT:  All right.  Thank you.

23              Have you been treated for any narcotic or alcohol

24   addictions?

25              THE DEFENDANT:  No, Your Honor.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                          7

1          THE COURT:  Do you feel that as your sit here today

2  that your mind is clear?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Do you understand what is going on in

5  this proceeding today and why you are here?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Mr. Kushner, have you discussed the

8  matter of pleading guilty with your client?

9          MR. KUSHNER:  Yes, Your Honor.

10          THE COURT:  Does he understand the rights that he

11  would be waiving if he does plead guilty?

12          MR. KUSHNER:  Absolutely, Your Honor, yes.

13          THE COURT:  Do you believe that Mr. Amirouche is

14  capable of understanding the nature of the proceedings we are

15  holding right now?

16          MR. KUSHNER:  Absolutely, Your Honor, yes.

17          THE COURT:  Do you have any doubt as to whether or

18  not Mr. Amirouche is competent to plead at this time?

19          MR. KUSHNER:  No.

20          THE COURT:  Have you advised Mr. Amirouche of the

21  maximum and minimum sentence and fine that could be imposed if

22  he does plead guilty today?

23          MR. KUSHNER:  Yes, Your Honor.

24          THE COURT:  And have you also discussed with him the

25  advisory nature of the sentence guidelines, and the statutory

PROCEEDINGS                               8

1    sentencing factors that I would consider in determining his

2    sentence?

3              MR. KUSHNER:  At length, Your Honor, yes, we've

4    discussed those.

5              THE COURT:  Are you satisfied that he understands

6    the penalties that he would face if he does plead guilty?

7              MR. KUSHNER:  A hundred percent, yes, Your Honor.

8              THE COURT:  Now, Mr. Amirouche, I understand that an

9    indictment was returned in this case, but that you are

10   pleading guilty to a superseding information; is that correct?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  And the superseding information has the

13   Docket Number 21-CR-64, and charges you with a single count of

14   conspiracy to commit bank fraud.

15             Sir, do you understand the charge in the superseding

16   information?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  All right.  Just to briefly summarize,

19   it charges that between January 2012 and April 2016, within

20   the Eastern District of New York and elsewhere, you, together

21   with others, knowingly and intentionally conspired to execute

22   a scheme, an artifice to defraud one or more financial

23   institutions, the deposits of which were insured by the

24   Federal Deposit Insurance Corporation.

25             And listed there are four different financial

PROCEEDINGS                                9

1    institutions whose identities are known to the United States

2    Attorney.

3              The scheme or artifice to defraud was employed to

4    obtain money, funds, credits, assets, and other property under

5    the custody and control of such financial institutions by

6    means of one or more false -- materially false and fraudulent

7    pretense, representations or promises in violation of 18 U.S.

8    Code, Section 1344.

9              Now, sir, have you received a copy of the

10   superseding information?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  And do you understand this charge, sir?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  Do you also understand that the

15   government is seeking criminal forfeiture of any proceeds or

16   property used to commit the offense in the information?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  And do you also understand that the

19   government may seek to substitute assets if they cannot locate

20   the assets that were used to either commit the offense or were

21   proceeds of the offense?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  Mr. Kushner, have you received and

24   reviewed the superseding information with your client?

25             MR. KUSHNER:  Yes, Your Honor.

PROCEEDINGS                                    10

1      THE COURT:  And are you satisfied that your client

2  does understand the charges in the superseding information?

3      MR. KUSHNER:  Yes, Your Honor.

4      THE COURT:  Mr. Amirouche, as you know, you have the

5  right to counsel and you have representation by Mr. Kushner in

6  this case.  You have the right to counsel throughout the

7  entire proceedings in this case.

8      Are you satisfied with your lawyer?

9      THE DEFENDANT:  Yes, Your Honor.

10      THE COURT:  Have you had sufficient time to review

11  the charges, your rights, and the consequences of your plea

12  with your lawyer?

13      THE DEFENDANT:  Yes, Your Honor.

14      THE COURT:  Now, sir, you have the constitutional

15  right to be charged by an indictment of the grand jury, but

16  you may waive or give up that right and consent to being

17  charged by an information of the United States Attorney.

18      Do you understand?

19      THE DEFENDANT:  Yes, Your Honor.

20      THE COURT:  Although there has been an indictment in

21  this case, today you are pleading guilty, my understanding is

22  that you are intending to plead guilty to the an information.

23      The information sets forth the felony charge of

24  conspiracy to commit bank fraud.  This information was brought

25  against you by the United States Attorney.  Unless you waive

PROCEEDINGS                                    11

1    your right to be indicted, you may not be charged with a

2    felony under federal law unless a grand jury finds, by return

3    of an indictment, that there's probable cause to believe that

4    a crime has been committed and that you committed that crime.

5    Specifically here it's bank fraud.

6            If you do not waive your right to be indicted, the

7    government may present the case to the grand jury and request

8    that the grand jury indict you.

9            Are you understanding so far, sir?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  All right.  A grand jury is composed of

12   at least 16 and not more than 23 individuals who are citizens

13   of the Eastern District of New York.  They are not court

14   employees or employees of the U.S. Attorney's Office.  They're

15   citizens who live within the Eastern District.  At least 12

16   grand jurors must find that there's probable cause to believe

17   that you committed a crime, the crime with which you are

18   charged, before you may be indicted.

19           The grand jury might or might not vote to indict

20   you.  Do you understand?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  If you give up your right to be indicted

23   by the grand jury, this case will proceed against you on the

24   U.S. Attorney's information just as though you have been

25   indicted.

PROCEEDINGS                                    12

1          Do you understand?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Have you discussed the matter of waiving

4    your right to be indicted by a grand jury and to proceed by

5    way of information with your attorney?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Mr. Kushner, are you convinced that

8    Mr. Amirouche understands his right to be indicted by a grand

9    jury?

10         MR. KUSHNER:  Yes, Your Honor.

11         THE COURT:  Mr. Amirouche, do you wish to give up

12   your right to be indicted by a grand jury and to proceed in

13   this prosecution by way of the U.S. Attorney's information?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  Did anyone threaten you or make promises

16   that caused you to waive your right to be indicted?

17         THE DEFENDANT:  No, Your Honor.

18         THE COURT:  And you do wish to waive your right; is

19   that correct?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  Now, sir, I have in front of me a

22   document that's entitled "Waiver of Indictment".  I'd like to

23   ask you whether you have reviewed the waiver of indictment

24   with your lawyer?

25         THE DEFENDANT:  Yes, Your Honor.

PROCEEDINGS                          13

1          THE COURT:  And did you have sufficient time to ask

2     your lawyer about this procedure of waiving indictment, sir?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  There's a signature above the words

5     "defendant's signature".

6          Do you recall signing a document entitled "Waiver of

7     Indictment"?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  And by signing this document, you intend

10    to indicate that you both understand what you were signing and

11    you understand the import or the affect of signing a waiver of

12    indictment?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  I find that based on Mr. Amirouche's

15    answers, that he had knowingly and voluntarily waived his

16    right to be indicted by a grand jury.  I will accept his

17    waiver of indictment.  It is knowing and voluntary.  And I

18    will execute the waiver.

19         Now, sir, do you want me to discuss any further the

20    charge in the superseding information?

21         THE DEFENDANT:  No, Your Honor.

22         THE COURT:  All right.

23         You have a right to plead not guilty to this

24    information.  Do you understand?

25         THE DEFENDANT:  Yes, Your Honor.

PROCEEDINGS                                    14

1          THE COURT:  And is it your intention to plead guilty

2     to the superseding information?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  If you were to plead guilty to the

5     superseding information, under the United States Constitution

6     and laws, you would be entitled to a speedy and public trial

7     by a jury with the assistance of your lawyer on the charges

8     contained in the superseding information 21-CR-64.

9          Do you understand?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  At the trial you would be presumed to be

12     innocent, and the government would have to overcome that

13     presumption and prove you guilty by competent evidence and

14     beyond a reasonable doubt as to each and every element of the

15     offense charged.  You would have no burden to prove that you

16     are innocent.  If the government failed to prove you guilty

17     beyond a reasonable doubt, the jury would have the duty to

18     find you not guilty.

19          Do you understand?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  And that is why sometimes in a criminal

22     case a jury will return a not guilty verdict, even if the

23     jurors may believe that the defendant on trial probably

24     committed the offense charged.

25          When a jury returns a not guilty verdict, they're

PROCEEDINGS                                    15

1    not necessarily finding that the defendant is innocent, but

2    rather they may not have about been convinced beyond a

3    reasonable doubt that the defendant is guilty.

4              Do you understand the difference?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  During the trial, the witnesses for the

7    government would have to come to court and testify in your

8    presence.  Your attorney would have the right to cross-examine

9    those witnesses and to object to any of the evidence offered

10   against you.  And although you would have the right, you would

11   have no obligation to present evidence and to compel witnesses

12   to come to court and testify in your defense.

13             Do you understand?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  In addition, sir, at the trial, although

16   you would have the right to testify if you chose to do so, you

17   could not be required to testify because the United States

18   Constitution protects your right not to incriminate yourself.

19   If you did decide to proceed to trial and decided not to

20   testify, I would instruct the jury that they could not hold

21   that against you, or even discuss that fact during their

22   deliberations.

23             Do you understand?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  Mr. Amirouche, if you do plead guilty,

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

1   and I accept your guilty plea, you will be giving up your

2   Constitutional right to a jury trial and all the other rights

3   I've just described.  There will be no further trial of any

4   kind, and no right to appeal from the judgment of guilt

5   entered against you.  You will be convicted based upon your

6   words during this proceeding that we are holding right now,

7   and the government will be free of any obligation to prove

8   anything about what you did in connection with the charges in

9   the information.

10          Do you understand?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  If you did proceed to trial, and were

13   convicted by the jury's verdict, you would have the right to

14   ask the Court of Appeals to review the legality of all of the

15   proceedings leading up to your conviction.

16          But when you enter a guilty plea, what you are doing

17   is substituting your own words for the jury's verdict.  And

18   when you do that, you give up your right to bring an appeal or

19   other challenge to the judgment of guilt entered against you.

20          Do you understand?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  If you do plead guilty, I will have to

23   ask you questions which you will have to answer truthfully

24   under oath in order to satisfy myself that are you in fact

25   guilty of the charge to which you seek to plead guilty.  You

1   will have to answer my questions truthfully and acknowledge

2   your guilt.  And in that process, you will be giving up your

3   right not to incriminate yourself.

4                Do you understand?

5                THE DEFENDANT:  Yes, Your Honor.

6                THE COURT:  Are you willing to give up your right to

7   a trial, a jury trial, and all the other rights I've just

8   described?

9                THE DEFENDANT:  Yes, Your Honor.

10               THE COURT:  Now have you entered into an agreement

11  with the government regarding your plea?

12               THE DEFENDANT:  Yes, Your Honor.

13               THE COURT:  All right, let me just make sure I have

14  a copy of it.

15               Did you have an opportunity to review your plea

16  agreement with your lawyer?

17               THE DEFENDANT:  Yes, Your Honor.

18               THE COURT:  All right.  And I just want to make sure

19  I have that plea agreement.  I don't think I do.

20               Is there a reason I don't have the plea agreement?

21               MR. PITLUCK:  Your Honor, I have a copy up on my

22  screen.  Can I email it to the Court?

23               THE COURT:  Just one moment.

24               I think that we had it and it was a draft and we saw

25  an error and it was going to be corrected.  I don't think we

PROCEEDINGS                                    18

1   have the corrected version.  There was just a miscite to a --

2   to a provision in the criminal code.

3              MR. PITLUCK:  Yes, Your Honor.  And I think it was

4   in the sentencing guideline, there was sophisticated means

5   section.  It is --

6              THE COURT:  Paragraph -- was it in paragraph 1 or

7   was it paragraph --

8              MR. PITLUCK:  It was --

9              THE COURT:  It's paragraph 2, and the sophisticated

10  means was miscited.  It should be 2B1.1(b)(10)(c), correct?

11             MR. PITLUCK:  Yes.

12             THE COURT:  All right.  And that has been corrected?

13             MR. PITLUCK:  Your Honor, given that we were

14  exchanging signed copies virtually, I thought we would make a

15  note of it on the record.

16             I will -- I'll print out a version, initial the

17  change, send it to Mr. Kushner so that he and Mr. Amirouche

18  can initial the change, but I think given our discussion on

19  the -- on this proceeding, we can memorialize that.  I think

20  it's fine to circulate to the Court afterwards, unless you

21  have an issue with that.

22             THE COURT:  All right, Mr. Amirouche and

23  Mr. Kushner, there was a small typo in the agreement that you

24  entered, the parties entered.

25             I have before me a plea agreement with signatures by

1    Mr. Pitluck, Mr. Gopstein, Mr. Amirouche, and Mr. Kushner.

2              Mr. Amirouche, do you recall signing a document

3    entitled "Plea Agreement"?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  And did you have a chance to review the

6    agreement with your lawyer before you signed it?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  And do you understand what this

9    agreement provides?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  And by signing this agreement, do you

12   intend to indicate you both understand the terms of the

13   agreement and that you agree to those terms?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  All right, well, I would like to review

16   this agreement with you further.

17             The penalties that you face are set forth at

18   paragraph 1 of your plea agreement.  I don't know if you have

19   a copy, sir.  Do you?

20             THE DEFENDANT:  Yes, Your Honor, I have it open.

21             THE COURT:  All right.

22             For a violation of 18 United States Code,

23   Section 371, you face a maximum term of imprisonment of five

24   years, and a minimum term of imprisonment -- there is no

25   minimum term.

PROCEEDINGS                                    20

1          You face a maximum supervised release term of three

2     years, which would follow any term of imprisonment.  During

3     supervised release, you will have to comply with all the

4     conditions of your supervised release.

5          And if you don't, you could be found in violation of

6     supervised release, and could be sentenced back to prison for

7     up to two years without any credit for time that you may

8     already serve in prison as a result of this conviction, and

9     without any credit for time you may have already served on

10    supervised release.

11         Do you understand?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  In addition, sir, you face a maximum

14    fine of either $250,000, or twice the gross gain or loss that

15    resulted from the offense conduct, whichever is greater.

16         Do you understand?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  You will also have to pay restitution in

19    the full amount to each victim for his or her losses.

20         Does the government have an estimated loss amount or

21    estimated restitution amount?

22         MR. PITLUCK:  Your Honor, we don't have an estimated

23    restitution amount at this point because the victims in this

24    case, the banks, have not provided loss affidavits.

25         At this time, as the Court is aware in instances

PROCEEDINGS                                    21

1    like this where financial institutions are the victims, it's

2    often difficult to get them to submit loss affidavits.  But as

3    we noted in the plea agreement, the losses here exceed

4    three-and-a-half-million dollars.  It's just a matter of

5    whether the banks will assert claims to those losses.

6              THE COURT:  All right.  So, Mr. Amirouche, the

7    government has estimated that your conduct caused losses of

8    three-and-a-half-million dollars at least, and that is going

9    to be factored into calculating your advisory guidelines.

10             Do you understand?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  And in addition, those loss amounts, to

13   the extent they are not been recouped, are going to be part of

14   your restitution obligation to those banks.

15             Do you understand?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  In addition, sir, you face a mandatory

18   100-dollar special assessment, which is due under the criminal

19   code.  And you've also agreed, as we talked about earlier, to

20   a forfeiture of any proceeds or instrumentalities of your

21   offense.

22             Do you understand?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  Now under the Sentencing Reform Act of

25   1984, the United States Sentencing Commission issued

1    guidelines for judges to consult in determining a sentence in

2    a criminal case.  The United States Supreme Court has held

3    that those guidelines are not mandatory but rather advisory.

4    I must consult those guidelines, as well as factors set forth

5    in the criminal code at 18 U.S. Code, Section 3553 to

6    determine your sentence.

7         Your agreement at paragraph 2 advises you that the

8    guidelines are not mandatory.  It also sets forth at

9    paragraph 2 the government's estimated guidelines offense

10   level.

11        So if you have it handy, or if you don't, I'll

12   review it with you.

13        For a violation of -- we would apply guideline

14   2B1.1(a)(2), which provides for a base offense level of 6.

15   And because the loss exceeds $3.5 million, guideline

16   2B1.1(b)(1)(J) provides an 18-point enhancement.  So you go

17   from 6 plus 18.

18        And in addition, because the offense involved mass

19   marketing, two points are added under guideline

20   2B1.1(b)(2)(A)(ii).

21        You also used sophisticated means under guideline

22   2B1.1(b)(10)(c).  And I think we can all agree that that is

23   the proper subsection --

24        MR. KUSHNER:  Yes, Your Honor.

25        THE COURT:  -- that should be applied.

PROCEEDINGS                                           23

1          Correct, Mr. Kushner?

2          MR. KUSHNER:  Yes, Your Honor.

3          THE COURT:  All right.  In addition, sir, you are

4    deemed to be an organizer or leader of a criminal -- of the

5    criminal activity that involved five or more participants.

6    You also then receive 4 more points.  That results in a total

7    offense level of 32.

8              However, because you are pleading guilty, you

9    receive a two-level reduction for acceptance of

10   responsibility, which would bring you back down, your range,

11   to 30, with a range of imprisonment between 97 and 121 months,

12   assuming you are in Criminal History Category I.

13             In addition, you'll receive an additional one level,

14   because you're pleading guilty within the time prescribed by

15   the government in your agreement, which is today, May 5th.

16   That brings you down to a level 29, which results in a

17   guideline range in prison between 87 to 108 months, again,

18   assuming you're in Criminal History Category I.

19             However, there is a statutory maximum that requires

20   that you not receive a sentence of more than five years under

21   18 U.S. Code, Section 371.  So basically the maximum sentence

22   that you could receive is 60 months.

23             Do you understand?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  And have you discussed these

PROCEEDINGS                          24

1    calculations with your lawyer, sir?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  And with regard to criminal history

4    category, that is something that the Probation Department will

5    be looking into.  The government right now believes that you

6    are estimated to be in Criminal History Category I, which

7    means no prior criminal convictions.  But during the

8    investigation, the Probation Department oftentimes finds other

9    convictions or issues that might add or bring you outside of

10   the Criminal History Category I, which has an affect of

11   increasing your sentencing exposure up to 60 months.

12             Do you understand?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  Mr. Kushner, have you discussed all of

15   these calculations and estimates with your client?

16             MR. KUSHNER:  Yes, Your Honor.

17             THE COURT:  Now I won't be sentencing you,

18   Mr. Amirouche, until after the Probation Department prepares

19   that presentence investigation report, which is a report that

20   tells me about you, your health, your mental health, your

21   family circumstances, your education, your role in the

22   offense, the extent to which victims have lost money.

23             It will also tell me about your prior criminal

24   history and other factors that will factor into my sentencing

25   decision.  Another issue is, you know, family obligations, et

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                              25

1    cetera.

2         You will have an opportunity to object to any facts

3    or to correct any facts reported in the presentence report,

4    and the government will also have an opportunity to respond.

5         Once I receive all of those submissions regarding

6    your background in the PSR, presentence report, I will then

7    independently calculate your advisory guidelines.  And once I

8    do that, I have the ability to impose a sentence that is more

9    severe or less severe than that recommended by the guidelines,

10   so long as I do not exceed 60 months maximum.

11        Do you understand?

12        THE DEFENDANT:  Yes, Your Honor.

13        THE COURT:  Now let me also tell you that in

14   paragraph 4 of your agreement, you've agreed not to file an

15   appeal or otherwise challenge your sentence if I impose a

16   sentence of 60 months or less.

17        Do you understand that you are giving up your right

18   to bring an appeal regarding your sentence if I impose a

19   sentence of five years or less?

20        THE DEFENDANT:  Yes, Your Honor.

21        THE COURT:  Have you discussed this provision with

22   your lawyer?

23        THE DEFENDANT:  Yes, Your Honor.

24        THE COURT:  All right, sir, in addition, under the

25   federal criminal justice system, parole has been abolished,

PROCEEDINGS                                    26

1   and if you are sentenced to prison, you will not be released

2   on parole.

3           Do you understand?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  Now, Mr. Kushner, do you agree generally

6   with the government's estimated guidelines offense

7   calculations?

8           MR. KUSHNER:  Yes, Judge.

9           THE COURT:  So, Mr. Amirouche, even though your

10  lawyer agrees generally with the government's estimated

11  guidelines calculations, those calculations could be

12  incorrect.  And in any event, once I calculate your

13  guidelines, as I said, I have the ability to impose a more or

14  less severe sentence than that recommended by the guidelines.

15          Do you understand?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Do you also understand that if you

18  receive a sentence that is not what you hoped for or expect,

19  that that will not be a basis for you to withdraw you guilty

20  plea.

21          Do you understand?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Are you ready to plead at this time,

24  sir?

25          THE DEFENDANT:  Yes, Your Honor.

PROCEEDINGS                        27

1           THE COURT:  Do you have any questions that you'd

2      like to ask me or your lawyer before you proceed?

3           THE DEFENDANT:  No, Your Honor.

4           THE COURT:  Mr. Kushner, do you know of any reason

5      why Mr. Amirouche should not plead guilty?

6           MR. KUSHNER:  No, Judge.

7           THE COURT:  Are you aware of any viable legal

8      defenses that are causing you to counsel him not to the

9      proceed with his guilty plea?

10          MR. KUSHNER:  No, Your Honor.

11          THE COURT:  Mr. Amirouche, what is your plea, guilty

12     or not guilty?

13          THE DEFENDANT:  Guilty, Your Honor.

14          THE COURT:  And, sir, are you making the plea of

15     guilty voluntarily and of your own free will?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Did anyone threaten you or force you to

18     plead guilty?

19          THE DEFENDANT:  No, Your Honor.

20          THE COURT:  Other than the agreement that you made

21     with the government, did anyone make any promise to you that

22     caused you to plead guilty?

23          THE DEFENDANT:  No, Your Honor.

24          THE COURT:  Did anyone make any promise to you about

25     what your sentence will be?

PROCEEDINGS                                    28

1          THE DEFENDANT:  No, Your Honor.

2          THE COURT:  All right, sir, so what I'll ask you to

3  do at this time is to tell me in your own words what you did

4  in relation to the charge in the superseding information,

5  conspiracy to commit bank fraud between January 2012 and

6  April 2016.

7          THE DEFENDANT:  Together with others I agreed to

8  file false documents with financial institutions in order to

9  obtain money and property from those banks.  The scheme took

10 place between 2012 to 2016, Your Honor.

11         THE COURT:  And did you know that the submission of

12 false statements in connection with your submissions to the

13 banks contained false information?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  And did you know that if you were to

16 submit those false statements to the bank, the bank would be

17 likely to extend or make available funds to you and/or your

18 coconspirators?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  And you said that you engaged in this

21 activity between January 2012 and April 2016; is that correct?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  And when you made this agreement with

24 others to engage in this fraudulent activity with regard to

25 the bank, did you know that you were making an illegal

1   agreement?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Now can you tell me whether you engaged

4   in any activity involving the Eastern District of New York;

5   that is Brooklyn, Queens, Long Island and Staten Island?

6          MR. PITLUCK:  Your Honor, I apologize.  I can

7   proffer that based on the government's investigation, at least

8   one of the financial institutions is headquartered in the

9   Eastern District of New York on Long Island, and that payments

10  flowed through the Eastern District of New York.

11         I don't know if that's entirely visible to

12  Mr. Amirouche, but there's certainly venue by a preponderance,

13  and I don't believe that defense objects to that.

14         MR. KUSHNER:  That's accurate, Judge.

15         THE COURT:  I'm sorry, sir, what did you say,

16  Mr. Kushner?

17         MR. KUSHNER:  I said that that's accurate, Your

18  Honor.  We do not object to the venue being lain within the

19  Eastern District of New York based upon the preponderance of

20  the evidence.

21         THE COURT:  All right.  Basically, Mr. Amirouche, I

22  don't know if you've talked about venue, but some or part of

23  the crime or the offense or the proceeds of the offense had to

24  flow through the Eastern District of New York.  And

25  Mr. Pitluck has just described that one of the victim banks is

PROCEEDINGS                                          30

1  headquartered here in the Eastern District of New York, and

2  some of the funds flowed through this district that were part

3  of the scheme in which you engaged.

4         Do you have any dispute with that?

5         THE DEFENDANT:  No, Your Honor.

6         THE COURT:  All right.  Mr. Pitluck, is there

7  anything else you'd like to hear from Mr. Amirouche regarding

8  his allocution?

9         MR. PITLUCK:  No, Your Honor.  I believe the Court's

10 time set out the time frame at the beginning, and I think

11 Mr. Amirouche has allocuted to that.  So the allocution is

12 sufficient for our purposes.

13        THE COURT:  All right.  Mr. Kushner, is there

14 anything you would like to add to your client's allocution?

15        MR. KUSHNER:  No, Your Honor.

16        THE COURT:  All right.

17        Mr. Amirouche, based upon the information that

18 you've provided, I find that you are acting voluntarily.  That

19 you fully understand your rights and the consequences of your

20 plea.  And that there is a factual basis for your plea of

21 guilty to the sole count in the superceding information.  I

22 accept your plea of guilty to that charge.

23        The conditions of bail remain.  And we have

24 scheduled your sentencing date for August 29th, 2022, at

25 11:00 a.m.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                    31

1          The parties are to follow Federal Rule of Criminal

2     Procedure 32 regarding any objections or corrections to the

3     presentence report.  They need not be filed on the docket, but

4     they should be served on opposing counsel, the government, and

5     the Court.  I'm sorry, opposing counsel, probation and the

6     Court.

7          The defense should submit any objections to the PSR,

8     or corrections, within two weeks of receipt of the PSR.  And

9     the government should respond one week thereafter.

10         It seems that Mr. Kushner was shaking his head and

11    looking upset as I was giving these dates.  Is there a reason,

12    sir?

13         MR. KUSHNER:  Your Honor, on August 29th I'm out of

14    the state on vacation.

15         THE COURT:  Out of the state of Illinois or New

16    York?  Are you in New York or Illinois?

17         MR. KUSHNER:  I'm in Brooklyn, Your Honor.

18         THE COURT:  Oh, okay.  I didn't realize.  I couldn't

19    tell.  All right.

20         So you don't want to have your client sentenced on

21    August 29th, correct?

22         MR. KUSHNER:  Correct, Judge, I apologize.

23         THE COURT:  Well, can we sentence him at another

24    time in August, or do we need to push into September?

25         MR. KUSHNER:  We -- I would -- I could do -- I could

PROCEEDINGS                                    32

1   do before August 22nd.

2              MR. PITLUCK:  Sorry, Judge, I'm on trial before

3   Judge Cogan in August.  And I don't know how long it will

4   take.  The last one we estimated to be three weeks and it took

5   16.  I think the Court is familiar with the -- with lengthy

6   trials that exceed their estimates.  But I think just to be

7   safe from my end, if Your Honor doesn't mind pushing it into

8   September, I will make sure that I won't miss it.

9              THE COURT:  All right, so how far into September do

10  we need to go?  Just give me some dates, please, both of you.

11             MR. KUSHNER:  9/6, 9/13, 9/20.  Those are all good

12  Tuesdays.  I can do any of those dates.  If we want to do 9/20

13  just to be safe, that's fine.

14             MR. PITLUCK:  9/13 or 9/20 both work for me, Judge.

15             THE COURT:  Ms. Jackson, do we have availability on

16  those dates?

17             THE COURTROOM DEPUTY:  9/20.

18             THE COURT:  Okay, September 20th, shall we say

19  10:00?  Does that work, 10:00 a.m.?

20             MR. PITLUCK:  Works for the government.  Thank you,

21  Judge.

22             MR. KUSHNER:  Yes, Your Honor.

23             THE COURT:  So I have set up dates for your

24  sentencing submissions.  Those should be filed via ECF.

25             I don't know whether Mr. Amirouche wants or has

PROCEEDINGS                          33

1    young children.  Any names of young children, that is under

2    the age of 18, should be redacted from the public docket.

3            So you file your sentencing submissions on the

4    public docket, but you can redact names of minors and any

5    personal medical information.  An unredacted version should be

6    filed on the docket, and it may be filed under seal.

7            So let me just say that the submissions should come

8    in as follows:

9            The defense submissions will be filed September 1.

10   The government's submissions will be due September 9th.  And

11   any reply will be due September, let's say, 15th.

12           Again, these will be filed on ECF with appropriate

13   redactions.  And I would like two courtesy copies of all of

14   your sentencing submissions to my chambers, please.  You

15   should also let probation know or serve a copy of your

16   submissions on probation.

17           Is there anything else I need to address?

18           MR. PITLUCK:  Not from the government.  Thank you,

19   Your Honor.

20           MR. KUSHNER:  No, not from us either, Your Honor.

21   Thank you.

22           THE COURT:  All right, thank you.

23           We are adjourned.  Thank you.

24           Mr. Amirouche, let me just mention something.

25           The pretrial services officer has memo'd me twice

PROCEEDINGS                                          34

1    about elicit substances being detected on your drug testing.

2    They understand that you are taking some drugs that may result

3    in a false -- or a positive, not a false positive, a positive,

4    for certain types of substances.  But you may not use

5    marijuana all right, sir?  So if you are using marijuana,

6    cease immediately, and please just don't do anything that will

7    jeopardize your release between now and the time of your

8    sentencing.  All right, sir?

9              THE DEFENDANT:  Yes, Your Honor.

10             I use CBD oil and I'm not smoking marijuana.

11             THE COURT:  Okay.  Well, don't use anything with THC

12   on your skin, or whatever you told your officer.  Just

13   avoid -- avoid testing positive, all right, sir?

14             THE DEFENDANT:  Yes, Your Honor, I understand.

15             THE COURT:  Okay.  Thank you.

16             We are adjourned.  Thank you.

17             MR. KUSHNER:  Thank you.

18             MR. PITLUCK:  Thank you.

19             (Whereupon, the matter was concluded.)

20                  *    *    *    *    *

21   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
22

23       s/ Linda D. Danelczyk              May 10, 2022

24         LINDA D. DANELCZYK                    DATE

25