UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------- X

UNITED STATES OF AMERICA,

       -against-

                         **21-cr-00064 - KAM**

LARBY AMIROUCHE,

            Defendant.

----------------------------------------------------- X


### <u>SENTENCING MEMORANDUM ON BEHALF OF LARBY AMIROUCHE</u>

Michael P. Kushner, Esq.
KUSHNER LAW GROUP, PLLC
16 Court Street, 36th Floor
Brooklyn, New York 11241
718.504.1440 (telephone)
mk@kushlawgroup.com

## INTRODUCTION

Larby Amirouche, now legally known as Luke Williams, embodies the qualities of a devoted son, brother, friend, and self-made businessman. He is beloved and respected by people from all walks of life, owing to his generous and kind character. The grand jury's extensive five-year investigation, culminating in Luke's subsequent guilty plea, has inflicted an arduous and humiliating ordeal upon him. This harrowing experience is one from which he will never fully recover. Present before this Court, he now stands as a mere shadow of his former self, enduring immense suffering and grappling with the profound consequences of his actions.

Despite recognizing that the harm caused to himself, his family, and his legacy is irreparable, Luke is resolute in his commitment to make amends with his victims. He has demonstrated this by willingly agreeing to a forfeiture money judgment exceeding 1.8 million dollars. Additionally, he has taken the initiative to file or ensure the filing of amended federal and state tax returns related to the businesses implicated in the offense. Luke firmly acknowledges his misconduct and is fully prepared to face the consequences imposed by this Court, including, if deemed appropriate, a period of confinement.

The parties are in agreement that, based on the offense of conviction, Luke's final adjusted offense level under the United States Sentencing Guidelines will be 29, resulting in an advisory Guidelines range of 87 to 108 months' imprisonment. However, the parties also recognize that, due to the statutory maximum sentence provided in 18 U.S.C. § 371 for the offense of conviction, the Guidelines range of imprisonment is limited to 60 months. It is crucial to emphasize that the United States Sentencing Guidelines are now firmly established as advisory rather than mandatory. As established in *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*), they serve as one factor among several that courts must consider in determining an appropriate sentence,

aligning with the purposes of sentencing outlined in 18 U.S.C. § 3553 (a), which aim to be "sufficient, but not greater than necessary."

In the case of Luke, the Guidelines are skewed, excessively focusing on the loss amount, which calls for courts to place greater reliance on section 3553 (a) and consider the specific circumstances of the case and the human being who will bear the consequences. This perspective aligns with the ruling in *United States v. Adelson*, 441 F.Supp.2d 506, 515 (S.D.N.Y. 2006), *aff'd*, 301 F.App'x 93 (2d Cir. 2008), where the court highlighted the need to apply section 3553 (a) thoughtfully in cases where the Guidelines seem to have "run amok."

Mr. Williams presents this sentencing memorandum to aid the Court in arriving at an appropriate sentence, as governed by 18 U.S.C. § 3553(a). In light of the circumstances, a sentence significantly below the Guidelines range is justified. While Mr. Williams does not contest the seriousness of the offense, it is essential to consider several mitigating factors in his favor. First, Luke possesses an otherwise clean criminal history. Moreover, the offense coincides with a nearly life-long struggle with serious and debilitating mental health issues, which significantly impaired his judgment and decision-making during the commission of the offense. Additionally, the Court should contemplate the adverse impact that Luke's imprisonment would have on his family and his business, factors that should be weighed when determining the most appropriate sentence. Furthermore, the Guidelines' overemphasis on a single fact, such as the amount of loss, should not overshadow other pertinent considerations in this case.

Considering the unique circumstances at hand, a significantly reduced sentence, well below the Guidelines, would be appropriate. Such a sentence should include a period of home detention, followed by five years of supervised release. Moreover, an integral aspect of the sentence should entail a meaningful term of intensive community service, in combination with strict compliance

and adherence to mental health treatment, actively monitored by the United States Probation Department. Included with this submission are letters of support that were drafted on behalf of Luke to provide the Court with further insight into Mr. Williams' character.

## I. THE FACTORS SET FORTH IN 18 U.S.C. § 3553(a) WARRANT A NONGUIDELINES SENTENCE

Although the Sentencing Guidelines are the starting point for the calculation of an appropriate sentence, a district court "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 50 (2007). Instead, the court "must make an individualized assessment based on the facts" of each case, recognizing that a within-Guidelines sentence may be greater than necessary to serve the purposes of sentencing. *Id.; Kimbrough*, 552 U.S. at 91. If the Guidelines calculation in a given case results in an "inordinate emphasis" on "putatively measurable quantities," like financial loss, a court may focus more on the statutory factors set forth in 18 U.S.C. § 3553 (a) to determine an appropriate sentence. *United States v. Adelson*, 441 F. Supp. 2d 506, 509–12 (S.D.N.Y. 2006), *aff'd*, 301 F. App'x 93 (2d Cir. 2008). The Supreme Court has held that extraordinary circumstances are *not* necessary to justify a sentence outside of the Guidelines' range. *Gall*, 552 U.S. at 47.

Accordingly, after calculating the proper offense level under the Guidelines, the district court must consider each of the § 3553(a) factors and "tailor the sentence" to fit the circumstances of the case. *United States v. Booker*, 543 U.S. 220, 245 (2005). The § 3553(a) factors include: (1) the nature and circumstances of the offense and history and characteristics of the defendant; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Sentencing Guidelines; (5) any relevant policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted disparities among similar offenders; and (7) the need to provide restitution to victims

of the offense. A court "exercise[s] a wide discretion in the types of evidence [it] may consider" when choosing an appropriate sentence to ensure it is in "possession of the fullest information possible." *Pepper v. United States*, 562 U.S. 476, 480 (2011) (internal quotation marks omitted).

The application of the § 3553 (a) factors to this case strongly supports a substantial variance from the agreed advisory Guidelines offense level. A sentence of significantly less than 60 months is "sufficient but not greater than necessary" to satisfy the purposes of sentencing. 18 U.S.C. § 3553 (a). This is so for several reasons. First, while this fraudulent scheme may not strictly qualify as aberrant behavior pursuant to U.S.S.G. § 5K2.20 (b) (multiple transactions), it nonetheless coincides with significant and chronic mental health ailments that have resulted in repeated in-patient hospitalizations and occurred against the back drop of an otherwise law-abiding life. Second, Mr. Williams' mental health ailments are present to an unusual degree and distinguish this case from the typical cases covered by the guidelines which warrants consideration pursuant to U.S.S.G. § 5H1.3. Mr. Williams addresses each of these factors and other § 3553 (a) factors in this memorandum.

### A. The Seriousness of the Offense

Mr. Williams does not dispute that this offense is serious and unacceptable. The *PSR* captures the offense conduct accurately. There is little more that he can say in this regard but does wish to acknowledge the point. Not only was the dishonesty wrong but the fact that he used a seemingly long list of shell companies to accomplish his deceit and did so using members of his community of friends in and around Miami make it all the more wrong and embarrassing to him. Mr. Williams expects to further address the court at sentencing but wishes to acknowledge the gravity of his wrongdoing and the harm that it did up front.

**B.     History and Characteristics of the Defendant**

Mr. Williams appears to be well-educated and successful. The appearance is not inaccurate but fails to fully grasp what is debilitating him and has for over a decade.  He was raised in a stable home among relative privilege.  His parents, sister, and friends all recount a man who was extremely smart, loyal beyond words, a hard-worker, and provided with every opportunity that his family could provide for him.  However, the problem Mr. Williams has been living with is an invisible disability reflected as serious mental illness.  He has always seen himself as an outsider and the subject of a joke that everyone else "is in on."  These struggles left Mr. Williams in an increasingly isolated state as he sought to fulfil the ideal of success that was attributed to him by his family and friends while trying to deal with very real failures.  The sorrows of Mr. Williams' condition inform the conduct that brings him before this court.

**C.     A Variance is Warranted Pursuant to U.S.S.G. § 5H1.3 Based Upon Mr. Williams' Unique Offender Characteristics**

Mr. Williams' mental condition warrants a variance pursuant to United States Sentencing Guideline § 5H1.3.  The guidelines state that "[m]ental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines. *Id.*  The Guideline further states that "[i]n certain cases a downward departure may be appropriate to accomplish a specific treatment purpose. See § 5C1.1."  There is no view of the facts presented in Mr. Williams' sealed submission that would preclude this Court from determining that these issues are not "unusual" and not "typical".  Accordingly, the Court is urged to rely upon the records produce to impose a non-Guidelines sentence of home detention to be followed by a period of five-years' supervised release.  Included with any such sentence should be an intensive term of community service along with strict

compliance and adherence with mental health treatment to be monitored by the United States Probation Department.

### D. Incarceration is Unnecessary to Achieve the Aims of Sentencing

Mr. Williams has already suffered significant collateral consequences, and therefore, incarceration is unnecessary to reflect the seriousness of the offense, promote respect fo the law, provide just punishment, and afford adequate deterrence. A defendant's loss of reputation, assets, and income, combined with the inability to engage in similar or related activities, constitutes both specific and general deterrence. *United States v. Gaind,* 829 F.Supp. 669 (S.D.N.Y. 1993); *see also United States v.* Adelson, 441 F.Supp. 2d 506, 514 (S.D.N.Y. 2006) (specific deterrence was achieved where defendant's reputation was ruined by his conviction for a white-collar crime, and he was extremely unlikely to involve himself in future misconduct); *United States v. Johnson*, No. 16-cr-457 (NGG) (E.D.N.Y. April 26, 2018) (finding "the expense and emotional harm that have resulted from this prosecution, and the disgrace of having been convicted of a felony" as sufficient for general deterrence for white-collar crimes); *United States v. Gupta*, 904 F.Supp. 2d at 355 (concluding that a reputational blow makes it unlikely a particular defendant would "repeat his transgressions and no further punishment is needed to achieve this result.").

### E. Non-Custodial Sentence Will Not Cause Unwarranted Sentencing Disparities

It is simply not true that applying a non-custodial sentence here would produce "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553 (a)(6). The U.S. Sentencing Commission's own data shows that, from 2017 through 2022, nearly a third (32.2%) of all sentences under Guideline 2B1.1 where the defendant had a criminal history Category I were non-custodial sentences. *See* Interactive Data Analyzer, United States Sentencing Commission, https://ida.ussc.gov/analytics/

(last visited August 1, 2023).  More than 73% of the sentences did not exceed 24 months in length. *Id.*  If anything, imposing a Guidelines sentence here, even without the mental health component, would produce *more* rather than less disparity.

### CONCLUSION

For the aforementioned and other reasons that will be raised during the sentencing hearing on August 14, 2023, we ask that Mr. Williams be sentenced to a non-Guidelines sentence of home detention to be followed by a period of five-years' supervised release.  Included with any such sentence should be an intensive term of community service along with strict compliance and adherence with mental health treatment to be monitored by the United States Probation Department.

Dated: Brooklyn, New York
August 1, 2023

/s_*Michael P. Kushner, Esq.*

Michael P. Kushner, Esq.
KUSHNER LAW GROUP, PLLC
16 Court Street, 36th Floor
Brooklyn, New York 11241
718.504.1440 (telephone)
mk@kushlawgroup.com