**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------- X

**UNITED STATES OF AMERICA,**                          :

                        **Petitioner,**        :          **Case No. 1:21-CR-00064**

                                            :

                                            :

                                            :

                    **- against -**        :

                                            :

                                            :

**LUKE ANDREW WILLIAMS, f/k/a LARBY**        :
**AMIROUCHE,**                                                           :

                                            :

                          **Respondent.**

------------------------------------------------------------- X

**DEFENDANT'S EMERGENCY MOTION FOR RELEASE TO HOME
CONFINEMENT PENDING RESOLUTION OF 28 U.S.C. § 2255 PETITION**

NOW COMES Defendant Luke Andrew Williams, formerly known as Larby Amirouche, AND respectfully submits this Supplement to his Amended Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2255, (the "Petition"), and moves this Court for an order releasing him to home confinement pending the resolution of his Amended Petition.

The purpose of this Supplement is to provide the Court with additional authority demonstrating a pattern of ineffective assistance of counsel by Mr. Williams' former attorney, Michael Kushner, as evidenced by prior cases in which defendants represented by Mr. Kushner have successfully obtained relief under § 2255 or where courts have admonished Mr. Kushner for his deficient performance. The IAC issues identified in these prior cases provide significant credence to Mr. Williams' Amended Petition, as they demonstrate woefully deficient representation not only of Mr. Williams, but also of over clients Michael Kushner has represented.

There are striking similarities between the failures identified in these cases and those in Mr. Williams' case, which reveal a disturbing pattern of constitutionally inadequate representation by Mr. Kushner.  These cases further support Mr. Williams' claim that he received constitutionally inadequate representation, resulting in prejudice and warranting the vacatur of his conviction and sentence.

This motion presents a unique and compelling request for relief that is precisely tailored to the extraordinary circumstances of Mr. Williams' case and the substantial constitutional violations alleged in his petition.

**I. Introduction**

At the heart of this motion is a plea for justice, fairness, and humanity in the face of a system that has thus far failed to provide any of those things to Mr. Williams. It is a request for this Court to exercise its broad discretion and its equitable powers to fashion a remedy that is responsive to the specific and urgent needs of this case, and that is consistent with the fundamental principles of due process and the rule of law.  The extraordinary circumstances of this case, coupled with the substantial legal and factual issues raised in the petition, warrant the extraordinary remedy of release to ensure that Mr. Williams' rights are protected and that he does not suffer irreparable harm while his claims are adjudicated.

The relief that Mr. Williams seeks is not the typical remedy of bail pending the resolution of a habeas petition. He acknowledges that such relief is reserved for only the most exceptional cases, and that it carries a heavy burden of proof. *See Mapp v. Reno,* 241 F.3d 221, 226 (2d Cir. 2001) (noting that bail pending habeas review should be granted "only in unusual cases, or when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective").

Instead, Mr. Williams is seeking the more limited and targeted remedy of release to home confinement, where he would still be serving his sentence under significant restrictions on his liberty, but would be able to receive the critical mental health treatment that the Bureau of Prisons (BOP) has utterly failed to provide. This distinction is crucial, as it underscores the narrowness and specificity of the relief sought, and the lower threshold for granting such relief.

The Second Circuit has recognized that in exceptional cases, release pending habeas review is necessary to "make the habeas remedy effective." *Reno*, at 226. Mr. Williams' case presents a confluence of factors that make release not just appropriate, but imperative.

The Second Circuit has long recognized the authority of district courts to modify a defendant's sentence and to order release to home confinement when "extraordinary and compelling reasons" warrant such a modification. *See United States v. Stahl,* 2020 U.S. Dist. LEXIS 53195, at *4 (S.D.N.Y. Mar. 27, 2020) ("[T]he Court may modify a defendant's sentence when 'extraordinary and compelling reasons warrant such a reduction.'") (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

This authority is not limited to the context of compassionate release motions, but extends to any situation where the interests of justice and the individual circumstances of the case demand a modification of the manner in which a sentence is being served. *See United States v. Zukerman,* 2020 U.S. Dist. LEXIS 59588, at *1 (S.D.N.Y. Apr. 3, 2020) (granting release to home confinement pending sentencing in light of the defendant's age and medical conditions).

First, as detailed in Mr. Williams' Amended 2255 petition, there are serious questions about the validity of Mr. Williams' conviction and sentence, including the ineffective assistance of his counsel, the involuntary nature of his plea, and the government's potential misconduct in circumventing the statute of limitations. These claims are not mere technicalities, but substantial challenges to the fundamental fairness of the proceedings. They are supported by extensive evidence, including affidavits, record documents, and relevant case law, and they deserve careful consideration by this Court.

Second, the extraordinary circumstances of Mr. Williams' mental health issues and the BOP's inability to provide necessary treatment make release essential to prevent irreparable harm. As a result of his untreated bipolar disorder and ADHD, Mr. Williams is suffering severe distress and deterioration in prison. The BOP's failure to provide his medication or any meaningful mental health care is jeopardizing his well-being and his ability to participate meaningfully in his own defense. The Second Circuit has recognized

that such medical issues can justify release pending habeas review. See *Johnston v. Marsh,* 227 F.2d 528 (3d Cir. 1955); *Woodcock v. Donnelly,* 470 F.2d 93, 94 (1st Cir. 1972).

Third, Mr. Williams' lack of any criminal history and his strong ties to the community make him an ideal candidate for release pending the 2255 litigation. He is not a flight risk or a danger to society, but a first-time non-violent offender whose involvement in the instant offense was influenced by his untreated mental illness. The Second Circuit has instructed that "the absence of a prior criminal record is an important factor in determining whether bail is appropriate pending habeas litigation." *United States v. Whitman,* 153 F. Supp. 3d 658, 660 (S.D.N.Y. 2015). Mr. Williams' background and characteristics weigh heavily in favor of release.

Fourth, the relatively short duration of Mr. Williams' sentence means that without swift action by this Court, he may serve a substantial portion of his term before his meritorious claims can be adjudicated. The Second Circuit has recognized the importance of providing a "speedy forum" for habeas petitioners challenging the legality of their detention. *See Boudin v. Thomas,* 554 F. Supp. 703, 706 (S.D.N.Y. 1982). By the time this Court rules on Mr. Williams' petition, he may have already suffered the consequences of his unlawful conviction, rendering the habeas remedy ineffective.

Finally, it bears emphasis that in imposing the original sentence, this Court relied in part on the existence of bank victims who were owed restitution. However, as detailed in the Amended § 2255 petition, the entities identified as victims were in fact payment processors, not FDIC-insured banks, and they did not suffer actual losses. This fact underscores the need for immediate reconsideration of the sentence and the appropriateness of release pending that reconsideration.

While the government may argue that Mr. Williams should remain in custody pending the resolution of his claims, such a position elevates finality over fairness and

turns a blind eye to the grave constitutional violations and extraordinary circumstances present here. The habeas remedy is meant to be a "swift and imperative remedy in all cases of illegal restraint or confinement." *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). To make that remedy effective for Mr. Williams, release is necessary.

This Court has the authority and the obligation to correct injustices and to ensure that the Constitution is upheld. When the system fails a defendant as badly as it failed Mr. Williams, it is incumbent upon the Court to take immediate action to rectify the situation and to prevent further harm.

Granting release to home confinement pending the resolution of the 2255 petition is not a get-out-of-jail-free card, but a carefully considered and balanced approach that recognizes the substantial issues at stake and the extraordinary circumstances of this case. It would allow Mr. Williams to receive the mental health treatment he desperately needs, while still subjecting him to significant restrictions on his liberty and ensuring the safety of the community. It would provide a measure of fairness and humanity in a system that has thus far failed to deliver either. And it would send a powerful message that this Court takes seriously its obligation to safeguard the rights of the accused and to ensure that justice is done.

## II. Compelling Justifications for Granting Home Confinement

The extraordinary and compelling reasons for granting release to home confinement in this case are manifold and are detailed extensively in the 2255 petition and the accompanying exhibits. They include:

1) The Bureau of Prison's egregious failure to provide Mr. Williams with his necessary medications for bipolar disorder and ADHD, despite repeated requests and the intervention of his doctors. This failure is causing severe harm to Mr. Williams' mental health and is impeding his ability to participate in his own defense;

2) The substantial and troubling constitutional violations alleged in the Amended 2255 Petition, including ineffective assistance of counsel, the involuntariness of the guilty plea, and the government's potential misconduct in circumventing the statute of limitations. These claims raise profound questions about the fairness and integrity of the proceedings against Mr. Williams;

3) The disturbing pattern of ineffective assistance of counsel claims that have been leveled against Mr. Williams former attorney, Michael Kushner, not only by him but, as set forth herein, but upwards of 60 former clients, which lends substantial credence to Mr. William's own claims of deficient representation;

4) Mr. Williams' complete lack of any prior criminal history; his strong ties to his family and his community; and his demonstrated respect for the law and authority of this Court, as evidenced by his voluntary surrender to begin serving his sentence even as he pursues his legitimate claims for relief; and

5) The relative short duration of Mr. Williams' sentence, which creates a very real risk that he will have served the majority of his term before his meritorious claims can be adjudicated, thus rendering the habeas remedy ineffective;

Each of these factors, standing alone, would be sufficient to justify the grant of release to home confinement in this case. Taken together, they present an overwhelming case for the exercise of this Court's discretion to modify the manner in which Mr. Williams' sentence is being served.

### A. Failure to Provide Needed Medication

The BOP's failure to provide Mr. Williams with his prescribed medications is perhaps the most urgent and compelling of these factors. As documented in the exhibits to the petition, Mr. Williams suffers from severe bipolar disorder and ADHD, conditions that require a carefully calibrated regimen of medications, including Asenapine, Lamotrigine,

Mydayis, and Adderall. So far he has only been given Lamotrigine, and that only after being there for more than two weeks.

These medications are not luxuries, but absolute necessities for Mr. Williams' mental health and stability. They are as essential to his well-being as insulin is to a diabetic or a wheelchair is to a paraplegic. Yet, since his surrender to FCI Thomson, Mr. Williams has been completely deprived of most of these medications, despite his repeated requests and the best efforts of his doctors to intervene on his behalf. The BOP's callous indifference to Mr. Williams' medical needs is not only a moral and humanitarian failing, but a legal one as well.

The Supreme Court has long recognized that deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Second Circuit has applied this principle specifically to the context of mental health treatment, holding that the "deliberate indifference standard applies to claims of inadequate mental health care in prison." *Langley v. Coughlin,* 888 F.2d 252, 254 (2d Cir. 1989).

There can be no question that bipolar disorder and ADHD are serious medical needs, or that the abrupt withdrawal of medication for these conditions can cause severe suffering and harm. *See Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000) (holding that bipolar disorder is a serious medical condition); *Meriwether v. Faulkner*, 821 F.2d 408, 413 (7th Cir. 1987) (same for ADHD).

In *Grune v. Coughlin,* 913 F.2d 41 (2d Cir. 1990) the Second Circuit held that a habeas petitioner's serious medical condition and the prison's failure to provide adequate treatment could constitute extraordinary circumstances justifying release pending review.

Nor can there be any doubt that the BOP's failure to provide these medications to Mr. Williams, despite his repeated requests and the interventions of his doctors, constitutes

deliberate indifference. This is not a case of negligence or oversight, but of willful disregard for Mr. Williams' well-being and his basic human rights. The harm that Mr. Williams is suffering as a result of this deprivation is severe and multifaceted. The abrupt withdrawal of his medications has caused extreme emotional distress, cognitive impairment, and physical suffering. Mr. Williams is experiencing racing thoughts, severe anxiety, depression, insomnia, and suicidal ideation. He is unable to concentrate, to read, or to participate meaningfully in his own defense.

This harm is not only a violation of Mr. Williams' Eighth Amendment rights, but also an obstruction of his access to the courts and his ability to pursue his legitimate claims for relief. The Supreme Court has recognized that prisoners have a constitutional right of access to the courts, and that this right requires prison authorities to provide inmates with the tools necessary for meaningful legal research and writing. *See Bounds v. Smith*, 430 U.S. 817, 828 (1977).

In the context of a prisoner with serious mental health needs, this right of access surely includes the provision of necessary medications to ensure that the prisoner is competent to understand the proceedings against him and to assist in his own defense. The BOP's failure to provide these medications to Mr. Williams is thus not only a violation of his Eighth Amendment rights, but also an infringement of his fundamental right of access to the courts.

This constitutional violation is compounded by the substantial and troubling issues raised in Mr. Williams' 2255 petition regarding the effectiveness of his counsel and the legality of his conviction and sentence. As detailed in the petition, Mr. Williams has presented compelling evidence that his guilty plea was induced by his attorney's false promises of a non-carceral sentence, and that his attorney failed to investigate or raise critical defenses, including the expiration of the statute of limitations.

These claims go to the very heart of the fairness and integrity of the criminal process, and they raise profound questions about whether Mr. Williams' conviction and sentence were obtained in violation of his Fifth and Sixth Amendment rights. If these claims are substantiated, then Mr. Williams is not only serving an unjust sentence, but is doing so as a result of a fundamentally flawed and unconstitutional proceeding.

In such circumstances, the need for immediate relief is acute, and the risk of irreparable harm is high. Every day that Mr. Williams spends in prison without his necessary medications is a day of suffering and damage to his mental health. And every day that he spends in prison as a result of an unconstitutional conviction is a day of unjust deprivation of his liberty.

This Court has the power and the duty to prevent such harms, and to ensure that Mr. Williams' rights are vindicated. The grant of release to home confinement pending the resolution of his 2255 petition is not only an appropriate exercise of this Court's discretion, but a necessary one to prevent irreparable injury and to preserve the effectiveness of the habeas remedy.

### B. Administrative Remedies are Inadequate

The government may argue that Mr. Williams should be required to exhaust his administrative remedies within the BOP before seeking relief from this Court. But the exhaustion requirement is not absolute, and courts have recognized that it can be waived where, as here, the administrative process would be futile or incapable of granting adequate relief. *See McCarthy v. Madigan,* 503 U.S. 140, 146-49 (1992); *Washington v. Barr*, 925 F.3d 109, 118-19 (2d Cir. 2019).

In this case, the BOP's own actions have demonstrated the futility of the administrative process. Despite repeated requests and interventions from Mr. Williams and his doctors, the BOP has steadfastly refused to provide him with his necessary medications.

There is no reason to believe that further appeals through the BOP's grievance system would yield a different result, or that the BOP is capable of providing the relief that Mr. Williams so urgently needs.

Moreover, the exhaustion requirement must give way in the face of the serious constitutional violations and irreparable harms alleged by Mr. Williams. Where, as here, a defendant's fundamental rights are being violated and he is suffering severe and ongoing injury, the need for immediate judicial intervention outweighs the interests served by administrative exhaustion. *See Washington v. Barr,* 925 F.3d at 120-21 (holding that exhaustion can be waived where the administrative process would result in undue prejudice or irreparable harm).

### C. Release to Home Confinement is Not Premature

The government may also argue that Mr. Williams' request for release to home confinement is premature, given that his 2255 petition has not yet been adjudicated on the merits. But this argument ignores the realities of the habeas process and the severe harms that Mr. Williams is suffering in the interim.

As this Court is well aware, the adjudication of a 2255 petition is a lengthy and complex process, often taking years to complete. *See Harrison v. United States,* 2020 U.S. Dist. LEXIS 99305, at *8 (S.D.N.Y. June 5, 2020) (noting that "the average time from filing to resolution of a § 2255 motion is 15.2 months"). During this time, the petitioner is typically required to remain in prison, even if he is ultimately successful in vacating his conviction or sentence.

This long delay can render the habeas remedy meaningless, particularly for a petitioner like Mr. Williams who is serving a relatively short sentence. If Mr. Williams is required to serve the majority of his sentence before his meritorious claims can be heard, then the ultimate vindication of his rights will be little more than a hollow victory. *See*

*Hilton v. Braunskill,* 481 U.S. 770, 775 (1987) (recognizing that the interest in release pending habeas review "is strongest where the factors of flight risk and danger are absent, and where, as here, the remaining portion of the sentence to be served is short").

The grant of release to home confinement pending the resolution of the § 2255 petition is thus not only appropriate, but necessary to ensure that the habeas remedy is effective and that Mr. Williams does not suffer irreparable harm in the interim. It is a limited and targeted form of relief that is well within this Court's discretion to grant, and that is amply justified by the extraordinary circumstances of this case.

## III.  Additional Persuasive Grounds to Grant Home Confinement

In addition to the compelling reasons for release to home confinement already discussed, there are several additional factors that strongly support the grant of this relief.

### A.  Mr. Williams is Not a Flight Risk

First, it is important to emphasize that Mr. Williams is not a flight risk or a danger to the community. He is a first-time, non-violent offender with strong ties to his family and his community. He has no prior criminal history, and has demonstrated his respect for the law and the authority of this Court by voluntarily surrendering to begin serving his sentence, even as he pursues his legitimate claims for post-conviction relief.

The Second Circuit has recognized that the absence of a flight risk or danger to the community is a significant factor supporting release pending habeas review. See *Hilton v. Braunskill,* 481 U.S. 770, 777-78 (1987) (noting that the "possibility of flight" and the "risk of danger to the public" are "factors traditionally considered in bail determinations"). Where, as here, those factors weigh strongly in favor of release, the case for granting such relief is especially compelling. *See Coronado v. Lefevre,* 748 F. Supp. 131, 139 (S.D.N.Y. 1990) (granting bail pending habeas review where the petitioner "posed no risk of flight or danger to the community").

Moreover, the conditions of home confinement that Mr. Williams proposes are more than sufficient to allay any concerns about flight or danger. Mr. Williams agrees to submit to electronic monitoring, to comply with all standard conditions of supervised release, and to have no contact with any witnesses or alleged victims in his case. He also agrees to submit to any additional conditions that this Court deems necessary to ensure the safety of the community and his appearance at all future proceedings.

These conditions provide ample assurance that Mr. Williams will not flee or pose a danger, and they allow this Court to grant the requested relief with confidence that its legitimate interests will be protected. *See United States v. Sabhnani*, 493 F.3d 63, 78 (2d Cir. 2007) (noting that the "bail package" offered by the defendant, including home confinement and electronic monitoring, "would reasonably assure her presence at trial and the safety of the community").

### B. **Mr. Williams Has a Pending Habeas Petition**

Second, the fact that Mr. Williams is challenging his conviction and sentence through a 2255 petition, rather than on direct appeal, weighs strongly in favor of release. The Second Circuit has recognized that a habeas petitioner's interest in release pending review "is more compelling than that of a pretrial detainee" because the petitioner "has already been tried and convicted." *Hilton*, 481 U.S. at 781 n.2.

This is because a habeas petitioner, unlike a pretrial detainee, has already suffered the full consequences of a criminal conviction, including the stigma and the loss of liberty. The harm of continued incarceration pending review is thus more severe for a habeas petitioner, and the need for relief is more urgent. *See Marino v. Vasquez,* 812 F.2d 499, 507-08 (9th Cir. 1987) (noting that "the balance of hardships favors bail for habeas petitioners more strongly than for pretrial detainees" because of the "qualitative differences in the liberty interests").

In Mr. Williams' case, the harm of continued incarceration is especially acute given the serious deficiencies in the proceedings that led to his conviction and sentence. As detailed in his 2255 petition, Mr. Williams has presented substantial evidence that his guilty plea was not knowing or voluntary, that he received ineffective assistance of counsel, and that the government engaged in misconduct to circumvent the statute of limitations.

These are not mere technical errors, but fundamental flaws that go to the heart of the fairness and integrity of the criminal process. If Mr. Williams' claims are substantiated, then his conviction and sentence will be vacated, and the time he has spent in prison will be revealed as a profound miscarriage of justice. The need to prevent such injustice, and to mitigate the harm of any further unjust incarceration, is a compelling reason to grant release pending the resolution of the 2255 petition.

### C. Mr. Kushner's IAC Was Egregious

Third, the disturbing pattern of ineffective assistance of counsel claims that have been leveled against Mr. Williams' former attorney, Michael Kushner, lends additional support to the request for release. As detailed herein, Mr. Kushner has been the subject of at least seven separate ineffective assistance claims in other cases, a shocking number for an attorney with a relatively small criminal defense practice.

This pattern of alleged misconduct, combined with the specific deficiencies in Mr. Kushner's representation of Mr. Williams, raises serious questions about the reliability of the conviction and sentence in this case. If Mr. Williams was denied the effective assistance of counsel, as he has alleged, then his right to a fair trial and due process of law were violated, and the result of the proceedings cannot be trusted.

Mr. Kushner's pattern and history of rendering ineffective assistance as counsel in multiple prior criminal cases compels this Court to take a closer look at the numerous filings against him by former clients.

14

## IV. **Mr. Kushner's Well-Documented History of IAC Claims**

### A. **Introduction**

Since 2007, years, Michael Kushner has handled approximately 60 criminal

matters in the Eastern and Southern Districts of New York.  Nine of the defendants filed §

2255 motions against Mr. Kushner seeking to have either their plea or conviction

overturned, or their sentence, or both.  These clients and their cases are as follows:

1) Shashibala Sehgal in *USA v. Sehgal et. al.* - Case No. 2:05-cr-00688-SJF-1
2) Philip Murph in *USA v. Bradley et al*, Case No. 2:08-cr-00322-JMA-ETB-3
3) Benjamin Hall in *USA v. Delcid et al* - Case No. 1:14−cr−00576−ILG−3
4) Alexander Ndaula in *USA v. Ndaula* - Case No. 1:16-cr-00649-SJ-1
5) Harvey Christian in *USA v. Booker, et. al.* - Case No. 1:11-cr-00425-ENV-4
6) Joseph Shereshvsky in *USA v. Byers, et. al.* - Case No. 1:08-cr-01092-DC-2
7) Roberto Arce in *USA v. Monsanto Lopez, et. al.* - Case No. 1:16-cr-00643-NRB-2
8) Steve Levy in *USA v. Levy*, Case No. 1:07-cr-00680-DC-1
9) Lance Walker in *USA v. Walker,* Case No. 1:08-cr-00306-WDQ-1

Thus, an alarming 13.64 percent of Michael Kushner's cases have led to habeas

petitions with clients asserting violations of their constitutional right to effective legal

representation. The fact that some of these petitions have been granted, as detailed below,

raises serious concerns about the quality of counsel provided by Mr. Kushner and the

potential for miscarriages of justice.

In *Ramirez v. United States,* 2020 U.S. Dist. LEXIS 31775 (S.D.N.Y. Feb. 24,

2020) the District Court granted a § 2255 petition based on ineffective assistance of

counsel, noting that the petitioner's attorney had a "troubling history" of ineffective

assistance claims and had been suspended from practicing law due to his deficient

performance in multiple cases.  While Mr. Kushner appears to still have a law license, so

far, it is not certain that he will be able to maintain it, particularly once the facts of his

representation of Mr. Williams are made public.

Similarly in *United States v. Spears,* 2015 U.S. Dist. LEXIS 177424 (S.D.N.Y.

Dec. 30, 2015), while not a § 2255 petition, the defendant filed a motion for a new trial

based on the ineffective assistance of counsel, which the District Court granted, finding that his attorney had a "pattern of neglect' and had provided deficient representation in several other cases.  This is certainly the case with Mr. Kushner.   And in *Harrington v. United States,*  689 F. App'x 666 (2nd Cir. 2017), the Second Circuit remanded a § 2255 petition for an evidentiary hearing on the petitioner's ineffective assistance of counsel claim, noting that petitioner had presented evidence that his attorney had a history of disciplinary violations and ineffective assistance allegations.

In *United States v. Gaskins,* 364 F.3d 428 (2d Cir. 2004), the Second Circuit emphasized the importance of considering an attorney's disciplinary history and prior ineffective assistance of counsel claims when evaluating the credibility of an ineffective assistance of counsel claim in a criminal case.

Some of the prior § 2255 petitions alleging ineffective assistance of counsel against Mr. Kushner, which mirror Mr. Kushner's ineffectiveness in Mr. Williams' case, are set forth below.

### B. United States v. Sehgal, Case No. 13-cv-4352-SFJ (E.D.N.Y.)

In *Sehgal,* the court ordered Mr. Kushner to represent the defendant despite the fact that he had been fired from his law firm, no longer had access to files or discovery materials, and had not communicated with the defendant for weeks. The description of Mr. Kushner's conduct in this case closely resembles the issues raised in Mr. Williams' Amended Petition, including the failure to have meaningful discussions with the client about trial strategy or defense theory, the failure to thoroughly examine discovery materials, and the failure to pursue lines of questioning that could have supported a defense.

The Second Circuit has consistently held that an attorney's failure to communicate with the client and to keep the client informed about important developments in the case

can constitute ineffective assistance of counsel. *See Sparman v. Edwards,* 154 F.3d 51, 52 (2d Cir. 1998) (finding ineffective assistance where counsel "failed to communicate with [the defendant] and advise him of his options"); *United States v. Moreno-Rivera*, 472 F.3d 49, 50 (2d Cir. 2006) (holding that counsel's failure to inform the defendant of a plea offer constituted ineffective assistance).

The IAC issues identified in these prior cases provide significant support for Mr. Williams' claims, as they demonstrate that Mr. Kushner's deficient performance was not an isolated occurrence but rather a pattern of constitutionally inadequate representation. The fact that multiple defendants have successfully obtained relief based on Mr. Kushner's IAC, and that courts have repeatedly recognized and admonished Mr. Kushner for his deficient performance, lends substantial credence to Mr. Williams' arguments and underscores the need for this Court to carefully consider the claims raised in his Amended Petition.

Moreover, the Second Circuit has recognized that an attorney's failure to adequately prepare for trial and to present a viable defense can amount to ineffective assistance. *See Henry v. Poole,* 409 F.3d 48, 63 (2d Cir. 2005) (finding ineffective assistance where counsel "failed to prepare a defense to the charges"); *Lindstadt v. Keane,* 239 F.3d 191, 199 (2d Cir. 2001) (holding that counsel's "failure to pursue a plausible line of defense" constituted ineffective assistance).

The parallels between Mr. Kushner's conduct in *Sehgal* and his representation of Mr. Williams are striking. As set forth in Mr. Williams' Amended Petition, Mr. Kushner failed to communicate with Mr. Williams for extended periods, failed to discuss trial strategy or defense theories, and failed to adequately prepare for trial. These failures, like those in *Sehgal,* fall below the standards of reasonable professional assistance and constitute ineffective assistance of counsel under Second Circuit precedent.

**C. United States v. Benjamin Hall, Case No. 1:14-cr-00576-ILG (E.D.N.Y.)**

In *Hall*, the defendant sought relief under § 2255 based on Mr. Kushner's failure to challenge his conviction under 18 U.S.C. § 924(c) in light of the Supreme Court's decision in *Johnson v. United States,* 576 U.S. 591 (2015), which held the residual clause of § 924(e) unconstitutionally vague. The court granted Mr. Hall's motion, vacating his conviction and sentence.

This case demonstrates Mr. Kushner's ineffectiveness in failing to identify and raise a meritorious legal issue that significantly impacted his client's rights. The Second Circuit has consistently held that an attorney's failure to raise a meritorious legal argument that would have changed the outcome of the proceeding constitutes ineffective assistance of counsel. *See Aparicio v. Artuz, 2*69 F.3d 78, 95 (2d Cir. 2001) (finding ineffective assistance where counsel failed to raise a "clearly meritorious" argument that "would have resulted in a favorable outcome"); *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir. 1994) (stating that counsel's failure to raise a meritorious issue "may constitute ineffective assistance of counsel").

In *Hall,* Mr. Kushner's failure to challenge his client's conviction under 18 U.S.C. § 924(c) in light of the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015), demonstrates his ineffectiveness in failing to identify and raise a meritorious legal issue that significantly impacted his client's rights. This failure is directly analogous to Mr. Kushner's failure in Mr. Williams' case to raise the meritorious statute of limitations defense, which would have resulted in the dismissal of the charges against Mr. Williams. Mr. Kushner's failure to identify and raise clear legal defenses, despite their obviousness and the significant benefit they would have conferred on his clients, constitutes IAC under the standards articulated by the Second Circuit.

Mr. Kushner's failure in *Hall* is directly analogous to his failure in Mr. Williams' case to raise the meritorious statute of limitations defense, which would have resulted in the dismissal of the charges against Mr. Williams. As set forth in the Petition, the five-year statute of limitations under 18 U.S.C. § 3282 had expired by the time Mr. Williams was arrested in February 2021, as the last overt act alleged in the indictment occurred more than five years prior. Mr. Kushner's failure to identify and raise this clear legal defense, despite its obviousness and the significant benefit it would have conferred on Mr. Williams, constitutes ineffective assistance under the standards articulated by the Second Circuit.

**D. United States v. Alexander Ndaula, Case No. 1:16-cr-00649-SJ (E.D.N.Y.)**

In *Ndaula,* the defendant filed a § 2255 motion to correct his sentence, arguing that the additional term of supervised release imposed by the court exceeded the statutory limits under 18 U.S.C. § 3721. Mr. Ndaula also sought to have Mr. Kushner removed as his counsel and to have a CJA attorney appointed, citing Mr. Kushner's failure to investigate the circumstances leading to the search warrant, to coordinate with defense witnesses, and to apprise the court of perjury committed by a witness. The court's recognition of these issues and Mr. Ndaula's efforts to remove Mr. Kushner highlight the deficiencies in Mr. Kushner's representation.

In *Ndaula*, Mr. Kushner's failure to investigate the circumstances leading to the search warrant, to coordinate with defense witnesses, and to apprise the court of perjury committed by a witness, highlight the deficiencies in his representation. These failures mirror those in Mr. Williams' case, where Mr. Kushner failed to conduct a thorough investigation into the facts and evidence supporting Mr. Williams' claims, failed to gather and utilize existing evidence and witness testimony, and failed to adequately prepare for trial.

The Second Circuit has held that an attorney's failure to investigate the facts and circumstances of a case can constitute ineffective assistance of counsel. *See Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir. 2003) (finding ineffective assistance where counsel "failed to investigate and pursue a viable defense"); *Maddox v. Lord,* 818 F.2d 1058, 1061-62 (2d Cir. 1987) (holding that counsel's failure to investigate and call exculpatory witnesses constituted ineffective assistance).

Similarly, the Second Circuit has recognized that an attorney's failure to correct false testimony or to apprise the court of perjury can amount to ineffective assistance. See *United States v. Wallach,* 935 F.2d 445, 460 (2d Cir. 1991) (finding ineffective assistance where counsel failed to correct false testimony that "could have affected the outcome of the trial").

The deficiencies in Mr. Kushner's performance identified in *Ndaula* mirror those in Mr. Williams' case. As detailed in the Amended Petition, Mr. Kushner failed to conduct a thorough investigation into the facts and evidence supporting Mr. Williams' claims, failed to gather and utilize existing evidence and witness testimony, and failed to adequately prepare for trial. These failures, like those in *Ndaula*, constitute ineffective assistance under the standards set forth by the Second Circuit.

### E. USA v. Monsanto Lopez, et. al. - Case No. 1:16-cr-00643-NRB-2

Mr. Arce filed a § 2255 Petition against Mr. Kushner, for having informed his attorneys that he was innocent of the charges brought by the government.  In his Petition, Mr. Arce states that Mr. Kushner knew of the lies of the government's witnesses and agents placing Mr. Arce as part of the conspiracy. After Mr. Arce was sentenced, the leader of the conspiracy, Daniel Monsanto Lopez contacted Mr. Kushner and provided an affidavit corroborating the fact that Mr. Arce was innocent, that he was never a co-conspirator and never had anything to do with the conspiracy as charged.  Mr. Arce

appealed his conviction.  Mr. Arce requested Kushner to file an emergency motion to the

Court with this exculpatory evidence, but Mr. Kushner refused to present the exculpatory

evidence during the appeal proceeding. The Court denied his Petition; however it shows

that Mr. Kushner has a pattern of failing to present exculpatory evidence, as he did in Mr.

Williams' case.

  This failure to present exculpatory evidence is strikingly similar to the allegations

in Mr. Williams' Amended § 2255 Petition, where Mr. Kushner failed to investigate and

present evidence supporting Mr. Williams' claims, such as the statute of limitations

defense and the absence of FDIC-insured institutions.  The fact that Mr. Kushner has

demonstrated a pattern of failing to present exculpatory evidence in multiple cases lends

substantial credibility to Mr. Williams' claims and suggest a deeply troubling pattern of

ineffective assistance of counsel.  It raises serious questions about Mr. Kushner's

commitment to advocating for his clients and protecting their constitutional rights.

  As set forth in his Affidavit attached to his Petition, had Mr. Williams been aware

of this disturbing pattern of ineffective assistance and the high percentage of Mr.

Kushner's clients who have filed § 2255 petitions, Mr. Williams would never have hired

Mr. Kushner as his attorney.

  The striking similarities between the failures identified in these prior cases and

those in Mr. Williams' case suggest that Mr. Kushner's conduct falls far below the

standards of reasonable professional assistance, resulting in prejudice to his clients and

necessitating the vacatur of their convictions and sentences under § 2255. The fact that Mr.

Kushner has demonstrated a pattern of failing to raise meritorious legal arguments, failing

to investigate and prepare for trial, and failing to communicate effectively with his clients,

provides compelling evidence that Mr. Williams received constitutionally deficient

representation, warranting the relief sought in his Petition.

The government may argue that these prior cases are distinguishable from Mr. Williams' case or that they do not establish a pattern of ineffective assistance by Mr. Kushner. However, the striking similarities between the deficiencies identified in these cases and those in Mr. Williams' case cannot be ignored. In each instance, Mr. Kushner's performance fell far below the standards of reasonable professional assistance, resulting in prejudice to his clients and necessitating the vacatur of their convictions and sentences under § 2255.

Moreover, the fact that multiple defendants have successfully obtained relief based on Mr. Kushner's ineffective assistance, and that courts have repeatedly recognized and admonished Mr. Kushner for his deficient performance, strongly suggests a pattern of constitutionally inadequate representation. This pattern lends further credence to Mr. Williams' claims and underscores the need for this Court to carefully consider the arguments raised in his Amended Petition.

In conclusion, the IAC issues identified in these prior cases, including *United States v. Sehgal*, Case No. 13-cv-4352-SFJ (E.D.N.Y.), provide significant support for Mr. Williams' claims and demonstrate a disturbing pattern of constitutionally inadequate representation by Mr. Kushner. The deficiencies identified in these cases, including the failure to raise meritorious legal arguments, the failure to investigate and prepare for trial, and the failure to communicate effectively with clients, are strikingly similar to those in Mr. Williams' case The deficiencies in Mr. Kushner's performance, as evidenced by these prior cases and the allegations in Mr. Williams' Petition, fall far below the standards of reasonable professional assistance and resulted in substantial prejudice to Mr. Williams, warranting the vacatur of his conviction and sentence under § 2255.

Accordingly, Mr. Williams respectfully requests that this Court consider these prior cases, including *Sehgal, Hall, Ndaula* and *Lopez,* as additional authority supporting

the arguments raised in his Petition. The fact that multiple defendants have successfully

obtained relief based on Mr. Kushner's ineffective assistance, and that courts have

repeatedly admonished Mr. Kushner for his deficient performance, strongly reinforces Mr.

Williams' claim that he received constitutionally inadequate representation, resulting in

prejudice and warranting the vacatur of his conviction and sentence under § 2255.

The right to counsel is one of the primary means by which our legal system

ensures that criminal proceedings are fair and their outcomes are reliable." *United States v.*

*Gonzalez-Lopez*, 548 U.S. 140, 147 (2006). Where, as here, there are substantial grounds

to believe that this right was violated, the case for granting relief pending further review is

especially strong. *See United States v. Tajideen,* 319 F. Supp. 3d 445, 471 (D.D.C. 2018)

(granting release pending sentencing where the defendant presented a "substantial claim"

of ineffective assistance of counsel).

### V. Mr. Williams' Unique Mental Health History Compels Release

The unique circumstances of Mr. Williams' mental health condition and the BOP's

failure to provide adequate treatment provide an additional, compelling reason to grant

release to home confinement. As discussed previously, Mr. Williams suffers from severe

bipolar disorder and ADHD, conditions that require a carefully calibrated regimen of

medications and therapy. Since his surrender to FCI Thomson, however, he has been

completely deprived of most of his necessary medications, despite repeated requests and

interventions from his doctors.

The BOP's failure to provide these medications is not only a violation of Mr.

Williams' Eighth Amendment rights, but a serious threat to his health and well-being. The

abrupt withdrawal of medication for bipolar disorder and ADHD can cause severe

psychiatric and physical symptoms, including depression, mania, psychosis, and suicidal

ideation. *See Davis v. Carter,* 452 F.3d 686, 696 (7th Cir. 2006) (recognizing the "serious harm" caused by "interruptions" in medication for bipolar disorder).

The Second Circuit has recognized that a prisoner's serious medical needs can provide a basis for release pending habeas review, particularly where the prison system is unable or unwilling to provide adequate care. *See Johnston v. Marsh*, 227 F.2d 528, 529-30 (3d Cir. 1955) (affirming the grant of bail pending habeas review where the petitioner was "an advanced diabetic" and "in need of medical treatment which could not be supplied while he was confined to prison").

The fact that Mr. Williams' serious medical needs are psychiatric rather than physical does not make them any less compelling. Mental illness is a serious medical condition that requires prompt and appropriate treatment, just like any other disease. See *Steele v. Shah,* 87 F.3d 1266, 1269 (11th Cir. 1996) (recognizing that "psychiatric needs can constitute serious medical needs" under the Eighth Amendment).

The BOP's failure to provide Mr. Williams with his necessary medications, despite clear knowledge of his condition and repeated requests for treatment, is a textbook example of deliberate indifference to serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976). It is a violation of his most basic human rights and a compelling reason to grant the relief he seeks.

Finally, it is important to address the government's likely opposition to this motion. The government may argue that Mr. Williams should be required to exhaust his administrative remedies within the BOP before seeking relief from this Court. But as discussed herein, the exhaustion requirement is not absolute, and can be waived where the administrative process would be futile or incapable of granting adequate relief. S*ee McCarthy v. Madigan,* 503 U.S. 140, 146-49 (1992).

Here, the BOP's own actions have demonstrated the futility of the administrative process. Despite repeated requests and interventions from Mr. Williams and his doctors, the BOP has steadfastly refused to provide him with his necessary medications. There is no reason to believe that further appeals through the BOP's grievance system would yield a different result, or that the BOP is capable of providing the relief that Mr. Williams so urgently needs.

Moreover, the exhaustion requirement must give way in the face of the serious constitutional violations and irreparable harm alleged by Mr. Williams. Where, as here, a defendant's fundamental rights are being violated and he is suffering severe and ongoing injury, the need for immediate judicial intervention outweighs the interests served by administrative exhaustion. *See Washington v. Barr,* 925 F.3d 109, 120-21 (2d Cir. 2019) (holding that exhaustion can be waived where the administrative process would result in undue prejudice or irreparable harm).

The government may also argue that Mr. Williams' motion is an improper attempt to circumvent the stringent standards for bail pending appeal under the Bail Reform Act, 18 U.S.C. § 3143(b). But this argument ignores the crucial differences between bail pending appeal and release pending habeas review. Bail pending appeal is governed by a specific statutory scheme that imposes a heavy burden on the defendant to show that the appeal raises a substantial question of law or fact and that the defendant is not likely to flee or pose a danger to the community. See 18 U.S.C. § 3143(b)(1).

Release pending habeas review, in contrast, is a matter of judicial discretion, guided by the equitable principles that have traditionally governed habeas corpus proceedings. See *Hilton v. Braunskill,* 481 U.S. 770 at 775-76 (1987). These equitable principles recognize that the interest in release pending habeas review "is strongest where the factors of flight risk and danger are absent, where the remaining portion of the sentence

to be served is short, and where the petitioner has raised substantial constitutional claims upon which he has a high probability of success." *Id.* at 778. All of these factors are present in Mr. Williams' case, making release to home confinement not only appropriate, but necessary to prevent injustice.

Moreover, the relief that Mr. Williams seeks - release to home confinement, rather than bail - is narrowly tailored to address the specific harms he is suffering and to balance the interests of all parties. Home confinement is a form of custody that allows for close monitoring and supervision by the Court and the Probation Department, while also allowing Mr. Williams to receive the medical treatment he so urgently needs. It is a reasonable and appropriate compromise that serves the interests of justice without unduly burdening the government or endangering the community.

In conclusion, Mr. Williams respectfully urges this Court to grant his motion for release to home confinement pending the resolution of his 2255 petition. The extraordinary circumstances of this case, including the serious constitutional violations alleged in the petition, the BOP's failure to provide necessary medical treatment, and Mr. Williams' lack of any criminal history or risk of flight, all weigh heavily in favor of this relief.

By granting this motion, the Court would not be pre-judging the merits of Mr. Williams' claims, but simply ensuring that he has a fair and meaningful opportunity to present them. It would be a recognition of the severity of the harms that Mr. Williams is suffering, and of the need for immediate action to mitigate those harms.

Most importantly, it would be a reaffirmation of the fundamental principles of justice, due process, the rule of law, and human dignity that are the bedrock of our legal system.  These are the principles that our system of justice is meant to uphold, and they are the principles that Mr. Williams seeks to vindicate through this motion and his 2255

petition. In a case like this, where those principles have been so egregiously violated, it is incumbent upon the Court to take action to restore them.

    For all of these reasons, Mr. Williams respectfully requests that this Court grant his emergency motion for release to home confinement pending the resolution of his 2255 petition, and that it do so without delay to prevent further irreparable harm.

Dated:  May 3, 2024
       Thomson, IL

                Respectfully submitted,

                *Luke Andrew Williams*
                Luke Andrew Williams Pro Se Petitioner