By ECF via EDDS

**FILED**
**May 13, 2024, 5:10 PM**
**in the Clerk's Office**
**U.S. District Court,**
**EDNY, Brooklyn**
**Pro Se Office via**
**Box.com**

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

May 13, 2024

Re:   *United States v. Larby Amirouche, aka Luke Williams*
      Case No:  1:21-cr-00064-KAM

Dear Judge Matsumoto:

This letter is in reply to the government's response, dated May 10, 2024, opposing Mr. Williams motion for home confinement (bail) pending resolution of Amended Petition for Writ of Habeas Corpus under 28 U.SC. § 2255, filed on April 5, 2024. The reason for his letter is manifold. First, the government makes several patently inaccurate statements in its response, which need to be addressed.  Second, the government's position that the motion for home confinement should be denied because his Amended Petition is "unlikely" to be granted, is also incorrect and he cannot justify making this statement, based on the evidence now before this Court.  Third, the government takes a very nonchalant viewpoint of the extremely prejudicial circumstances surrounding Mr. Williams' tender of a guilty plea.

The government is incorrect when it speaks about the law firm of Walden, Macht & Haran LLP and its involvement in this case.  He states that "On March 18, 2024, the defendant and counsel purporting to represent him from the law firm of Walden, Macht & Haran LLP . . . began filing a litany of documents with the Court." )Gov't Resp. p. 2, ¶ 2). He states that it began with ECF Docket No. 57.

However, counsel from this law firm **did not** file "a litany of documents with the Court."  First of all there is no ECF docket No. 57 in this case. ECF docket No. 58 is a *pro se* letter from Mr. Williams filed on March 25, 2024, requesting an adjournment of 45 days, which this Court denied. On that same date Mr. Williams also filed, *pro se*, a document entitled "Failure to Investigate and Challenge Financial Loss Calculation." This document was entered on PACER on March 28, 2024. Despite being filed sooner, it is ECF docket No. 67.

1. There were no substantive filings by Walden, Macht & Haran LLP.

ECF docket No. 59 is a Notice of Termination of Counsel and Pro Se Representation of Mr. Williams.  It was entered on the docket on March 26, 2024.  The next two docket entries, Nos. 60 and 61 are letters unilaterally filed by two attorneys from Walden, Macht & Haran, LLP.  Neither attorney had permission to enter notice of appearance in this case at this time, as set forth in the prior *pro se* filed Notice of Termination of Counsel. To reiterate this fact, Mr. Williams filed a second Notice of Termination of counsel, docketed as ECF No. 63.  Everything that was filed after ECF

Docket Nos. 60 and 61 was filed *pro se* by Mr. Williams. This Court denied all substantive *pro se* filings by Mr. Williams until, on April 5, 2024, he filed his Amended Motion to Vacate his plea and sentence pursuant to 28 U.S.C. § 2255.[1] After the aforementioned filing was entered onto the docket in this case, on April 11, 2024, this Court opened a civil docket in this case, sealed the Amended Petition, and then entered a Scheduling Order requiring the government to respond by June 5th, 2024 and for Mr. Williams to reply to this response by July 5, 2024.

Subsequent to the filing of the Amended Petition, and the opening of a civil docket in this case, on May 2, 2024, Mr. Williams filed an Emergency Motion for Release to Home Confinement Pending Resolution of his 28 U.S.C. §2255 Petition. On May 10th, 2024, the government, via Federal Prosecutor David Pitluck, (sometimes "Mr. Pitluck"), filed a response, in letter format, to this Motion. By way of all of the foregoing, Mr. Williams hereby clarifies the misinformation presented by Mr. Pitluck, and sets the record straight about exactly who filed what in this case.

2. The Government's Interpretation of the Issues is Inaccurate

The government's first argument is that Mr. Williams' Amended Petition should be denied because he "knowingly and voluntarily pled guilty to the conduct charged in the superseding information and twice, under oath, affirmed that he was satisfied with counsel." (Gov't Resp. p. 5, ¶ 1). A plea cannot be considered truly voluntary if it was induced by false promises or misrepresentations from counsel. A guilty plea based on ineffective assistance of counsel or improper inducements is not voluntary and should be set aside. *Hill v. Lockhart,* 474 U.S. 52 (1985). In *Lockhart,* the petitioner's attorney told him that if he pled guilty, he would become "eligible for parole after serving one-third of his prison sentence." *Lockhart,* 474 U.S. at 55. In fact, because the petition had been convicted of a felony in Florida, he was classified as a "second offender" and was required to serve one-half of his sentenced before becoming eligible for parole." *Id.*

The longstanding test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 400 U.S. 31 (1970); *see Boykin v. Alabama,* 395 U.S. 238, 395 U.S. 242 (1969). In *Lockhart,* the petitioner argued, as Mr. Williams does in his Amended Petition, that his plea was "involuntary" as a result of ineffective assistance of counsel because his attorney supplied him with information that was erroneous. So too did Mr. Kushner, as evidence in a myriad of documents attached to Mr. Williams' Amended Petition. The U.S. Supreme Court reiterated in *Lockhart* the established holding that:

> Where, as here, a defendant is represented by counsel during the plea
> process and enters his plea upon the advice of counsel, the
> voluntariness of the plea depends on whether counsels' advice "was
> within the range of competence demanded of attorneys in criminal
> cases." *McMann v. Richardsonn,* 397 U.S. 759, 397 U.S. 771
> (1970). As we explained in *Tollett v. Henderson,* 411 U.S. 258
> (1973), a defendant who pleads guilty upon the advice of counsel
> "may only attack the voluntary and intelligent character of the guilty

---

[1] This Amended Petition amended and superseded the Petition filed by Mr. Williams on March 29, 2024.

plea by showing that the advice he received from counsel was not within the standards set forth in *McMann.*"  *Id.* 411 U.S. 267.

Mr. Williams has firmly established this fact in his Amended Petition - that Mr. Kushner repeatedly assured him that if he plead guilty he would receive supervised release -- and Mr. Kushner never informed that this was not, in fact, a guarantee in his case. This advice was categorically not within the standards set forth in *McMann* and both Mr. Pitluck and Mr. Kushner know this.  And this Court knows this.

Mr. Pitluck's statement about Mr. Williams' oath completely ignores the fact, which is supported by 630 pages if documented evidence in the form of exhibits attached to Mr. Williams 99-page Amended Petition, that Mr. Williams was given a false promise in exchange for that oath - that he would not receive prison time, and that Mr. Williams trusted his attorney's promise to him, and therefore reported to the Court both during his plea hearing and at the <u>outset</u> of his sentencing hearing, that he was satisfied with Mr. Kushner's services.  He stated that he was satisfied on those two occasions because on those two occasions he was totally unaware of how Mr. Kushner had played him, and betrayed him, and that in exchange for money - at least $80,000 - Mr. Kushner lured and lulled him to believe that prison time was not a possibility for him.

The word lured is accurate, when one examines how Mr. Kushner did this - by deceit - which is completely set out in the Amended Petition. The word lulled is also accurate because one of the ways Mr. Kushner did this was by repeatedly assuaging Mr. William's fears and anxiety by telling him "don't worry" and "you can go back to not worrying now" like one would whisper a lullaby to soothe a baby.  Evidence of a coerced (and therefore illegal) guilty plea does not get more black and white than this.

The government's take on this is short-sighted, careless and inaccurate.  Mr. Kushner's behavior is exactly the kind of behavior contemplated by *Strickland v. Washington,* 466 U.S. 668 (1984), in that Mr. Kushner's representation fell below an objective standard of reasonableness under prevailing professional norms.  A seasoned criminal defense attorney's job is not to lull his client into a false sense of security, by making false promises about what a court will do -- but rather to affirmatively warn him of all the possible repercussions and pitfalls of pleading guilty -- including the fact that the sentence is up to the court. Thus the first prong of *Strickland* is invariably met.

The second prong - that Mr. Williams must "affirmatively prove prejudice" is also met because he pled guilty based upon a lie told to him that by doing so he would avoid prison; yet the result of his guilty plea was exactly what he was told he would avoid - a prison sentence.  Prejudice in this case is actually <u>presumed</u> - as set forth by the Supreme Court in *United States v. Cronic*, 466 U.S. 648 (1984), decided just prior to *Strickland*.

The facts of *Cronic* are strikingly similar to the facts of Mr. William's case, especially those surrounding his very delayed prosecution.  In *Cronic,* the Defendants were indicted on mail fraud charges involving a check kiting scheme where checks were transferred between a bank in Florida and a bank in Oklahoma.  As in this financial fraud case, the government in *Cronic* had been preparing the case for four and a half years. *Id.* at 650. The defendant's attorney had only 25 days to prepare for trial and was woefully inexperienced. The Court looked to see whether the Court of Appeals had correctly interpreted the Sixth Amendment, by considering (1) the time afforded for investigation

and preparation; (2) the experience of counsel; (3) the gravity of the charge; (4) the complexity of possible defenses; and (5) the accessibility of witnesses to counsel. *Id.* at 653. It found that it had not.

       The Court set out some of the most meaningful words it has ever written in *Cronic.* it stated:

> if the process loses its character as a confrontation between
> adversaries, the constitutional guarantee is violated." As Judge
> Wyzanski has written:  "While a criminal trial is not a game in
> which the participants are expected to enter the ring with a near
> match in skills, neither is it a sacrifice of unarmed prisoners to
> gladiators." *Cronic,* at 654, quoting *United States ex rel. Williams v.
> Twormey,* 510 F.2d 634, 640 (CA7)

       The upshot of *Cronic*, and the holding was that "prejudice is presumed 'when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken'" *Id.* at 659 n.26, and where there is a "failure of counsel to subject the prosecution's case to meaningful adversarial testing." *Id.* at 657-59. Both are present in this case.  First, as set out in his Amended Petition, Mr. Kushner never reviewed discovery, never looked at the statute of limitations issues, and therefore failed to subject the government's case to <u>meaningful adversarial testing</u>.  Second, had Mr. Kushner not continuously lulled Mr. Williams into the false notion that a guilty plea would avoid prison time, as set forth in his affidavit attached to his Amended Petition, he never would have pled guilty.

       Regarding the number of § 2255 Petitions filed by former clients against Mr. Kushner, the government also inaccurately cites the figures in Mr. Williams' motion for home confinement.  Nowhere in this motion does it state that there have been "upwards of 60" such petitioners.  Mr. Williams' motion states that Mr. Kushner appears to have handled approximately 60 criminal cases in his career and that of those 60, approximately nine of those clients filed § 2255 petitions against him for ineffective assistance of counsel.

       In his Motion, Mr. Williams then goes on to cite several of these that are most similar to Mr. Williams' ineffectiveness in his case.  He specifically states that 9 out of 60 constitutes "an alarming 13.64 percent of Michael Kushner's cases" that "have led to habeas petitions with clients asserting violations of their constitutional right to effective legal representation." (Williams' Motion p. 15, ¶ 2)  Again it appears that Mr. Pitluck simply has not only not read Mr. Williams Amended Petition, but that he also has not read his Motion for Home Confinement.

### 3. The Government's Attitude Toward Mr. Williams § 2255 Petition is Cavalier.

       In order to obtain release on bail, a petitioner must demonstrate that there is a likelihood that the petition will be successful, based upon "claims of a substantial nature upon which the petitioner has a high probability of success," and demonstrates merits "that are more than slightly in petitioner's favor." *Harris v. United States,* No. 97 CIV. 1904 (CSH), 1997 WL 272398, at *1 (S.D.N.Y. May 21, 1997).  Mr. Pitluck argues that "the

defendant's ineffective assistance of counsel allegations simply do not meet this exacting standard." (Gov't Resp. p. 4, ¶ 3). This is simply not true.

He wrongfully asserts that "[m]any of the claims Amirouche makes are either unsupported by the evidence or simply insufficient as a matter of law." (Gov't Resp. pp. 4-5), without backing up that statement which completely ignores the 630 pages of exhibits attached to Mr. Williams' Amended Petition that directly support his claims. Mr. Pitluck treats Mr. Williams' Amended Petition as though it is nothing, despite the egregious nature of the violations committed by both him and Mr. Kushner, and despite the existence of copious documentary evidence of these violations, which are attached to the Amended Petition. This case is not nothing. This case is something. This is a rather cavalier attitude to take towards the deplorable conduct evinced by Mr. Kushner and Mr. Pitluck with regard to Mr. Williams' Sixth Amendment and Due Process Rights.

The right of an accused to be represented by counsel is a fundamental component of our criminal justice system. Lawyers in criminal cases "are necessities, not luxuries." *Gideon v. Wainwright,* 372 U. S. 335, 372 U. S. 344 (1963). Following in the footsteps of these landmark cases from the 1960's, the Supreme Court then held, in *McMann v. Richardson,* 397 U.S. 759, (1970) that the right to counsel enshrined in the Sixth Amendment "is the right to the effective assistance of counsel." If no actual "assistance for" the accused's "defense" is provided, then the constitutional guarantee has been violated. *United States v. Decoster,* 199 U.S.App. D.C. 359, 382, 624 F.2d 196, 219 (MacKinnon, J., concurring), *cert. denied,* 444 U.S. 944 (1979). That is exactly what happened in this case and Mr. Williams' Amended Petition, supported by over 600 pages of exhibits, sets this out very clearly and completely. Mr. Pitluck's letter in response reads as though he had not even read it or the arguments set out therein. Some of them involve his own conduct, acts and omissions, including a statute of limitations argument that threatens the foundations of the entire prosecution as to whether this Court even had subject matter jurisdiction over the case. Mr. Pitluck simply ignores this.

He argues that Mr. Williams' motion for home confinement should be denied because he is not likely to prevail in his Amended Petition, stating, "[t]he defendant's ineffective assistance of counsel allegations simply do not meet this exacting standard." (Gov't Resp. p. 4; ¶ 3). The allegations brought forth in Mr. Williams' Amended Petition have are weighty, and the importance of upholding the constitutional rights of criminal defendants is important. As enshrined in *McMann v. Richardson,* 397 U.S. 759 (1970), the right to counsel as guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. The Court stated: "If the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel . . ." 397 U.S. at 771.

Mr. Kushner's failures, as set forth in the Amended Petition, are not limited to misinforming Mr. Williams about the consequences of pleading guilty. He also failed to review and properly present copious amounts of exculpatory evidence, upon which he could easily have based a motion to dismiss all charges. An attorney's failure to interview witnesses or search records in preparation for a sentencing phase constituted ineffective assistance of counsel. *Porter v. McCollum,* 558 U.S. 30, 40 (2009). *See also Rompilla v. Beard,* 545 U.S. 374 (2005); Not only that, he failed to properly present extensive mitigating evidence, and to do so in a proper and organized way for

the benefit of this Court. *See Wiggins v. Smith*, 539 U.S. 510 (2003)(holding that attorney's failure to investigate defendant's personal history and present important mitigating evidence at sentencing was objectively unreasonable).

There is too much evidence contained within Mr. Williams Amended Petition to recite here regarding Mr. Kushner's blatant ineffectiveness, and how it violated Mr. Williams' Sixth Amendment rights.  The evidence of prejudice is also overwhelming. Thus, contrary to Mr. Pitluck's statements, there is a strong likelihood that Mr. Williams **will** receive relief from his Amended Habeas Petition.  Therefore, Mr. Williams has met the first part of his burden for a grant of home confinement.

    4. <u>Mr. Williams' Has Met His Burden for a Grant of Home Confinement</u>

In addition to all of the foregoing, Mr. Williams has shown extraordinary circumstances justifying the grant of bail, as required by *Ostrer v. United States,* 584 F.2d 594, 596 n.1 (2d Cir. 1978) and *Mapp v. Reno,* 242 F.3d, 221, 226 (2d Cir. 2001).

He has shown (1) that substantial claims are set forth in the habeas petition; (2) that he is likely to prevail on these substantial claims; and (3) that extraordinary circumstances exist which justify the grant of home confinement in order to make the writ of habeas corpus effective.  *Bennet v. United States,* 03-cv-1852 (SAS), 2004 WL 2711064, at *4 (S.D.N.Y. Nov. 23, 2004).   All of this is set out in his Petition for Home Confinement, inlcuding the fact that he is not receiving all of his necessary and required medication for his mental health issues.  As a result of his untreated bipolar disorder and ADHD, Mr. Williams is suffering severe distress and deterioration in prison, which is in direct violation of his Eighth Amendment rights against cruel and unusual punishment.

The claims set forth in Mr. Williams' Amended Petition are substantial, and presage a high probability of success.  He demonstrates merits that are "more than slightly in his favor" and he shows exigency necessitating his release to home confinement.  He also demonstrates the fact that he has no prior criminal record and has never been and is no flight risk. Rather, he is first-time non-violent offender whose involvement in the instant offense was influenced by his untreated mental illness. The Second Circuit has instructed that "the absence of a prior criminal record is an important factor in determining whether bail is appropriate pending habeas litigation." *United States v. Whitman,* 153 F. Supp. 3d 658, 660 (S.D.N.Y. 2015). Mr. Williams' background and characteristics weigh heavily in favor of release.

The Second Circuit has also recognized that in exceptional cases, release pending habeas review is necessary to "make the habeas remedy effective." *Reno,* at 226. Mr. Williams' case presents exactly that confluence of factors that make release not just appropriate, but imperative.  Releasing him to home confinement - to the safety of his parents' home, where he has lived ever since his indictment, would allow Mr. Williams to receive the mental health treatment he desperately needs, while still subjecting him to significant restrictions on his liberty and ensuring the safety of the community. It would also provide him with fairness and humanity in a system that has thus far failed to deliver either. And it would send a powerful message that this Court takes seriously its obligation to safeguard the rights of the accused and to ensure that justice is done.

Release pending habeas review, in contrast, is a matter of judicial discretion, guided by the equitable principles that have traditionally governed habeas corpus proceedings. See *Hilton v. Braunskill,* 481 U.S. 770 at 775-76 (1987). These equitable principles recognize that the interest in release pending habeas review "is strongest where the factors of flight risk and danger are absent, where the remaining portion of the sentence to be served is short, and where the petitioner has raised substantial constitutional claims upon which he has a high probability of success." *Id.* at 778. All of these factors are present in Mr. Williams' case, making release to home confinement not only appropriate, but necessary to prevent injustice.

Moreover, the relief that Mr. Williams seeks - release to home confinement, rather than bail - is narrowly tailored to address the specific harms he is suffering and to balance the interests of all parties. Home confinement is a form of custody that allows for close monitoring and supervision by the Court and the Probation Department, while also allowing Mr. Williams to receive the medical treatment he so urgently needs.

5. New Details Urging Grant of Motion for Home Confinement

Since his surrender at Thomson Prison Camp, in Thomson, Illinois, on March 29, 2024, the prison camp has been under some form of lockdown for most of the time.  Since Friday, April 26, 2024, the prison has been on the highest level of lockdown, where inmates are not allowed to communicate with anyone outside of the prison walls and no visitor are allowed.

Mr. Williams has not communicated with his family via the Corr Links email system for inmates, since that date; and his family has not been able to visit him.  None of his loved ones actually knows how he is doing, if he is safe, if he is receiving any of his needed medications. This has only exacerbated the difficulties he is facing at Thomson.

In light of this fact, and that the prison camp has its own rules and laws regarding its internal administration, it is of no comfort, nor is it of any real assurance that Mr. Pitluck, who prosecuted Mr. Williams despite the fact that the statute of limitations had already run on all of the charges, plans to contact  BOP medical staff in order to ascertain any information, and to "update the Court" regarding same. (Gov't Resp. p. 5, ¶ 2).

6. Conclusion

In conclusion, Mr. Williams respectfully urges this Court to grant his motion for release to home confinement pending the resolution of his meritorious § 2255 petition. The extraordinary circumstances of this case, including the egregious constitutional violations alleged in the petition, the BOP's failure to provide necessary medical treatment to Mr. Williams, the inability to find out anything that is going on due to the prison lockdown, and Mr. Williams' lack of any criminal history or risk of flight, all weigh heavily in favor of this relief.

By granting this motion, the Court would not be pre-judging the merits of Mr. Williams' claims, but simply ensuring that he has a fair and meaningful opportunity to present them. It would be a recognition of the severity of the harms that Mr. Williams is suffering, and of the need for immediate action to mitigate those harms.

Most importantly, granting this motion would reaffirm this Court's commitment to the most fundamental principles of justice, due process, the rule of law, and human dignity that are the bedrock of our American legal system.

For all of these reasons, Mr. Williams respectfully requests that this Court grant his emergency motion for release to home confinement pending the resolution of his 2255 petition, and that it do so without delay to prevent further irreparable harm.

Dated:  May 13, 2024
   Thomson, IL

      Respectfully submitted,

      *Luke Andrew Williams*
      Luke Andrew Williams Pro Se Petitioner