By ECF via EDDS

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

FILED
Jun 3, 2024, 5:34 PM
in the Clerk's Office
U.S. District Court,
EDNY, Brooklyn
Pro Se Office via
Box.com

June 3, 2024

Re:    *United States v. Larby Amirouche, aka Luke Williams*
       Case No: 1:21-cr-00064-KAM

**Dear Judge Matsumoto,**

I write to respectfully address the Court's order denying Mr. Luke Williams's emergency motion for release to home confinement pending resolution of his 28 U.S.C. § 2255 petition. After carefully reviewing the order, I submit that the decision overlooks several critical due process issues and fails to engage with the full scope of Mr. Williams's claims, particularly in light of the unique circumstances of this case and controlling Second Circuit precedent.

First and foremost, the Court's order does not adequately address the grave due process violations and ineffective assistance of counsel issues raised in Mr. Williams's petition. These issues, which go to the heart of the fairness and integrity of the proceedings against him, warrant closer scrutiny and a more comprehensive analysis.

### I. Rule 32 Violation is Plain Error and Prejudice Per Se

Most glaringly, the Court's analysis disregards the profound prejudice Mr. Williams suffered as a result of his counsel's failure to object to a fundamentally flawed presentence report (PSR) that was provided mere days before sentencing in violation of Federal Rule of Criminal Procedure 32(f). The record clearly shows that Mr. Williams was deprived of his right to review and challenge the PSR's contents, including the drastically inflated $6.5 million loss amount to which he contemporaneously objected. This requires resentencing under *United States v. Youngs,* 687 F.3d 56, 59 (2d Cir. 2012) (holding that the failure to allow a defendant to review the PSR before sentencing violates Rule 32 and requires resentencing).

This blatant Rule 32 violation and counsel's utter dereliction of duty in the PSR process constitute deficient performance under *Strickland v. Washington*, 466 U.S. 668 (1984). The Second Circuit has repeatedly held that such a violation is plain error requiring vacatur and resentencing. *See United States v. Reesing,* 19 F.4th 108, 118-19 (2d Cir. 2021); *United States v. Ware,* 577 F.3d 442, 452-53 (2d Cir. 2009).

The prejudice is manifest - Mr. Williams was sentenced based on inaccurate information that he had no fair chance to contest. The Second Circuit has made clear that a Rule 32 violation of this magnitude is plain error requiring vacatur and resentencing. See United *States v. Reesing,* 19 F.4th 108, 118-19 (2d Cir. 2021) (vacating sentence for Rule 32 error where defendant was not provided final PSR in

1

advance of sentencing to review and object); *United States v. Gazzara,* 587 F. App'x 27, 29 (2d Cir. 2014) ("It is well settled that a district court's failure to afford a defendant an opportunity to review the PSR before sentencing is a clear violation of Rule 32 requiring resentencing.").  *Rosales-Mireles v. United States,* 138 S.Ct. 1897, 1908 (2018)(reaffirming that an obvious sentencing guidelines error that affects a defendant's substantial rights will ordinarily warrant relief on plain error review). this is because, as set out in *United States v. Showerman,* 68 F.3d 1524, 1528 (2d Cir. 1995), sentencing based on incorrect information in the PSR violates due process.

As the Supreme Court emphasized, Rule 32 "contemplates full adversary testing of the issues relevant to a Guidelines sentence" and mandates an opportunity to object to the PSR. *Burns v. United States,* 501 U.S. 129, 135-36 (1991). Depriving a defendant of that opportunity based on counsel's ineffectiveness violates due process and "undermines the integrity of the sentencing proceeding." *United States v. Jordan,* 791 F. App'x 20, 26 (2d Cir. 2019). At minimum, this procedural defect, coupled with the other issues raised, presents an extraordinary circumstance justifying release pending the 2255 motion under *Mapp v. Reno,* 241 F.3d 221, 226 (2d Cir. 2001).

Thus the failure to provide Mr. Williams with the PSR in a timely manner before sentencing, in violation of Rule 32, deprived him of his due process right to be sentenced based on accurate information. *See United States v. Fatico*, 579 F.2d 707, 711 (2d Cir. 1978) ("It is a denial of due process for the court ... to rely on materially false facts when imposing sentence."). This is error requiring the sentencing to be vacated. In *Minto v. United States*, 2020 U.S. Dist. LEXIS 124624 (E.D.N.Y. July 15, 2020), the Court granted § 2255 relief based on the denial of the defendant's "due process right to be sentenced based on materially accurate information" where the court relied on an inaccurate loss amount in imposing sentence. This error is 100% analogous to the error in Mr. Williams' case.

## II. Overlooked Plea and Sentencing Irregularities

The Court's order also overlooks serious irregularities in the plea process that call into question the validity of the alleged agreement. Notably, the docket contains no formal plea agreement as required by Federal Rule 11, and the references to a "guilty plea hearing" transcript and plea to the "charged offense" lack record support. If no valid plea was entered, Mr. Williams's conviction would be constitutionally infirm, as he was sentenced on charges he did not properly admit. This is an independent basis for 2255 relief that the Court failed to consider. *See McCarthy v. United States,* 394 U.S. 459, 466 (1969) (holding that noncompliance with Rule 11 renders plea involuntary and requires vacatur); *United States v. Mercado,* 349 F. App'x 625, 628 (2d Cir. 2009) (vacating plea where record did not establish factual basis for plea as required by Rule 11).

The lack of a formal Rule 11 plea agreement on the docket raises doubts about whether any valid guilty plea was entered at all. Rule 11(b)(1) requires the court to inform the defendkant of a list of critical rights and consequences before accepting a plea. With no evidence this occurred, the plea is questionable. *See United States v. Pattee,* 820 F.3d 496, 503 (2d Cir. 2016). The Due Process Clause requires that a defendant's plea be voluntary and intelligent, which requires that he be fully aware of

the direct consequences of the plea. *Brady v. United States*, 397 U.S. 742, 748 (1970). Here, the lack of a formal plea agreement on the docket and the failure to inform Mr. Williams of the correct loss amount and sentencing exposure rendered his plea unintelligent and involuntary in violation of his rights to due process.

Moreover, the record suggests Mr. Williams was sentenced based on the original indictment rather than the superseding information to which he allegedly pled, violating his Sixth Amendment right to be sentenced only on the offense of conviction. *See Cole v. Arkansas,* 333 U.S. 196, 201 (1948). ("It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made."); *United States v. Weingarten*, 713 F.3d 704, 712 (2d Cir. 2013) (vacating sentence based on offense not charged in indictment or proven at trial).

Being sentenced based on the wrong charging document (the original indictment rather than the superseding information) violated Mr. Williams' most basic due process right to notice of the charges. *See Cole v. Arkansas*, 333 U.S. 196, 201 (1948) ("No principle of procedural due process is more clearly established than that notice of the specific charge ... [is] among the constitutional rights of every accused."). The failure to ensure that Mr. Williams was sentenced on the correct charge further undermines the judgment's validity and warrants immediate release.

When a defendant is sentenced based on an original indictment rather than teh superseding information to which he pled guilty, the error has a highly prejudicial impact.  The original indictment is void and there can be no conviction based upon it. *See United States v. Gonzalez,* 420 F.3d 111, 132 (2d Cir. 2005), which held that "when an indictment has been superseded, the original indictment is void, and there can be no conviction based upon it."  *See also United States v. Juwa,* 508 F.3d 694, 700 (2d Cir. 2007), where the Second Circuit found IAC based on counsel's failure to raise a meritorious statute of limitations defense, even though defendant had pleaded guilty.

These significant procedural defects, combined with the IAC issues discussed below, demonstrate extraordinary circumstances justifying release under 2255. The Court must carefully consider each claim and provide a reasoned explanation that engages with the specific facts and arguments presented. The high stakes and clear potential for injustice demand a searching, comprehensive review. These foundational defects, ignored by the Court's order, independently warrant immediate release.

### III. IAC Claims and Extraordinary Circumstances

The Court also failed to adequately grapple with the interplay between Mr. Williams's substantial IAC claims and the "extraordinary circumstances" test under *Mapp.* The Second Circuit has indicated that extraordinary circumstances may exist where, as here, IAC claims are "clearly meritorious" and the consequences "so severe that the petitioner's continued custody would be 'manifestly unjust.'" *Carpinello,* 589 F.3d at 85.

As detailed in Mr. Williams § 2255 Amended Petition, counsel's failure to investigate and raise a potentially dispositive statute of limitations defense was

3

objectively unreasonable and prejudicial under *Strickland*, exposing Mr. Williams to criminal liability for time-barred conduct and a drastically inflated loss amount. The staggering disparity between the $6.5 million loss figure and the $0 actual loss directly attributable to counsel's deficient performance undermines the fairness and integrity of the entire proceeding. No rational defendant would plead guilty based on such a grossly overstated loss amount had they been properly advised. *See Glover v. United States*, 531 U.S. 198, 203-04 (2001) (holding that any amount of additional jail time resulting from deficient performance is prejudicial for IAC purposes).

The prejudice inquiry for an IAC claim based on failure to raise a limitations defense is different than the prejudice inquiry for a challenge to the plea itself. For the former, the petitioner "does not need to show either that he would have gone to trial or that he would have prevailed at trial if his attorney had informed him of the limitations defense." *Parisi v. United States,* 529 F.3d 134, 140 (2d Cir. 2008). "Instead, the question is whether the attorney's failure to raise the limitations defense prejudiced the outcome of the proceedings"—that is, whether there is a reasonable probability that, but for counsel's errors, the result would have been different. *Id.; see also Strickland,* 466 U.S. at 694.

It strains credulity to think that any defendant would knowingly agree to a plea premised on a $6.5 million loss when the true amount was $0. The disparity between the stipulated and actual loss, resulting directly from counsel's failure to investigate the limitations issue, goes to the heart of the prejudice inquiry. *See Glover,* 531 U.S. at 203. The manifest unfairness of Mr. Williams languishing in prison based on such a fundamentally flawed proceeding is precisely the type of "extraordinary circumstance" justifying release pending a 2255 motion. *See Mapp,* 241 F.3d at 226.

The Court's heavy reliance on Mr. Williams's statements at plea and sentencing regarding satisfaction with counsel is misplaced in the IAC context. The proper inquiry for an IAC claim based on failure to raise a limitations defense "does not entail a further showing of prejudice...the issue is not whether the defense would have been successful, but whether counsel's failure to pursue this strategy was constitutionally deficient." *Parisi*, 529 F.3d at 140.

Tellingly, the Government's reliance on the $114,171.59 restitution order payable to payment processing companies rather than actual banks exposes the fatal statute of limitations flaw that counsel failed to raise. As the Plea Hearing transcript reveals:

> MR. KUSHNER: With respect to the financial number you were just mentioning, your Honor, in explanation somewhat, Mr. Williams would like the Court to be aware that some of the money that went into the accounts that he controlled was used to pay marketing costs and expenses related to the businesses and it wasn't all profit that came into his pocket at that point in time."
>
> THE COURT: Okay. But once they went into those accounts and to the extent they may be entitled to a deduction for products actually received by a consumer, have you done any investigation as to where the rest of the money went?

4

>MR. PITLUCK: Your Honor, we saw some money go out the door to purchase items or in cash, but we didn't account for every dollar that went into the Defendant's account. Some of them went to other people that were working for him, other co-conspirators in the scheme.

And as the Sentencing Hearing shows, the prosecutor incredibly stated the banks "wrote off the losses here" when in fact there were no bank losses at all. The Government's own restitution order confirms the only identified "victims" are payment processors, not banks. And counsel's references to "asking" the banks to "cooperate" about funds belies the absence of any actual bank victims. This contrivance was clearly designed to circumvent the statute of limitations bar that should have precluded this prosecution entirely.

The Supreme Court has held that in the IAC context, the proper inquiry is not whether Mr. Williams said he was satisfied, but whether counsel's performance was objectively unreasonable and prejudicial. *See Lee v. United States*, 137 S.Ct. 1958, 1967 (2017) ("Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."). The contemporaneous evidence here - the grossly inflated loss amount, lack of any plea agreement on the docket, etc. - substantiates that the plea was the product of IAC notwithstanding Mr. Williams' statements in court.

The Second Circuit has indicated that extraordinary circumstances may exist where, as here, IAC claims are "clearly meritorious" and the consequences "so severe that the petitioner's continued custody would be 'manifestly unjust.'" *Richard S. v. Carpinello,* 589 F.3d 75, 85 (2d Cir. 2009). No rational defendant would plead guilty based on a $6.5 million loss when the true amount was $0. *See Glover v. United States,* 531 U.S. 198, 203 (2001). The Court's heavy reliance on Mr. Williams's plea statements regarding counsel is misplaced in the IAC context. *See Parisi v. United States,* 529 F.3d 134, 140 (2d Cir. 2008).

Counsel's failure to raise the statute of limitations defense is a serious error, not to be dismissed or taken lightly. *See United States v. Juwa*, 508 F.3d 694 (2d Cir. 2007), where the Second Circuit granted § 2255 relief based on IAC for failing to raise a statute of limitations defense, even though the defendant had pleaded guilty. Counsel's failure to raise the statute of limitations defense was prejudicial even if it would not have ultimately prevailed, because it deprived Mr. Williams of an opportunity to make an informed decision about whether to plead guilty. *See Lee v. United States,* 137 S.Ct. 1958, 1966-67 (2017). Thus the failure to raise a limitations defense is itself prejudicial IAC warranting relief.

At minimum, the Court should have considered whether the unique circumstances here - the strength of the IAC claims, the grievous prejudice, and the profound deprivation of liberty from a conviction and sentence that are likely unlawful - amount to extraordinary circumstances warranting release. Instead, the Court reflexively applied a general rule disfavoring release without the searching, context-specific analysis Second Circuit law requires.

These significant procedural defects, combined with the IAC issues discussed below, demonstrate extraordinary circumstances justifying release under 2255. The Court must carefully consider each claim and provide a reasoned explanation that engages with the specific facts and arguments presented. The high stakes and clear potential for injustice demand a searching, comprehensive review.

### IV. The Accumulation of Errors is Manifestly Unjust - Conclusion

Mr. Williams' case presents a compelling example of a conviction and sentence obtained in violation of the most fundamental tenets of due process - notice, accuracy of information, voluntariness. The accumulation of serious due process errors - the involuntary plea, the Rule 32 violation, being sentenced on the wrong charging document, the PSR process, and glaring IAC all operated together to deprive Mr. Williams of his liberty without due process of law. *See Chambers v. Florida,* 309 U.S. 227, 236 (1940)("The Due Process Clause protects against convictions obtained through 'methods that offend a sense of justice.'")

The totality of these egregious errors thoroughly undermines the integrity of these proceedings and the fundamental validity of Mr. Williams' conviction and sentence. It makes his continued incarceration based on this unconstitutional sentence and sentence a manifest injustice. In these extraordinary circumstances, release pending the outcome of Mr. Williams § 2255 motion is necessary to prevent further miscarriage of justice. The Court has simply failed to grapple with these glaring defects that make Mr. Williams' continuing custody manifestly unjust. The fact that he is facing incarceration based on a proceeding infected with these constitutional errors is the essence of manifest injustice. Release pending his § 2255 petition is not only appropriate but necessary to prevent the further denial of his due process rights.

In sum, this is a case that cries out for close and careful scrutiny at every stage. Mr. Williams has raised substantial claims that strike at the heart of the fairness and integrity of the criminal process - ineffective assistance of counsel leading to an unintelligent plea and unlawful sentence, and breakdowns in the plea and sentencing procedure that cast doubt on the structural validity of the judgment. The strength of these claims, the profound prejudice to Mr. Williams, and the serious constitutional questions presented by his continued incarceration amount to extraordinary circumstances justifying release pending the 2255 motion under the governing Second Circuit standards.

The Court should hold an evidentiary hearing to further develop the record on these critical issues. Mr. Williams deserves a full and fair opportunity to prove his claims, both before this Court and on appeal if necessary. The Court's order denying release failed to adequately grapple with the compelling grounds presented. A more searching and comprehensive analysis is warranted to prevent a miscarriage of justice.

For all these reasons, Mr. Williams respectfully submits that the Court should reconsider its order denying release and grant his motion. At the very least, the Court should hold an evidentiary hearing to further develop the record on the IAC claim and its impact on the extraordinary circumstances inquiry. The interests of justice demand a closer look at the singular unfairness of Mr. Williams's continued incarceration based on a fundamentally unsound proceeding.

>Respectfully submitted,
>
>*/s/ Luke Williams*
>
>Luke Williams, Defendant Pro Se