

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DCP                                              *271 Cadman Plaza East*
F. #2012R00103                                   *Brooklyn, New York 11201*

June 7, 2024

By ECF and E-mail

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    United States v. Larby Amirouche
       Criminal Docket No. 21-64 (KAM)

Dear Judge Matsumoto:

        The government respectfully submits this memorandum in opposition to
Petitioner Larby Amirouche's ("Amirouche" or "Petitioner") pro se motion, under 28 U.S.C. §
2255, for vacatur of his conviction and sentence.  See ECF Docket No. 73 (the "Petition").  For
the reasons set forth below, many of Petitioner's claims have been waived and the claims that
have not been waived are without merit.  As a result, Petitioner's motion should be denied in its
entirety.

        I.      Background

                a.      Offense Conduct

        As the Court is aware, Petitioner's criminal conviction, following his guilty plea
pursuant to a plea agreement, stems from his leadership of a series of fraudulent internet
marketing schemes that defrauded both domestic and international customers as well as
numerous financial institutions.  The government has described the details of Petitioner's
conduct in a letter submitted in advance of sentencing.  See ECF Docket No. 44 (Oct. 30, 2023).
Petitioner led a criminal scheme that repeatedly and systematically engaged in a protracted and
complex scheme to defraud consumers and banks.  He did so while creating false documents,
lying to financial institutions and deceiving nominees who thought they were joining a business
endeavor.  Petitioner's schemes lined his pocket with millions of dollars – money the
government demonstrated flowed from a series of nominee accounts directly to a bank account
he controlled.  And as Petitioner now disregards, the evidence demonstrates that Petitioner was
the one directing either the nominees to lie, or instructing his co-conspirators to have the
nominees lie, to financial institutions.

For his conduct, Petitioner was charged in a four-count indictment charging him with (1) to commit conspiracy to commit bank and wire fraud, in violation of 18 U.S.C. § 1349; (2) bank fraud, in violation of 18 U.S.C. § 1344; (3) making false statements to a bank, in violation of 18 U.S.C. § 1014; and (4) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). Each of the charges carried a statutory maximum sentence of 20 years' imprisonment, with the exception of the charge for making a false statement to a bank, which carries a statutory maximum of 30 years' imprisonment.

Following Petitioner's indictment, he was released on bail and retained Michael Kushner, Esq. to represent him. The government provided discovery to Mr. Kushner on three occasions. Throughout the prosecution of the case, the government and Mr. Kushner engaged in discussions about the case, including regarding the discovery and, eventually, about a potential disposition of the case short of a trial. The parties engaged in extensive plea discussions and, in early 2022, the government extended a plea agreement to Petitioner. That plea agreement, which was the product of discussions with Mr. Kushner, including regarding the facts of the case, provided that, if he accepted the agreement, Petitioner would waive indictment and plead guilty to a single count information charging him with conspiracy to commit bank fraud, pursuant to 18 U.S.C. § 371. The government and Mr. Kushner had a number of conversations about the plea proposed plea agreement, and in late April 2022, Mr. Kushner indicated to the government and the Court that Petitioner wanted to change his plea. A guilty plea was set for May 5, 2022.

b.  The Petitioner's Guilty Plea

On May 5, 2022, Petitioner waived indictment and pled guilty to a single count information, pursuant to a plea agreement with the government, charging him with conspiracy to commit bank fraud, pursuant to 18 U.S.C. § 371. See ECF Docket No. 49.[1]

The plea agreement that Petitioner signed conferred significant benefits. As noted above, the statutory maximum sentence for the four charges in the indictment were 20 years and 30 years. However, the single charge proposed in the plea agreement pursuant to 18 U.S.C. § 371, had a five-year statutory maximum. (See Exhibit A, Plea Agreement dated May 5, 2022 at ¶ 1(a)). The reduced statutory maximum was particularly notable because the government's estimate of Petitioner's applicable range of imprisonment pursuant to the United States Sentencing Guidelines (the "Guidelines") was 87-108 months, assuming timely acceptance of responsibility. (Id. at ¶ 2). As part of the plea agreement, Petitioner specifically waived the right to challenge a sentence at or below the Guidelines. (Id.). The plea agreement included a waiver of any appeal or other challenge, including "by petition pursuant to 28 U.S.C. § 2255" in the event that the Court imposed a sentence of 360 months or below. (Id. at ¶ 4). That waiver was effective "without regard to the sentencing analysis used by the Court." (Id.)

At his plea hearing, Petitioner swore under oath to tell the truth and was informed by Your Honor that he could be prosecuted for perjury for any false statements. (ECF Docket No. 49, attached hereto as Exhibit B, at 2:24-3:1-16). Petitioner described a significant level of education – a year and a half at Purdue University – and explained that he could read and write

---

[1] The Petitioner appeared by video conference for his guilty plea. See Ex. A at 1.

in English.  (<u>Id.</u> at 4:2-13).  The Court devoted significant attention to Petitioner's medication and his ability to understand the proceedings, and Petitioner repeatedly confirmed that his medication did not impair his ability to understand the proceedings or make important decision (<u>Id.</u> at 6:10-7:6).

The Court then asked Petitioner about his representation and the following exchange occurred:

> THE COURT: Mr. Amirouche, as you know, you have the right to counsel and you have representation by Mr. Kushner in this case. You have the right to counsel throughout the entire proceedings in this case.
>
> Are you satisfied with your lawyer?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Have you had sufficient time to review the charges, your rights, and the consequences of your plea with your lawyer?
>
> THE DEFENDANT: Yes, Your Honor.

(<u>Id.</u> at 10:4-13).  Following Petitioner's knowing waiver of indictment to plea to the Information, the Court confirmed that Petitioner had a right to continue to plead not guilty and proceed to trial and further explained Petitioner's rights at such a trial, which Petitioner waived.  (<u>Id.</u> at 14-17). Petitioner confirmed his desire to give up those rights and plead guilty.  (<u>Id.</u> at 17:6-9).

Thereafter, Petitioner <u>twice</u> confirmed that he had been given an opportunity to review the plea agreement with his lawyer prior to the plea.  On the first occasion the Court asked Petitioner if he had "an opportunity to review your plea agreement with your lawyer?" Petitioner responded "Yes, Your Honor." (<u>Id.</u> at 17:15-17).  Later in the proceeding, the following exchange took place:

> THE COURT:  Mr. Amirouche, do you recall signing a document entitled "Plea Agreement"?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And did you have a chance to review the agreement with your lawyer before you signed it?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And do you understand what this agreement provides?

> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And by signing this agreement, do you
> intend to indicate you both understand the terms of the
> agreement and that you agree to those terms?
>
> THE DEFENDANT: Yes, Your Honor.

(Id. at 19:2-14).  The Court proceeded to explain to Petitioner the potential consequences of pleading guilty, including a possible term of imprisonment, supervised release, a fine, forfeiture, restitution and a special assessment, each of which Petitioner confirmed he understood.  (Id. at 19:15-21:21).

The Court then explained, in detail, the application of the Guidelines, the estimated Guidelines calculation and the applicable Guidelines range according to the government's estimate.  Petitioner confirmed he understood each of these and that he had the chance to discuss it with his lawyer.  (Id. at 21:24-24:2).  The Court further explained that it would review the PSR and other submissions and has "the ability to impose a sentence that is more severe or less severe than that recommended by the guidelines, so long as I do not exceed 60 months maximum."  Petitioner confirmed he understood.  (Id. at 25:5-12).  The Court specifically discussed the following with Petitioner:

> THE COURT: So, Mr. Amirouche, even though your
> lawyer agrees generally with the government's estimated
> guidelines calculations, those calculations could be
> incorrect. And in any event, once I calculate your
> guidelines, as I said, I have the ability to impose a more or
> less severe sentence than that recommended by the guidelines.
> Do you understand?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Do you also understand that if you
> receive a sentence that is not what you hoped for or expect,
> that that will not be a basis for you to withdraw you guilty
> plea.
>
> Do you understand?
>
> THE DEFENDANT: Yes, Your Honor.

(Id. at 26:9-22).   Petitioner further confirmed each of these facts when he pled guilty:

> THE COURT: Mr. Amirouche, what is your plea, guilty
> or not guilty?

4

THE DEFENDANT: Guilty, Your Honor.

THE COURT: And, sir, are you making the plea of guilty voluntarily and of your own free will?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did anyone threaten you or force you to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Other than the agreement that you made with the government, did anyone make any promise to you that caused you to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Did anyone make any promise to you about what your sentence will be?

THE PETITIONER: No, Your Honor.

(Id. at 27:11-28:1)

Petitioner then allocuted to his criminal conduct, explaining to the Court the following:

THE DEFENDANT: Together with others I agreed to file false documents with financial institutions in order to obtain money and property from those banks. The scheme took place between 2012 to 2016, Your Honor.

THE COURT: And did you know that the submission of false statements in connection with your submissions to the banks contained false information?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And did you know that if you were to submit those false statements to the bank, the bank would be likely to extend or make available funds to you and/or your coconspirators?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you said that you engaged in this
activity between January 2012 and April 2016; is that correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And when you made this agreement with
others to engage in this fraudulent activity with regard to
the bank, did you know that you were making an illegal agreement?

THE DEFENDANT: Yes, Your Honor.

(Id. at 28:7-29:2).

    c.  <u>Petitioner's Sentencing</u>

In anticipation of sentencing, defense counsel filed a sentencing submission
arguing that Petitioner should receive a below guidelines sentence of home detention and five
years of supervised release. (ECF Docket No. 43). Counsel also submitted over a dozen letters
of support and, under seal, fifteen exhibits containing medical records. (ECF Docket Nos. 42
and 43). Prior to sentencing, the government engaged in a number of conversations with Mr.
Kushner regarding the appropriate restitution amount, which was not specifically delineated in
the plea agreement. (See Ex. A at ¶ 1(e)). Although the government's initial estimate of
restitution at the plea proceeding was more than $3.5 million (Ex. A at 21:1-5), after discussions
with Mr. Kushner regarding the supporting facts, including the possibility of conducting a <u>Fatico</u>
hearing, the government agreed to a restitution amount of $114,171.59. (See Ex. C at 71).

During the sentencing proceeding, Petitioner was again asked, on two separate
occasions, by the Court if he was satisfied with Mr. Kushner's representation and the Petitioner
confirmed he was satisfied. (See Sentencing Transcript dated November 3, 2023, attached hereto
as Exhibit C, at 7:5-7; see also id. at 13:8-11).[2] Petitioner also confirmed that he had reviewed
the Presentence Report (the "PSR") and Addenda prepared by the United States Department of
Probation, the government's sentencing submission and his own attorney's submission, that he
did not have any difficulty understanding any of them and that he was able to discuss those
submissions with his attorney. (Id. at 13:19-14:4).

Petitioner was provided the opportunity to speak at sentencing and addressed the
Court at length. Petitioner began his remarks by stating that:

    I stand here with a clear recognition of what I have done. I've
    spent the past two and a half years under indictment thinking

---

[2] At sentencing, the Court asked Petitioner if he wished to dispute or contest the validity
of his plea, and the defendant declined to do so. (Ex. C at 14). The Court also confirmed that
the statements Petitioner made under oath to the Court at the plea hearing were "truthful." (Id.).
Petitioner confirmed that they were. (Id.)

about the horrible decisions that I made when I was young and immature, when I was a young and immature man.

The crimes I committed were a result of poor judgment exacerbated by my battle with bipolar illness. I was very young during the period of the indictment. I was motivated by greed and the pressures of living in Miami Beach and Las Vegas, two cities notorious for people to visit and make decisions they later regret.

But I'm here to take full accountability. I've learned from my errors and have committed myself to changes that will prevent such actions in the future.

(Id. at 17:25-18:13). Petitioner spoke at length about his rehabilitation, mental health issues, faith, plans for the future and approach to paying back his victims. (Id. at 18:14-21:25).

Mr. Kushner also addressed the Court and argued for a non-incarceratory sentence, focusing on Petitioner's successful adjustment on pre-trial supervision, "extraordinary rehabilitation" and good deeds in the community. (Id. at 28:16-30:12). Counsel also devoted a great deal of focus to Petitioner's struggles with mental health issues and the effect a term of incarceration would have on his treatment. (Id. at 30:13-32:9).

The Court sentenced Petitioner to a term of 20 months imprisonment, which constituted a sentence at one-third of the applicable Sentencing Guidelines.[3] (Id. at 66:12-13). The Court noted that the below Guidelines sentence was due to Petitioner's "lack of criminal history, his charitable efforts since his arrest, and his extensive mental health challenges." (Id. at 66:1-5).

d.  Petitioner's Appeal

On November 10, 2023, Petitioner, through Mr. Kushner, filed a notice of appeal. (ECF Docket No. 43). On December 20, 2023, the government filed a motion to dismiss the appeal on the basis that Petitioner had waived his right to appeal. United States v. Amirouche, 23-7755, ECF Docket No. 15. On March 14, 2024, the Petitioner withdrew his appeal. See id. at ECF Docket No. 21.

II.  The Instant Petition

---

[3] As noted above, the applicable Guidelines range was 60 months' imprisonment due to the statutory maximum term of imprisonment. Without the statutory maximum, the range of imprisonment would have been 87-108 months. (Ex. A at ¶ 2).

On April 5, 2024, Petitioner filed an amended pro se petition to vacate his conviction and sentence pursuant to 18 U.S.C. § 2255. (See ECF Docket No. 73, hereinafter the "Petition").[4]

In a submission constituting nearly 100 pages, as well as exhibits, Amirouche raises a litany of challenges to his conviction and his sentence. When distilled, many of the claims allege ineffective assistance of counsel against Mr. Kushner, including allegations that counsel (i) promised the Petitioner he would receive a sentence of supervised release; (ii) coerced the Petitioner into a guilty plea; (iii) failed to review discovery, including with the Petitioner; (iv) failed to communicate with the Petitioner prior to plea and sentencing; (v) failed to review or contest the PSR; (vi) failed to represent the Petitioner effectively at sentencing; and (vii) failed to raise a statute of limitations defense.[5] Included in these claims are assertions that the charges are time barred, that Amirouche did not defraud banks and that the government committed misconduct.

As set forth below, any substantive claims, whether advanced directly or under the guise of ineffective assistance of counsel, have been defaulted or waived. Moreover, each of the ineffective assistance of counsel claims are also legally and factually meritless.

III.    Standard of Review

Under 28 U.S.C. § 2255, a prisoner in custody pursuant to a sentence imposed by a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" if, in relevant part, the "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Relief under Section 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)).

In a Section 2255 motion, the burden is on the petitioner to show his sentence is unconstitutional or otherwise contrary to law. "Habeas corpus is not a neutral proceeding in which the petitioner and the State stand on an equal footing. Rather, it is an asymmetrical

---

[4] As the government noted in its recent letter opposing Petitioner's motion for bail pending resolution of the motion to vacate, Petitioner and purported counsel for Petitioner, made a series of filings seeking relief prior to Petitioner's surrender to the Bureau of Prisons. (See ECF Docket No. 76). However, because the filings were made by counsel who did not represent Petitioner, the government only addresses the allegations made in the Petition.

[5] The government contacted Mr. Kushner to determine if he wanted to submit an affidavit responding to Petitioner's allegations. Mr. Kushner respectfully declined to submit an affidavit at this stage of the proceeding, but stated that he would respond to the allegations if ordered by the Court to do so. The government respectfully submits that an affidavit from Mr. Kushner is not necessary to rule on Petitioner's claims, which, for the reasons stated supra, are insufficient as a matter of law to merit relief.

enterprise in which a prisoner seeks to overturn a presumptively valid judgment of conviction." Pinkney v. Keane, 920 F.2d 1090, 1094 (2d Cir. 1990). The petitioner "bears the burden" of proving that his detention is contrary to law and "because the habeas proceeding is civil in nature, the petitioner must satisfy [this] burden of proof by a preponderance of the evidence." Skaftouros v. United States, 667 F.3d 144, 158 (2d Cir. 2011) (citing Parke v. Raley, 506 U.S. 20, 31 (1992)).

In ruling on a Section 2255 motion, the Court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Indeed, the filing of a Section 2255 motion "does not automatically entitle the movant to a hearing . . . where the allegations are 'vague, conclusory, or palpably incredible.'" Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)). See also Lake v. United States, 465 F. App'x 33, 35 (2d Cir. 2012) ("[A] hearing is not required when, 'viewing the evidentiary proffers and record in the light most favorable to the petitioner,' it is clear that the petitioner has failed to establish a 'plausible claim of ineffective assistance of counsel." (alteration omitted) (quoting Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009)).

"In determining whether the assertions in a [section] 2255 motion warrant discovery or a hearing, the court must also take into account admissions made by the Petitioner at his plea hearing, for 'solemn declarations in open court carry a strong presumption of verity.'" United States v. Nataniel, 15-CR-588 (MKB), 2019 WL 653137, at *4 (E.D.N.Y. Feb. 13, 2019) (quoting Gonzalez, 722 F.3d at 130–31 (internal citation omitted)). "Subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Id.

IV.    Argument

    a.    Petitioner's Claims are Defaulted, Aside from his Ineffective Assistance Claims

        i.    Legal Standard

"In general, a Petitioner is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal." United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011); see also Yick Man Mui v. United States, 614 F.3d 50, 53-54 (2d Cir. 2010); Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007). However, an exception applies if the Petitioner establishes (1) cause for the procedural default and ensuing prejudice or (2) actual innocence. Id. "[I]n the context of a habeas petition following a guilty plea, . . . 'actual innocence' means factual innocence, not mere legal insufficiency." Fountain v. United States, 357 F.3d 250, 255 (2d Cir. 2004) (citing Bousley, 523 U.S. at 623) (internal quotation marks omitted). However, "[a]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." Massaro v. United States, 538 U.S. 500, 504 (2003).

### ii.  Petitioner Failed to Appeal His Conviction or Sentence

Aside from his ineffective assistance of counsel claims, all of Petitioner's claims are procedurally defaulted.  Petitioner failed to take a direct appeal of his conviction or sentence. He is therefore barred from challenging his conviction, except on the grounds that he received ineffective assistance of counsel.  Neither of the exceptions to the procedural default bar—cause or actual innocence—applies.  Petitioner fails to set forth any ground for cause at all, and petitioner's actual innocence claim is wholly incredible.

Petitioner's claim of actual innocence is conclusory, unreliable, and belied by a litany of prior sworn admissions in this case.  As noted in detail above, during his plea, Petitioner stated that agreed to file false documents with financial institutions in order to obtain money and property from those banks.  (Ex. B. at 25).  Moreover, the documents provide that, relying on input from Mr. Kushner, Petitioner wrote and adopted the allocution.  (See Petition at Ex. EE). These admissions were not thrust upon him, as he claims.  Moreover, these admissions, which refute Petitioner's current efforts to assert he is not guilty of the crime – mainly that banks were harmed and that he did not have fraudulent intent.  (See Petition at 5).  Indeed, such admissions are highly relevant in evaluating a § 2255 motion because "[s]olemn declarations in open court carry a strong presumption of verity" and "[s]ubsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."  Gonzalez, 722 F.3d at 131 (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Thus, aside from a claim of ineffective assistance of counsel, all of Petitioner's claims are procedurally defaulted.

### b.  Petitioner Waived Many of his Claims

### i.  Legal Standard

"Case law makes clear that a waiver of the right to bring a motion to vacate under section 2255 is enforceable as long as the petitioner's waiver is knowing and voluntary."  Grant v. United States, 2012 WL 163780, at *1 (S.D.N.Y. Jan. 19, 2012) (report and recommendation) (citing cases), adopted by 2012 WL 1228091 (S.D.N.Y. Apr. 6, 2012).  Such a waiver is enforceable unless it was not "knowing and voluntary," the sentence was based on "a constitutionally impermissible factor," such as race, the government breached the plea agreement, or the sentencing judge "failed to enunciate any rationale" for the sentence imposed United States v. Boatswain, 287 F. App'x 125, 126 (2d Cir. 2008) (citing United States v. Gomez-Perez, 215 F.3d 315, 318-19 (2d Cir. 2000)).

Additionally, an ineffective assistance of counsel claim can, sometimes, survive a waiver, see Parisi v. United States, 529 F.3d 134 (2d Cir. 2008), but it can do so only when the petitioner challenges "the constitutionality of the process by which he waived his right to appeal."  Saleh v. United States, No. 13-CV-1567 (DLI), 2016 WL 4734601, at *5 (E.D.N.Y. Sept. 9, 2016) (quoting United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001)).  When, by contrast, petitioner "fails to challenge" that process, the Second Circuit "condones"

acceptance of a waiver.  Saleh, 2016 WL 4734601, at *5.  Similarly, when Petitioner makes an ineffective assistance of counsel claim on multiple bases, only those bases connected to the plea process survive the waiver.  See id. ("Because any ineffective performance that occurred during sentencing did not affect the process by which Petitioner entered the plea agreement, these claims are barred by the appeal waiver.").

ii.   Petitioner Waived His Claims in His Plea Agreement

As part of his plea agreement with the government, Petitioner explicitly waived his right "to appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence" if he was sentenced to a sentence of 60 months or below. (Ex. A ¶ 4).  The waiver was binding "without regard to the sentencing analysis used by the Court."  (Id.).  At his plea hearing, Petitioner confirmed that he understood that he was giving up his right to challenge his sentence as long as he was sentenced to less than 60 months in prison. (Ex. B at 23:11-14).  Petitioner was sentenced to 20 months' imprisonment, a sentence well below the appellate waiver threshold.  Accordingly, Petitioner has waived all claims other than ineffective assistance of counsel claims.

c.   Petitioner's Claims Fail on the Merits

As discussed above, the vast majority of Petitioner's claims are procedurally defaulted and waived by his plea agreement and many of them must be dismissed on procedural grounds.  Additionally, however, each of Petitioner's ineffective assistance of counsel claims lacks merit.

i.   Legal Standard – Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate (1) that counsel's representation "fell below an objective standard of reasonableness" and (2) that his defense was prejudiced as a result.  Strickland v. Washington, 466 U.S. 668, 688–93 (1984).  This standard is "highly demanding," and an ineffective assistance claim "must be rejected if the [petitioner] fails to meet either the performance prong or the prejudice prong."  Bennett v. United States, 663 F.3d 71, 85 (2d Cir. 2011) (internal quotations and citations omitted).

To satisfy Strickland's performance prong, a petitioner must demonstrate that counsel's performance, measured by an "objective standard of reasonableness," was "deficient" in that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  Strickland, 466 U.S. at 687–88.  In assessing the reasonableness of counsel's performance, judicial scrutiny "must be highly deferential" and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances," Kimmelman v. Morrison, 477 U.S. 365, 381 (1986), bearing in mind that "[t]here are countless ways to provide effective assistance in any given case," Strickland, 466 U.S. at 689.  "[T]he Petitioner bears the burden of proving that counsel's representation was

unreasonable under prevailing professional norms and that the challenged action was not sound strategy.  Kimmelman, 477 U.S. at 381.

To satisfy Strickland's prejudice prong, a petitioner must show not just "some conceivable effect," but rather "a reasonable probability that . . . the result of the proceeding would have been different."  Strickland, 466 U.S. at 693–94.  This standard remains the same in the sentencing context.  A petitioner must show a "reasonable probability" that the result of the sentencing hearing would have differed "in [petitioner's] favor" to support an ineffective assistance claim.  United States v. Motipersad, 5 F. App'x 82, 84 (2d Cir. 2001).  Advising a client to plead guilty in the face of strong evidence, when a plea agreement lessens the severity of the sentence, is not evidence of prejudice sufficient to satisfy the second prong of Strickland.  Marston v. United States, 17-CR-298 (JGK), 2020 WL 6701014, at *3 (S.D.N.Y. Nov. 13, 2020).

In deciding an ineffective assistance of counsel claim, a Court need not address both prongs of the Strickland inquiry if the petitioner makes an insufficient showing on either one.  See Strickland, 466 U.S. at 697; Swerbilov v. United States, 2005 WL 1177938, at *3 (E.D.N.Y. May 18, 2005).  "In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the Petitioner as a result of the alleged deficiencies."  Strickland, 466 U.S. at 697; see also Carneglia v. United States, 2006 WL 148908, at *4 (E.D.N.Y. Jan. 18, 2006).

Furthermore, "blanket assertions against his trial counsel's performance in a self-serving affidavit," in the absence of objective evidence to support the petitioner's claim, were insufficient."  Davison v. United States, 2001 WL 883122 at *8 (S.D.N.Y. Aug. 3, 2001); see also Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003) (noting that the Second Circuit generally "requires some objective evidence other than Petitioner's assertions to establish prejudice.").

    a.   The Claim that Counsel Was Ineffective Because He Allegedly Promised Petitioner Supervised Release is Meritless

Petitioner first argues that "Mr. Kushner clearly and unequivocally told Mr. Williams that he would only 'receive' supervised release due to his bipolar illness."  (Petition at 10).  Petitioner claims that his plea was not voluntary because he relied on counsel's purported promise in pleading guilty.  (Id.)

As an initial matter, Petitioner's claim is not accurate, even accepting the substance of his allegations as true.  While petitioner has concluded that communications from counsel were clear and unequivocal, the purported evidence he cites demonstrates that no such promise was made.  Petitioner wrote that counsel told him that they were "looking at supervised release" which is not a promise, it is a prediction.  (Id.)  Similarly, the fact that Petitioner wrote "the fact that we are looking at probation" only confirms that counsel relayed a prediction and did not make a promise.  (Id.)  Petitioner also directly acknowledged in his affidavit that Mr. Kushner told him prior to the plea hearing that "remember, I can't promise you anything."  (Ex. E at ¶ 11).  Although Amirouche now claims he was "confused" by that statement in light of

12

purported past promises, it is clear that Mr. Kusher specifically advised him prior to the plea that he could not guarantee a specific sentence.[6]

Predicting a sentence based on the facts available to them is part of an attorney's representation of a client, it is not ineffective to do so and be incorrect. See Hsu v. United States, 954 F. Supp. 2d 215, 221 (S.D.N.Y. 2013) ("[e]rrors in counsel's predictions of a Petitioner's ultimate sentence under the United States Sentencing Guidelines generally do not constitute ineffective assistance of counsel because such predictions are, by nature, only guesses or estimates."); see also Ferreira-Rosario v. United States, 19-CIV-3175 (NRB), 2021 WL 2418781, at *3 (S.D.N.Y. June 14, 2021) ("it is well-established that defense counsel's predictions of what a potential sentence might be cannot form the basis of an ineffective assistance of counsel claim.") (citing United States v. Sweeney, 878 F.2d 68, 70 (2d Cir. 1989)). While Petitioner may have conflated a prediction of a non-incarceratory sentence with a promise, it does not mean that his counsel was constitutionally ineffective for making such a prediction, particularly when Petitioner acknowledges such a promise was not made.

Moreover, even if Mr. Kushner did wrongly advise Amirouche regarding his potential sentence, this was cured by the Court's questioning in the plea proceeding and the clear description of potential sentences in the plea agreement. The Second Circuit has repeatedly held that an ineffective assistance of counsel claim "will not succeed when an attorney predicts an incorrect sentence where a petitioner was informed by the court of the sentencing range he faced and the petitioner knowingly and freely proceeded with the plea." LaMarco v. United States, 336 F. Supp. 3d 152, 170 (E.D.N.Y. 2018) (citing Sweeney, 878 F.2d at 69-70). This is because, "[w]here a defendant is arguing that his attorney misled him as to the possible sentence which might result from a plea of guilty, ... the issue is whether the defendant was aware of actual sentencing possibilities, and if not, whether accurate information would have made any

_____

[6] As an exhibit to his Petition, Amirouche included an affidavit from Hadley Rose Staley, Esquire, who is a "consultant and non-profit lawyer" with a prior connection to Amirouche but did not represent the Petitioner in this matter. (Petition at Ex. A). Ms. Staley claims in her affidavit that, "in [her] recollection, when Mr. Kushner counseled Luke to enter a guilty plea, it was done with a promise of no jail time." (Id. at ¶ 20). As noted above, Ms. Staley's recollection inconsistent with Amirouche's sworn statements to the Court and his own admissions in the Petition. Moreover, Ms. Staley does not state if her recollection is based on conversations with Petitioner or Mr. Kushner and whether those conversations supposedly took place before sentencing or after. Accordingly, her statements do not support Amirouche's assertion that he was "promised" a specific sentence by Mr. Kushner.

Similarly, Petitioner's reliance on statements from his own therapists, created after his sentencing, that such promises were made by Mr. Kushner are similarly unreliable. Those statements make clear that the purported assurances were relayed as he recalled them by Amirouche, and not by Mr. Kushner. (Petition at 14) ("[Petitioner] feels that he was deceived and poorly represented by his attorney Mr. Kushner who allegedly promised him from the beginning of his case in 2021 that there would be no incarceration."). Moreover, the statement from Amirouche's clinical psychologist note that Petitioner had "expectations for a non-incarceration outcome, a belief reinforced by his legal counsel's decisions." (Id.)

difference in his decision to enter a plea." United States v. Geraldo, 11-CR-1032-68 (PAE), 2021 WL 230282, at *5 (S.D.N.Y. Jan. 21, 2021) (citing United States v. Arteca, 411 F.3d 315, 320 (2d Cir. 2005)). As described in detail above, at the plea proceeding, the Court specifically notified the Petitioner that the ultimate sentence was up to the Court and that he would not be able to withdraw his plea if he did not receive the sentence he desired, each of which the Petitioner confirmed. (Ex. B. at 26). Petitioner also confirmed that no one had promised him what his sentence would be before his plea. (Id. at 27). The defendant's allegations in his Petition "cannot overcome his contrary statements under oath during a plea allocution, which must be given the presumptive force of truth." Francisco v. United States, 115 F. Supp. 3d 416, 420 (S.D.N.Y. 2015). In addition to the Court's questioning, Petitioner's plea agreement sets forth the sentencing process, the applicable Guidelines and that the sentence would be determined by the Court, another factor that precludes a subsequent ineffective assistance of counsel claim. See LaMarco, 336 F. Supp. 3d 152 at 170 ("even if this Court was convinced that counsel misadvised the Petitioner in some way regarding his potential sentence, this error was cured by the Court's thorough questioning of the Petitioner throughout the plea allocution and the fact that the potential sentences were laid out in the Plea Agreement and in the allocution.").

Accordingly, Petitioner's claims of ineffective assistance of counsel are both factually and legally insufficient. The fact that Petitioner is unhappy with the sentence, an incorrect prediction does not provide an avenue to allege ineffective assistance. As the LaMarco court held, petitioners "may not plead guilty in order to test whether they will get an acceptably lenient sentence." Id. at 70.

b. The Claim that Petitioner's Guilty Plea Was Neither Knowing Nor Voluntary Due to Ineffective Assistance of Counsel is Meritless

In addition to claiming that the plea was induced by Mr. Kushner with a promise of a non-incarceratory sentence, Amirouche also claims that his attorney persuaded him to plead guilty without adequately explaining the guilty plea and that he had insufficient time to review the plea agreement. (Petition at Ex. E at ¶¶ 22-29). These assertions contain no support beyond the conclusory, self-serving allegations themselves, and they are belied by the record in this case, which sets forth a paradigmatic example of a knowing and voluntary guilty plea.

Petitioner's statements at the plea hearing demonstrate that Petitioner had adequate time to consider the plea agreement and that no one, including defense counsel, pressured him to plead guilty. Specifically, petitioner confirmed that he read and spoke English, had read the entirety of his plea agreement, had a chance to review it with his lawyer, and had no questions about it. (Ex. B at 19:2-14). Petitioner represented that he was making the plea voluntarily and of his own free will and that no one threatened or forced him to plead guilty. (Id. at 27:14-19). Petitioner also stated unequivocally, twice, that he was satisfied with counsel's representation – a sworn statement that refutes Petitioner's current claims. (Id. at 10:4-8).

The plea hearing transcript also demonstrated Petitioner's understanding of his rights and the criminal conduct to which he pleaded guilty. Your Honor instructed Petitioner on the elements of the charge to which he was pleading guilty. (Id. at 8-9). At the time of his plea, Petitioner confirmed that he understood the charges to which he was pleading guilty. (Id. at 9:9-

13).  The Court also explained to the Petitioner each of the rights he would be waiving with his guilty plea, each of which the Petitioner confirmed he understood.  (Id. at 14-17).  There can therefore be no dispute that, at the time of his guilty plea, Petitioner was well aware of his rights and the nature of the charged crimes to which he admitted.[7]  Indeed, as Amirouche concedes, he did review the plea agreement with counsel prior to the plea.  (See Petition at 31) (noting a telephone call the day before the plea to discuss the plea agreement, superseding information and waiver of indictment).  Although Petitioner now claims that timing was insufficient for him to gain a proper understanding, that claim should be viewed with skepticism given his statements to the Court and his discussion with counsel.

Finally, with respect to the prejudice prong of the Strickland inquiry, Petitioner does not assert that he would have proceeded to trial had he better understood his rights.  He only claims that if he had been properly advised, "he would have been able to make an informed decision about whether to plead guilty or proceed to trial."  (Petition at 30; see also Petition at 75 ("Had Mr. Kushner provided accurate information about the potential sentencing consequences, including the risk of incarceration, Mr. Williams would not have pleaded guilty and would have instead proceeded to trial or sought a more favorable plea agreement.")).  For that reason alone, Petitioner's allegations must fail.  United States v. Nataniel, 15-CR-588 (MKB), 2019 WL 653137, at *8 (E.D.N.Y. Feb. 13, 2019) ("[The petitioner] fails to provide any evidence that 'but for' [counsel's] advice, he would have proceeded to trial, other than his own self-serving statements, which are insufficient."  (quoting Calderon v. United States, 953 F.Supp.2d 379, 385 (E.D.N.Y. 2013)).

---

[7] Amirouche also alleges ineffective assistance of counsel related to his waiver of indictment, specifically that he did not fully understand it and that it was problematic that he signed the waiver of indictment after he signed the plea agreement.  (Petition at 13).  These claims are also without merit.  Amirouche unequivocally confirmed for the Court at the plea proceeding that he had reviewed the waiver of indictment with his lawyer, had "sufficient time to ask your lawyer about this procedure of waiving indictment," and had signed the document.  (Ex. B at 12-13).  The Court specifically asked the defendant whether "by signing this document, you intend to indicate that you both understand what you were signing and you understand the import or the affect of signing a waiver of indictment?"  To which the defendant responded, "Yes, Your Honor." (Id. at 13).  Even with that confirmation, the Court also explained to the defendant the rights he would be giving up by waiving indictment.  (Id. at 10-12).  Allegations blatantly contrary to this sworn statement should be given little effect.  See Hansen v. Johnson, 680 F. Supp. 3d 247, 262 (E.D.N.Y. 2023). ("[A] petitioner's unsubstantiated and self-serving statements are generally insufficient by themselves to sustain an ineffective assistance of counsel claim unless they are found credible given all the relevant circumstances.")

Similarly, Amirouche provides no rationale why the order of signing the plea agreement and the waiver of indictment constitutes ineffective assistance of counsel other than to summarily claim "it calls into question the integrity of the entire plea process and undermines the voluntariness of [Petitioner's] decision to plead guilty."  (Petition at 13).  Finally, Petitioner does not allege what prejudice he suffered from counsel's purported ineffective assistance regarding the waiver of indictment.

Moreover, because Petitioner received a significant strategic benefit – a guilty plea with a maximum sentence of five years' imprisonment, whereas the indictment charged crimes punishable by up to 30 years imprisonment – Petitioner cannot establish that counsel's purported ineffective assistance caused any prejudice.  See, e.g., LaMarco, 336 F. Supp. 3d at 168 ("[W]here the Petitioner secured a significant strategic benefit by pleading guilty, courts are generally less likely to suspect an involuntary or misguided decision to plead"); Cusano v. United States, 2007 WL 4142771, at *3 (S.D.N.Y. Nov. 16, 2007) (no ineffective assistance where petitioner "received a significant strategic benefit for pleading guilty"); Feliz v. United States, 00-CR-53 (JFK), 2002 WL 1964347, at *7 (S.D.N.Y. Aug. 22, 2002) ("No prejudice exists when a plea agreement lessens the severity of the sentence the Petitioner would face if convicted at trial.").

c.  The Claim that Counsel's Purported Failure to Review Discovery Constituted Ineffective Assistance is Meritless

Amirouche alleges that counsel was ineffective because he failed to review discovery with him and claims that counsel spent very little time was spent on the discovery. (Petition at 38-41).  While counsel must conduct a "thorough investigation of law and facts relevant to plausible options" Strickland, 466 U.S. at 690-91, "courts have not found ineffective assistance of counsel unless the counsel was not fully informed of the facts of the case to provide a sufficient basis to create a strategy and advise the defendant."  United States v. Jackson, 89-CR-067 (SWK), 1990 WL 88886, at *3 (S.D.N.Y. June 20, 1990).

The only support Amirouche advances for these allegations are "that [Mr. Kushner's] billing records suggest very little time was spent on the discovery."  (Petition at 39). Even assuming that Mr. Kushner documented every minute he spent reviewing discovery in the billing records, those records establish not only that he reviewed discovery, but that he engaged with Petitioner to understand the facts underlying the case and possible defenses.  As Amirouche concedes, there are billing entries specifically noting the uploading, processing and review of discovery.  (Petition at 77).  What Amirouche does not note is that there are other entries documenting that Mr. Kushner also reviewed materials provided by his client and exchanged emails with his client about discovery.  (Petition at Ex. C).  The evidence established that Counsel spent time investigating the facts of the case to familiarize himself with plausible options.  In addition, Petitioner's argument that counsel did not provide him with access to the discovery materials and refused to discuss the discovery with him is not supported by the record. Other than his summary assertion that Mr. Kushner did not do this, there is no evidence that Amirouche requested access to the discovery and was denied.

Moreover, even if Amirouche could establish deficient performance, he cannot establish prejudice.  He does not and cannot demonstrate that a more advantageous disposition would have been available had Mr. Kushner acted differently and he does not allege that he would have rejected the offer and gone to trial if he had reviewed discovery with Mr. Kushner. Venkataram v. United States, 06-CR-102 (RPP), 2013 WL 5298461, at *6 (S.D.N.Y. Sept. 20, 2013).  Moreover, Petitioner cannot and does not claim how the discovery Mr. Kushner failed to review contained information that would have assisted in his defense.  See Jackson, 1990 WL 88886, at *3.  Indeed, the discovery provided by the government contained, inter alia, a series of

emails in which the Petitioner directed co-conspirators to commit fraud and bank records demonstrating the flow of funds from shell companies in the name of nominees to an account he controlled. As he cannot demonstrate ineffective performance or prejudice, this claim should also be denied.

> d. The Claim that Counsel's Purported Failure to Communicate with the Petitioner Constituted Ineffective Assistance is Meritless

Amirouche claims that Mr. Kushner was constitutionally ineffective because he failed to sufficiently communicate with him throughout the case, including prior to his guilty plea. In his Petition, Amirouche claims that Mr. Kushner was constitutionally ineffective because he had "woefully deficient communication." (Petition at 31). Petitioner specifically alleges that Mr. Kushner never met him in person until the day of sentencing and that telephone records demonstrate they only spoke by phone for a total of 90 minutes. (Id.)

While Amirouche may be displeased with the level of communication he received from his attorney, it does not amount to constitutionally ineffective assistance of counsel. A lack of communication falls below constitutional standards only if it "materially hampers the fashioning of a defense." Jelinek v. Costello, 247 F.Supp.2d 212, 273 (E.D.N.Y.2003). While counsel is required to communicate certain key events, such as a formal plea offer from the government, see Missouri v. Frye, 566 U.S. 134 (2012), there is no additional requirement that counsel communicate every time a defendant so desires.

Amirouche cannot demonstrate ineffective performance as the record establishes that Kushner communicated with Amirouche ahead of each important proceeding, provided him with the key information about his case and that any purported lack of communication did not hamper the defense. As an initial matter, Amirouche does not and cannot contend that Mr. Kushner failed to communicate the government's plea offer. Moreover, the record demonstrates that the two regularly communicated at different stages of the case. Even assuming that Mr. Kushner and the defendant spoke by phone for 90 minutes throughout the representation, it is clear that the telephone did not constitute the entirety of communication between the two. As the Petition makes clear, Amirouche and Kushner, also communicated by text message, Zoom and email.[8] (See Petition at 11, Exhibits F-I, T-1). In addition, while Amirouche complains of a lack of communication, as he admitted to the Court, he had the opportunity to discuss the advantageous plea agreement he entered into with Mr. Kushner prior to the plea and each of the sentencing documents. Therefore, the purported lack of communication did not materially hamper his defense.

---

[8] The fact that Mr. Kushner did not meet with Amirouche in person until the sentencing proceeding is neither surprising nor problematic. Mr. Kushner was located in Brooklyn while Petitioner lived with his family in Chicago after he was released on bail. Therefore, any in-person meeting would have required travel, likely at Petitioner's expense. Moreover, Amirouche does not allege that he asked Mr. Kushner to travel to meet him and Mr. Kushner refused. Notably, the bulk of Mr. Kushner's representation of Petitioner occurred during the COVID-19 pandemic, when air travel was difficult.

Finally, Amirouche cannot demonstrate prejudice from the purported lack of communication. Not only did Amirouche receive and voluntarily enter into an advantageous plea agreement with the government, he received a sentence that was markedly below Guidelines. Amirouche only contends that the purported lack of communication "severely hampered [his] ability to fully comprehend and consider his legal options." (Petition at 11).   Accordingly, this claim is meritless as well.

> e.  The Claim that Counsel Was Ineffective for Failing to Provide Petitioner with PSR or Object to the PSR Is Meritless

Next, Petitioner claims that counsel failed to object to the PSR and correct misrepresentations in the PSR. (Petition at 46-52).  Specifically, in his affidavit, Petitioner claims that he did not have the opportunity to review the PSR in any "meaningful" way.  (Id. at 46). Petitioner further claims that he "had never seen the PSR or gone over it with Mr. Kushner when this sentencing memorandum was filed on August 1, 2023, and he did not agree with the conduct described in the PSR." (Petition at 25).   This claim, too, is belied by the record.  At his sentencing hearing, the Court asked Petitioner whether he had reviewed the PSR with counsel, and petitioner confirmed that he had and that he did not have any difficulty understanding those submissions. (Exhibit C at 13:19-18).  Your Honor then asked whether petitioner was "able to discuss those submissions with your attorney," and Petitioner confirmed he had.  (Id. at 14:2-4). "An admission at plea allocution is given a 'strong presumption of verity' and 'constitute[s] a formidable barrier in any subsequent collateral proceedings.'"  Mutimura v. United States, 20-CV-11131 (LGS), 2021 WL 2678589, at *3 (S.D.N.Y. June 30, 2021) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997) ("A Petitioner's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea.").

Moreover, the evidence that Amirouche cites in support of this claim demonstrates that he did have the opportunity to review the PSR and in fact reviewed the PSR prior to sentencing.[9]  The communications Amirouche produced as part of the Petition demonstrate that Mr. Kushner sent him the PSR and the password on October 30, 2023, five days prior to sentencing.  (Petition at Ex. T-1).  The evidence also establishes that Amirouche reviewed the PSR the same day as emailed Mr. Kushner with questions and said he was having a "panic attack."  (Id.)  The records also establish that Mr. Kushner had a meeting, over Zoom, with Amirouche and his family to talk about sentencing.  (Id. at Ex. C).  While Amirouche now claims that these facts were insufficient to prepare him for sentence, they demonstrate that Mr. Kushner's performance was constitutionally effective.  Amirouche was provided the PSR prior to sentencing, reviewed it prior to sentencing, had a chance to discuss it with counsel and admitted each of these facts to the Court during the plea proceeding.

---

[9] Even assuming it is true, the allegation that Amirouche did not review the PSR before his sentencing memorandum was filed is irrelevant to analysis of ineffective assistance of counsel.  Amirouche reviewed both the PSR and the sentencing letter prior to sentencing and neither expressed disagreement with those documents or tried to withdraw his plea, despite being given the opportunity to do so.

Moreover, Mr. Kushner's decision not to object to the PSR does not render his performance ineffective. Amirouche raises two issues that he believes Mr. Kushner should have objected to – the loss amount and the description of his mental health issues contained in the PSR. Mr. Kushner's decision not to object to each of these portions of the PSR was not only a strategic decision that is subject to deference, it was a reasonable decision. With respect to loss, the plea agreement that Amirouche knowingly signed included a stipulation to the Guidelines. (See Ex. A at ¶ 2). Objecting to the loss amount, which is specifically included in the Guidelines calculation in the plea agreement, may have breached the agreement and jeopardized the advantageous agreement the Petitioner received. That is a strategic decision afforded deference by the reviewing court.

Amirouche's complaint that Mr. Kushner was ineffective because he did not object to the PSR because it "only summarily documents my severe mental health ailments" is also misplaced. (Petition at Ex. E, ¶ 48-50). Amirouche concedes that the description in the PSR is "true," and only cites one missing fact, that the PSR does not include a March 2021 hospitalization. (Id.) It is inconceivable that failing to object to include one hospitalization in the PSR constitutes ineffective assistance of counsel. This is particularly the case where that hospitalization was part of the nearly 100 pages of medical records that Mr. Kushner provided to the Court in a sealed submission prior to sentencing. See ECF Docket No. 43 at 10 (Aug. 1, 2023).

Finally, with regard to deficient performance, the record is clear that Petitioner had numerous opportunities to present his version of events to the Court, including in his plea allocution, hand-written sentencing letter to the Court, and statements at sentencing. Thus, Petitioner's claim that defense counsel's performance was ineffective for failing to object to the PSR and that petitioner had no opportunity to present his own version of events should be denied.

Similarly, Amirouche cannot demonstrate that he suffered any prejudice from counsel's decision not to object to the PSR. To demonstrate ineffective assistance of counsel for failure to object to the loss, Amirouche has to demonstrate a "reasonable probability" that, but for his counsel's failure to object, the Court would have reached a different loss amount. Cavounis v. United States, 12-CR-297 (VEC), 2015 WL 4522826, at *8 (S.D.N.Y. July 24, 2015) (citing Strickland, 466 U.S. at 694. As the court noted in Cavounis noted "[t]here is no reason to believe that the district court would not have relied on the loss amount to which Petitioner had already agreed—his counsel's hypothetical protestations notwithstanding."). The same analysis holds true here – Amirouche stipulated to the Guidelines in his plea agreement, including the loss amount, and there is no reason to believe the Court would have found a different loss amount.[10] For the same reason, Amirouche cannot demonstrate prejudice for

---

[10] Indeed, a review of the plea agreement shows this is a result that was difficult to achieve. The Petitioner's plea agreement applied the Guidelines enhancement for losses over $3.5 million. See Ex. A at ¶ 2. The loss amount calculated by the government and agreed to by the Petitioner was nearly $6.5 million. Accordingly, Amirouche would have been forced to prove that the loss amount should be cut in half before he would be entitled to a lower Guidelines enhancement. Even if he could do so, he would have to reduce the loss amount by four

counsel not objecting to include the March 2021 hospitalization in the PSR. As that information before the Court at sentencing, Amirouche cannot demonstrate the result would have been different if that incident was included in the PSR.

Finally, even though the government has addressed these claims as ineffective assistance of counsel, it is clear that his arguments are just an indirect way for Amirouche to challenge his sentence. See Cavounis, 2015 WL 4522826, at *4 (citing United States v. Garcia, 166 F.3d 519, 522 (2d Cir. 1999) ("Despite his effort to dress up his claim as a violation of the Sixth Amendment, defendant in reality is challenging the correctness of his sentence under the Sentencing Guidelines, and is therefore barred by the plain language of the waiver contained in his plea agreement with the government.")). These arguments, particularly the argument that the loss amount applied at sentencing is wrong, is plainly a challenge to the Court's sentence, which should be barred by the waiver provision, even if framed in cursory claims of ineffective assistance of counsel. See Panah v. United States, 02-CR-147 (S), 2006 WL 2056728, at *4 (W.D.N.Y. July 21, 2006) ("In the context of a challenge to a sentence, a waiver agreement is fully enforceable even where ineffective assistance of counsel is claimed.") As the Cavounis court noted, "if the Court were to allow [this] claim of ineffective assistance of counsel at sentencing as a means of circumventing plain language in [the] waiver agreement, the waiver of appeal provision would be rendered meaningless." Cavounis, 2015 WL 4522826, at *4 (citing United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998)). Accordingly, in addition to being without merit, Petitioner's ineffective assistance of counsel claim is also precluded from review.

      f.   The Claim that Counsel Was Ineffective for Failing to Advocate at Sentencing is Meritless

Amirouche now makes a series of post hoc claims that Mr. Kushner rendered ineffective assistance of counsel in connection with sentencing. In his Petition, Amirouche claims that Mr. Kushner was ineffective because he submitted a "boilerplate" sentencing memo without consulting him, failed to properly account for his volunteer work and "made statements that were contrary to his interests." (Petition 56-60).[11]

_____

Guidelines levels, or a loss of not less than $1,500,000, before his applicable Guidelines range would be less than the 60 month statutory maximum his plea agreement guaranteed. See Guidelines § 4B1.1, Sentencing Table. Other than generally asserting that "the actual loss amount, if there was any, should have been much lower than six and a half million dollars," (Petition at Ex. E, ¶ 46), Amirouche does not demonstrate why the loss amount was wrong or what it should have been. He certainly cannot demonstrate a "reasonable probability" that the Court would have reached a different loss amount.

[11] Amirouche also makes a series of references to counsel seeking sentencing adjournments and claiming, without any rationale, that those adjournments somehow constituted "woefully deficient" ineffective assistance of counsel. (Petition at 34). Indeed, as Amirouche notes, some of those adjournments were requested to afford counsel time to gather materials and prepare sentencing submissions to the Court. (Petition at 33, 58). Taking time to gather materials and complete a sentencing submission is what an effective lawyer should do, it does not constitute ineffective assistance of counsel.

Strickland applies to counsel's conduct during the sentencing phase. See Lafler v. Cooper, 566 U.S. 156, 165 (2012). Counsel is not required to present mitigating evidence during sentencing to avoid charges of ineffectiveness. See Burger v. Kemp, 483 U.S. 776, 777 (1987). Counsel may be found effective even where counsel declines to submit a sentencing memorandum and presents only limited oral argument. See United States v. Lian, 391 F. App'x 969, 971-72 (2d Cir. 2010); see also United States v. Pozuelos-Morales, 526 F. App'x 74, 75 (2d Cir. 2013) (denying an ineffective assistance claim where defense counsel did not submit a sentencing memorandum and did not obtain the Petitioner's medical records).

Each of Amirouche's claims should be rejected. In the first instance, Amirouche now asserts that Mr. Kushner submitted the sentencing memorandum without consulting him and that the first time he reviewed it was on PACER after the sentencing. (Petition at 57). That assertion stands in marked contrast to the Petitioner's sworn statement to the Court at sentencing:

> THE COURT: Mr. Williams, were you able to review the presentence report, the addenda by the probation department, the Government's submissions, and your attorney's own submissions regarding your sentencing?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did you have any difficulty understanding those submissions?
>
> THE DEFENDANT: NO

Ex. C (13:19-14:1). It is therefore implausible to credit to Amirouche's statement that he had not reviewed his sentencing memo prior to sentencing.

Notably, even if Amirouche's statements were true, that fact would not constitute ineffective assistance of counsel because Mr. Kushner submitted a number of sentencing materials on the Petitioner's behalf. Indeed, the court record and the Petition itself demonstrate that Mr. Kushner provided effective advocacy in advance of, and at, sentencing. Counsel submitted a sentencing memorandum addressing both the key argument and the applicable law and, contrary to his assertions, specifically tailored to Petitioner. (ECF Docket No. 42). Counsel also sought leniency by marshalling numerous letters of support on the Petitioner's behalf, noting that the letters were not just submitted by family members, and informing the Court of Amirouche's efforts at rehabilitation and chartable acts within the community. (ECF Docket No. 42). Counsel also gathered and filed a sealed submission with a summary of Petitioner's medical issues and a number of medical records. (ECF Docket No. 42). Indeed, as Amirouche noted in the Petition, Mr. Kushner was proactive about gathering such materials in advance of sentencing and including them in the submission to the Court. (See e.g., Petition at 58). Moreover, at sentencing, Mr. Kushner also successfully argued for a proposed Guidelines reduction as a zero-point offender and successfully negotiated a significant reduction in restitution, without the need

for a hearing. Such allegations are insufficient to support a claim of ineffective assistance of counsel.

   Each of Amirouche's claims in the Petition are <u>post</u> <u>hoc</u> criticisms of the way counsel presented arguments or what counsel focused on in the sentencing submission, neither of which constitute ineffective assistance of counsel. Particularly meritless is Amirouche's criticism of Mr. Kushner's strategic decision to write in the memorandum that Petitioner understood that the offense was serious and wrong. (Petition at 61) (arguing that such a strategy "concedes guilt on [Petitioner's] behalf without his consent, an egregious violation of the duty of loyalty."). Not only is such an assertion a strategic decision designed to show acceptance of responsibility, it ignores the fact that the Petitioner <u>had already pled guilty and acknowledged his guilt under oath</u>. It also ignores that the Petitioner himself acknowledged his guilt at the sentencing proceeding. (Ex. C at 18:5 ("The crimes I committed were a result of poor judgment exacerbated by my battle with bipolar illness."); <u>see also</u> <u>id.</u> at 18:11 ("But I'm here to take full accountability. I've learned from my errors and have committed myself to changes that will prevent such actions in the future."). Amirouche ignores these facts and instead makes baseless assertions of ineffective assistance of counsel based on the unsupported notion that these strategic choices were an attempt to "curry favor with the prosecution and the court." (Petition at 62). Finally, Amirouche's baseless arguments that Mr. Kushner had a "conflict of interest" are based entirely on speculation and not supported by a shred of evidence.[12]

   Nor does Amirouche acknowledge that he was provided, and took, the opportunity to address the Court and raise many of the very defenses that he criticizes Kushner for raising. Indeed, every sentencing argument that Amirouche now asserts was not raised in the manner or to the extent that he prefers was squarely before the Court at sentencing. With regard to the medical records, Counsel submitted fifteen separate records and devoted a portion of both his sentencing memorandum and his comments at sentencing. (ECF Docket No. 42). Counsel submitted dozens of letters of support describing the Petitioner's work in the community and charitable acts and the Petitioner specifically raised those issues to the Court in his commentary.

   While Amirouche cannot demonstrate deficient performance at sentencing, he also cannot demonstrate prejudice. The Court imposed a sentence of 20 months' imprisonment, which was one-third the applicable Guidelines range of 60 months' and far below the Guidelines range of 87-108 months which would have applied if Petitioner's exposure was not capped at 60 months' imprisonment. While Amirouche is clearly dissatisfied with this sentence, he cannot demonstrate that was the product of constitutionally deficient representation. <u>See</u> <u>Ceccarelli v. United States</u>, 16-CR-24 (EAW), 2021 WL 5567355, at *4 (W.D.N.Y. Nov. 29, 2021) (finding no prejudice where, <u>inter</u> <u>alia</u>, "the Court in any event imposed a below-Guidelines sentence."); <u>see also</u> <u>Hall v. United States</u>, 10-CV-58 (JSR) (HBP), 2012 WL 6923578, at *8 (S.D.N.Y. Oct. 23, 2012), report and recommendation adopted, 10-CIV-58 (JSR), 2013 WL 264547 (S.D.N.Y.

---

[12] Also without merit are Amirouche's nearly four pages of allegations that Mr. Kushner committed perjury every time he made a statement in court that Amirouche now believes is false. Indeed, many of the instances in which Amirouche accuses Mr. Kushner of committing perjury, such as the penalties for pleading guilty (Petition at 69), are statements that Amirouche also made under oath to the Court at the same proceeding.

Jan. 23, 2013) ("petitioner has not identified any way in which [counsel's] actions prejudiced him, particularly in light of the fact that petitioner received a below-Guidelines sentence."); Paez v. United States, 2012 WL 1574826 at *4 (petitioner suffered no prejudice where his sentence departed significantly from the minimum applicable Sentencing Guidelines range).

Finally, although Amirouche frames his arguments in terms of ineffective assistance of counsel, he is, in large part, "actually challenging the correctness of his sentence"— a challenge, as noted above, that is "barred by the section 2255 waiver" in his plea agreement. See, e.g., Santiago-Diaz v. United States, 299 F. Supp. 2d 293, 299 (S.D.N.Y. 2004) ("The Court finds that [the petitioner's] attack on the performance of his counsel is nothing more than a thinly-veiled endeavor to circumvent the waiver of his right to challenge his sentence. A claim of ineffective assistance of counsel is not a vehicle for a criminal Petitioner to attempt an end-run around a knowing and voluntary waiver of his right to appeal his sentence."). Amirouche's efforts to recast arguments regarding the loss amount, sentencing enhancements and restitution amount to nothing more than a collateral attach on the Court's sentence through an ineffecitve assistance of counsel claim.

g.   The Claim that Counsel Was Ineffective for Failing to Challenge the Statute of Limitations is Meritless

Amirouche next alleges ineffective assistance of counsel for Mr. Kushner's purported failure to raise a statute of limitations defense. (Petition at 89-91). In his Petition, Amirouche unilaterally claims that his involvement in the offense ended in 2015 and, therefore, that both the indictment and the superseding information violated the statute of limitations. In support of his claim, Amirouche claims that because the last specific overt act in the indictment was in April 2015, the statute of limitations was violated.[13] Amirouche is incorrect.

As an initial matter, both charging instruments allege a conspiracy that continued until April 2016, which meant that Amirouche, who was indicted in February 2021, was plainly charged inside of the limitations period. "Pretrial motions to dismiss on statute of limitation grounds are premature if the indictment is facially sufficient and the Petitioner's argument in favor of dismissal requires a determination of factual issues." United States v. Kogan, 283 F. Supp. 3d 127, 134 (S.D.N.Y. 2017). As the charging instruments were facially sufficient, any motion would have been dismissed and there is no merit to the claim that Mr. Kushner was ineffective for not pursuing them.[14] See United States v. Boyd, 407 F. App'x 559, 561 (2d Cir.

---

[13] It is clear that Amirouche is arguing that his conviction is invalid because he believes the statute of limitations was violated. He waived that argument as part of his plea agreement and the government only addresses his claim that it was ineffective for Mr. Kushner to not raise a statute of limitations defense.

[14] Amirouche argues that the purported statute of limitations violation is apparent from the fact that the last overt act charged in the superseding information is in August 2015. The Petitioner cites no law for that proposition. Indeed, courts in the Second Circuit have repeatedly held that "the well-established rule of this and other circuits that the overt act element of a conspiracy charge may be satisfied by an overt act that is not specified in the indictment, at least

2011); see also Litwok v. United States, 14-CV-4341 (JFB), 2016 WL 6892814, at *3 (E.D.N.Y. Nov. 23, 2016) ("failure to make a tenuous motion does not render counsel ineffective.").

 While the Petitioner could have advanced an affirmative defense at trial, he chose to plead guilty pursuant to a plea agreement with the government. The Petitioner cannot allege deficient performance by Mr. Kushner for failing to pursue a claim at trial when he chose to plead guilty to a superseding information that provided benefits and knowingly waived all legal and factual defenses as part of that plea. Notably, the Petitioner cannot claim that he did not know he had the option to assert this defense at trial because of Mr. Kushner, as he was clearly aware of his perceived statute of limitations defense. As Amirouche notes in his petition, he raised it to Mr. Kushner before he pleaded guilty. (Petition at 23-24). Moreover, Amirouche never alleges that Mr. Kushner told him it was not a valid defense or refused to pursue it. Instead, he now argues after the fact, that Mr. Kushner considered the defense, but did not act on it and was ineffective for not doing so. But the Petitioner ignores the convenient fact that rather than pursue a defense at trial, he chose to plead guilty.[15]

 Amirouche's citation to United States v. Hansel, 70 F.3d 6 (2d Cir. 1995) is inapposite for two main reasons. (Petition at 96). First, in Hansel, the indictment was facially invalid, plainly charging conduct outside of the applicable statute of limitations, and counsel failed to raise the defense. Hansel, 70 F.3d at 8. Second, unlike here, counsel in Hansel could not demonstrate that the Petitioner forewent such a defense as part of a plea agreement because the Petitioner pled guilty without the benefit of a plea agreement. As noted above, neither of these circumstances were present here. Each count was facially valid and the Petitioner pleaded guilty pursuant to an advantageous plea agreement. Accordingly, Petitioner's claims of ineffective counsel related to the statute of limitations should be denied.

―――――――――――――――

so long there is no prejudice to the Petitioner." United States v. Salmonese, 352 F.3d 608, 619 (2d Cir. 2003) (citing United States v. Frank, 156 F.3d 332, 337 (2d Cir. 1998)).

[15] Similarly unavailing is the Petitioner's contorted allegation that the government committed prosecutorial misconduct as part of a "series of calculated tactics to circumvent the expired statute of limitations." (Petition at 28). Not only did Amirouche default on these claims, his allegations of purported misconduct are not only incorrect, they are nonsensical. By way of example, contrary to the Petitioner's assertion, the lone charge of the superseding information, 18 U.S.C. § 371, does require overt acts, which were set forth in the charging instrument. And the government was fully prepared to prove overt acts within the conspiracy period set forth in the superseding information – the period was exactly the same as the underlying indictment and there was no effort to "create the appearance of a timely prosecution" or "obscure the time-barred nature of the specific over acts." (Id.)

Nor was the change to the plea agreement prior to the hearing in furtherance of an effort to justify a tolling period – nothing of the sort was contemplated or discussed – it was to correct an error in the citation to a specific provision in the Guidelines. (Ex B. at 18) (noting that the sophisticated means enhancement is Guidelines Section 2B.1(b)(10)(C) and not (B)). And contrary to Petitioner's unsupported theories of prosecutorial misconduct, the government made sure the change was placed on the record for posterity. (Id.)

V.    <u>Conclusion</u>

      For the foregoing reasons, the government respectfully submits that the Petition should be denied in its entirety.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    <u>/s/ David C. Pitluck</u>
David C. Pitluck
Assistant U.S. Attorney
(718) 254-6108

cc:    Clerk of Court (KAM) (by ECF)
Larby Amirouche (by Certified U.S. Mail)