RECEIVED IN THE PRO SE OFFICE
JULY 12, 2024, 2:31PM
VIA BOX.COM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUKE ANDREW WILLIAMS f/k/a <br> LARBY AMIROUCHE, <br><br> Petitioner-Defendant, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent-Plaintiff. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 21-CR-00064-KAM <br> ) <br> ) <br> ) <br> ) |

**PETITIONER'S MOTION FOR PRODUCTION OF GRAND JURY TRANSCRIPTS AND RELATED MATERIALS PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 6(e)**

Petitioner Luke Williams f/k/a Larby Amirouche, proceeding pro se, respectfully moves this Court for an order compelling the immediate production of grand jury transcripts and related materials pursuant to Federal Rule of Criminal Procedure 6(e). The requested materials are essential to Petitioner's ability to fully and fairly reply to the Government's response to his pending motion under 28 U.S.C. § 2255.

**BACKGROUND**

Petitioner filed a comprehensive § 2255 motion challenging his conviction and sentence on multiple grounds, including that the charges against him were time-barred by the applicable five-year statute of limitations. (ECF No. 73). In its response, the Government contends that Petitioner's statute of limitations argument fails because the charging documents allege a conspiracy that continued until April 2016, which the Government claims is the operative date for determining when the limitations period began to run. (ECF No. 85 at 23-24).

However, the Government's position ignores the possibility that the April 2016 end date for the conspiracy may have been unilaterally added by the prosecutor, Assistant U.S. Attorney

1

David Pitluck, after the fact in an attempt to make the prosecution appear timely, and may not reflect the actual time period considered by the grand jury when it returned the indictment in this case.

The original indictment, filed on February 3, 2021, charged Petitioner with offenses "in or about and between January 2012 and April 2016." (Indictment, ECF No. 1 at 1). Critically, the specific overt acts alleged in the indictment all occurred more than five years before the indictment was filed. (Id. at 5-12). As Petitioner noted in his § 2255 motion, "The original indictment alleged that Mr. Williams engaged in a conspiracy and other fraudulent activities 'in or about and between January 2012 and April 2016.' However, the specific overt acts mentioned all occurred more than five years before Mr. Williams' arrest on February 23, 2021." (ECF No.73 at 22).

It is well-established that, for statute of limitations purposes in a conspiracy case, "the crucial question...is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy." *Grunewald v. United States, 353 U.S. 391, 397 (1957)*. The Second Circuit has explained that "the statute of limitations in a conspiracy case runs from the date of the last overt act." *United States v. Ben Zvi, 242 F.3d 89, 97 (2d Cir. 2001); see Brown v. Elliott, 225 U.S. 392, 401, 32 S.Ct. 812, 56 L.Ed. 1136 (1912)*.

"For there to be a conspiracy charge that requires proof of overt acts to be within the statute of limitations, the (1) conspiracy must still have been ongoing within the five year period preceding the indictment, and (2) 'at least one overt act in furtherance of the conspiratorial agreement [must have been] performed within that period.'" *United States v. Ben Zvi, 242 F.3d 89, 97 (2d Cir. 2001) (quoting Grunewald v. United States, 353 U.S. 391, 396-97 (1957))*.

2

"The crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy." *Ben Zvi, 242 F.3d at 97 (quoting Grunewald, 353 U.S. at 397).*

Here, there are serious questions as to whether the April 2016 end date alleged in the indictment actually reflects the scope of the conspiratorial agreement found by the grand jury, or whether it was simply added by the prosecutor in an attempt to circumvent the expired limitations period. The answers to these questions likely lie in the grand jury transcripts and related materials, which Petitioner now seeks.

## ARGUMENT

### Petitioner is Entitled to the Grand Jury Materials Under Federal Rule of Criminal Procedure 6(e) and Second Circuit Precedent

Federal Rule of Criminal Procedure 6(e)(3)(E)(i) allows disclosure of grand jury matters "preliminarily to or in connection with a judicial proceeding." The Supreme Court has recognized that "disclosure is wholly proper where the ends of justice require it." *United States v. Socony-Vacuum Oil Co., 310 U.S. 233- 234 (1940).*

The Second Circuit has established a three-part test for determining when grand jury materials should be disclosed: "(1) the material sought is needed to avoid a possible injustice, (2) the need for disclosure is greater than the need for continued secrecy, and (3) the request is structured to cover only material so needed." In re Grand Jury Subpoena, 103 F.3d 234, 239 (2d Cir. 1996). Petitioner satisfies each of these requirements.

First, the grand jury materials are needed to avoid the possible injustice of Petitioner being convicted and sentenced based on time-barred charges. If the grand jury transcripts reveal that the

3

April 2016 end date was not actually part of the conspiracy charged by the grand jury, that would strongly support Petitioner's statute of limitations argument and demonstrate that his prosecution was untimely. Allowing a conviction to stand under such circumstances would be a clear injustice.

"To support a motion for a judicially ordered disclosure of grand jury testimony, a party must show a 'particularized need' for the material. *See United States v. Moten, 582 F.2d 654, 662 (2d Cir. 1978)*. The request must amount to more than a request for authorization to engage in a fishing expedition. See id." In re Grand Jury Subpoena, 103 F.3d 234, 239 (2d Cir. 1996).

"A party makes a showing of particularized need by proving 'that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.' *Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979) (citing Moten, 582 F.2d at 663).*" In re Grand Jury Subpoena, 103 F.3d 234, 239 (2d Cir. 1996).

Second, Petitioner's need for disclosure outweighs any remaining need for grand jury secrecy. As the Second Circuit has recognized, "after the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it." *United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 234 (1940)*. Here, the grand jury proceedings have long since concluded, and the traditional reasons for secrecy, such as preventing flight by those who may be indicted and protecting active investigations, no longer apply. *See Douglas Oil Co. of Cal. v. Petrol Stops Nw., 441 U.S. 211, 219 (1979)*.

"Several circumstances diminish the need for secrecy in this case. First, the grand jury has concluded its investigation. Thus, release of the materials will not interfere with or delay the grand jury's deliberations. Second, the targets and witnesses have already been identified and presumably

4

know the information that they provided to the grand jury. Finally, the material will be released to government attorneys under the confidentiality provisions of Rule 6(e)(3)(B). Under these circumstances, the need for secrecy is minimal and does not outweigh the government's need for disclosure." In re Grand Jury Subpoena, 103 F.3d 234, 241 (2d Cir. 1996).

Third, Petitioner's request is narrowly tailored to cover only the material needed to address the statute of limitations issue. He seeks only those portions of the grand jury transcripts and related materials that bear on the actual scope of the charged conspiracy and the discrepancy between the overt acts and end date alleged in the indictment.

## **The Government's Own Filings and Statements Support Disclosure of the Grand Jury Materials**

The Government's response to Petitioner's § 2255 motion actually underscores the need for disclosure of the grand jury materials. In arguing that the prosecution was timely, the Government relies heavily on the April 2016 end date alleged in the indictment, asserting that "both charging instruments allege a conspiracy that continued until April 2016, which meant that Amirouche, who was indicted in February 2021, was plainly charged inside of the limitations period." (ECF No. 85 at 23).

"[A] vital distinction must be made between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime." *Grunewald, 353 U.S. at 405.*

The Grunewald quote incisively encapsulates the critical differentiation between acts of concealment carried out in furtherance of an ongoing conspiracy and those performed merely to cover up a completed crime. It sets the indispensable foundation for Petitioner's compelling

5

argument that the grand jury transcripts are absolutely necessary to determine on which side of this vital line the alleged acts fall.

However, the Government fails to address the critical question of whether the April 2016 date actually reflects the grand jury's findings or was simply added by the prosecutor. The grand jury transcripts are necessary to resolve this issue. If the transcripts show that the grand jury did not actually charge a conspiracy extending to April 2016, then the Government's statute of limitations argument collapses.

Moreover, statements by the prosecutor himself suggest that the April 2016 date may have been added after the fact. During the plea hearing, Assistant U.S. Attorney David Pitluck acknowledged that the Government was having difficulty securing loss affidavits from the alleged victim banks, stating: "Your Honor, we don't have an estimated restitution amount at this point because the victims in this case, the banks, have not provided loss affidavits." (Plea Tr. at 20). He further noted: "It's just a matter of whether the banks will assert claims to those losses." (Id. at 21).

In fact, there is no possibility for the banks to provide loss affidavits because there was no bank loss. This was a misrepresentation made to the Court. There were no victim banks, bank losses, intended bank losses or written off bank losses at any point during the entire period of the indictment. The Payment Processors earned approximately $1 million over the period of the indictment as documented in the 2255 petition.

The Grand Jury Transcripts will show that the defendant was not directing co-conspirators to interact with financial institutions as outlined in the overt acts of both the indictment and superseding information. The co-conspirators were interacting with payment processors and payment gateways. Ascertaining the grand jury transcripts will show that the plea lacks a factual

6

basis and there are no victim banks, further underscoring the point that the overt actions alleged in the indictment and superseding information were intentionally miscategorized.

"[A] guilty plea is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States, 523 U.S. 614, 618 (1998) (quoting Brady v. United States, 397 U.S. 742, 748 (1970))*. "Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy v. United States, 394 U.S. 459, 466 (1969)*.

These statements raise serious questions about the strength of the Government's evidence and the scope of the charged conspiracy. If the banks were unable or unwilling to provide loss affidavits, that suggests that the alleged fraudulent conduct may have ended much earlier than April 2016. The grand jury transcripts may shed light on this issue and are therefore critical to Petitioner's statute of limitations argument.

## The Court Should Order the Government to Produce the Charging Window Voted on by the Grand Jury

In addition to ordering the production of the grand jury transcripts and related materials, Petitioner respectfully requests that the Court direct the Government to immediately provide the charging window that was actually voted on by the grand jury. This information can be easily and quickly provided by the Government and will help clarify the statute of limitations issue.

If the charging window voted on by the grand jury does not extend to April 2016, that would be strong evidence that the prosecution was time-barred and that the later end date was unilaterally added by the prosecutor.

"[W]e have before us a typical example of a situation where the Government, faced by the bar of the three-year statute, is attempting to open the very floodgates against which Krulewitch

warned. We cannot accede to the proposition that the duration of a conspiracy can be indefinitely lengthened merely because the conspiracy is kept a secret, and merely because the conspirators take steps to bury their traces, in order to avoid detection and punishment after the central criminal purpose has been accomplished." *Grunewald, 353 U.S. at 405.*

The Grunewald excerpt perfectly encapsulates the exact type of prosecutorial overreach and abuse that Petitioner is valiantly seeking to prevent by obtaining the grand jury materials. It will indelibly impress upon the Court the momentous stakes involved and the urgent necessity for judicial intervention to safeguard the fairness and integrity of the proceedings.

Such a revelation would support Petitioner's request for the full grand jury transcripts and would bolster his statute of limitations argument.

The Court has the inherent authority to order the production of this information in the interests of justice and to ensure the fairness and integrity of these proceedings. *See United States v. Hasting, 461 U.S. 499, 505 (1983)* ("Guided by considerations of justice, and in the exercise of supervisory powers, federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress.").

"Supervisory power to reverse a conviction is not needed as a remedy when the error to which it is addressed is harmless since, by definition, the conviction would have been obtained notwithstanding the asserted error. Further, in this context, the integrity of the process carries less weight, for it is the essence of the harmless-error doctrine that a judgment may stand only when there is no 'reasonable possibility that the [practice] complained of might have contributed to the conviction.'" *Hasting, 461 U.S. at 506 (quoting Fahy v. Connecticut, 375 U.S. 85, 86-87 (1963)).*

This principle has direct and powerful application here. If, as Petitioner contends, the grand jury transcripts reveal that the April 2016 end date was not actually part of the conspiracy charged

by the grand jury, that would demonstrate a reasonable possibility that the untimely prosecution contributed to Petitioner's conviction, gravely undermining the integrity of the process. Disclosure is therefore not only appropriate, but necessary as a valid exercise of the Court's supervisory power.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court order the Government to immediately produce the requested grand jury transcripts and related materials pursuant to Federal Rule of Criminal Procedure 6(e) and applicable Second Circuit precedent. These materials are essential to Petitioner's ability to fully and fairly litigate his § 2255 motion and to respond to the Government's statute of limitations arguments.

Petitioner further requests that the Court direct the Government to promptly provide the charging window that was actually voted on by the grand jury, as this information will help clarify the statute of limitations issue and can be easily produced without delay.

Finally, Petitioner asks that the Court take notice of this motion and the serious questions it raises about the timeliness of the prosecution when considering his pending § 2255 motion.

Dated: July 12, 2024 (Thomson, IL)

Respectfully Submitted,

_____
/s/ Luke Andrew Williams
Luke Andrew Williams f/k/a Larby Amirouche
Pro Se Petitioner
Thomson Prison Camp

9