FILED
Jul 15, 2024, 8:47 PM
in the Clerk's Office
U.S. District Court,
EDNY, Brooklyn
Pro Se Office via
Box.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUKE ANDREW WILLIAMS f/k/a ) <br> LARBY AMIROUCHE, ) <br> ) <br> Petitioner-Defendant, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent-Plaintiff. ) | Case No. 21-CR-00064-KAM |

### DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DISCOVERY AND FOR JUDICIAL NOTICE

Defendant Luke Andrew Williams f/k/a Larby Amirouche, now proceeding *Pro Se*, hereby moves this Honorable Court, pursuant to Federal Rule of Criminal Procedure 16, the Fifth and Sixth Amendments to the United States Constitution, and the Court's inherent authority, for an order: (1) compelling the Government to immediately produce the second and third rounds of discovery previously provided to Mr. Williams' former counsel, Michael Kushner, Esq.; and (2) taking judicial notice of the record demonstrating Mr. Kushner's constitutionally deficient performance amounting to ineffective assistance of counsel. In support of this motion, Mr. Williams states as follows:

### BACKGROUND

The record unequivocally establishes that the Government made multiple voluminous productions of discovery to the defense in this matter. Specifically:

    a.    On March 9, 2021, the Government provided a cover letter indicating that discovery, including statements made by Mr. Williams, had been uploaded to a flash drive. (Petition at 36).

    b.      On April 20, 2021, the Government made a second production of discovery, which the Government represented was "bigger than the first one" and "ready to go into FedEx." (4/20/21 Tr. at 3).

    c.      On June 16, 2021, the Government made a third production of discovery. (Petition at 37).

While Mr. Kushner received all three rounds of discovery from the Government, he failed to upload the crucial second and third rounds to the Dropbox link accessible to Mr. Williams. Extensive searches by Mr. Williams, a python script scanning for the relevant bates numbers, and reviews by two forensic accountants retained by Mr. Williams have all confirmed the absence of this discovery in the materials provided. The missing discovery has severely hampered the forensic accountants' ability to complete their analysis.

    The Government's own arguments in response to Mr. Williams' comprehensive 99-page motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (the "Petition") highlight the materiality of the missing discovery. The Government asserted that "The record reflects that the Government provided voluminous discovery to Williams' counsel." (Gov't Resp. at 15). It is fundamentally unjust for the Government to rely on the purported production of "voluminous discovery" while Mr. Williams remains deprived of access to the full scope of that discovery due to his counsel's ineffectiveness.

    The record resoundingly demonstrates that Mr. Kushner provided constitutionally deficient representation amounting to ineffective assistance of counsel, in part by failing to review or discuss the discovery with Mr. Williams in any meaningful way. Mr. Kushner's self-interest in coercing Mr. Williams to plead guilty is evident from his failure to properly review the discovery. Had Mr. Kushner diligently examined the second and third rounds of discovery,

which consisted primarily of documents from payment processors and financial institutions, he would have recognized the lack of actual loss and the untenability of the Government's loss calculations. Instead, Mr. Kushner pushed Mr. Williams to accept a plea deal without a comprehensive understanding of the evidence.

During the plea hearing, there was an exchange regarding the Guidelines range calculation:

> THE COURT: I think that we had it and it was a draft and we saw an error and it was going to be corrected. I don't think we have the corrected version. There was just a miscite to a -- to a provision in the criminal code.
>
> MR. PITLUCK: Yes, Your Honor. And I think it was in the sentencing guideline, there was sophisticated means section. It is --
>
> THE COURT: It's paragraph 2, and the sophisticated means was miscited. It should be 2B1.1(b)(10)(c), correct?
>
> MR. PITLUCK: Yes.

(Plea Tr. at 17-18). It strains credulity to believe that Mr. Kushner could have competently agreed to these Guidelines stipulations without having thoroughly reviewed the second and third rounds of discovery, which contained the bulk of the relevant financial evidence. His acquiescence to the Government's loss figures and enhancements, absent a diligent examination of the discovery, further demonstrates his ineffective assistance.

Crucially, there is no evidence of any actual loss to the banks in this case. The forensic accounting, though hampered by the missing discovery, has found no indication of bank losses. This is unsurprising given the nature of payment processing, as detailed in Mr. Williams'

3

Petition. (Petition at 80-83, ECF No. 73). Banks only made money on the transactions; there was no intended or actual loss. In fact, payment processors earned approximately $1 million during the period of the indictment. (Petition at Ex. R). The Government has not provided any evidence of losses, nor does any exist. None of the banks listed on the restitution order are actually owed any money. (Petition at 80-83; Ex. R).

Mr. Kushner's agreement to the entire contents of the PSR, including the erroneous loss amounts and restitution owed to banks, despite clear evidence to the contrary, constitutes an actual conflict of interest. (Petition at 49). His failure to challenge these baseless figures, which directly contradicted his client's interests and the facts of the case, violated his duty of loyalty and rendered his representation constitutionally deficient. *See United States v. Schwarz, 283 F.3d 76, 91 (2d Cir. 2002)* (defining an actual conflict as one where "the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action").

The Government's withholding of the second and third rounds of discovery from Mr. Williams, coupled with Mr. Kushner's ineffective assistance in failing to review and utilize that discovery to mount a competent defense, has resulted in serious violations of Mr. Williams' Fifth Amendment right to due process and Sixth Amendment right to the effective assistance of counsel. The missing discovery is material to Mr. Williams' ability to demonstrate his actual innocence and the deficiencies in his legal representation. Its absence severely prejudices his ability to vindicate his rights in these § 2255 proceedings.

The Supreme Court has long recognized that due process requires the Government to disclose material evidence favorable to the accused. *Brady v. Maryland, 373 U.S. 83, 87 (1963)*. This duty extends to post-conviction proceedings. *See Strickler v. Greene, 527 U.S. 263, 280-81 (1999)*. By touting the "voluminous discovery" it provided to the defense while simultaneously

4

depriving Mr. Williams of access to that very discovery, the Government has engaged in fundamentally unfair gamesmanship that offends due process.

Similarly, the Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel at all critical stages of the proceedings. *Strickland v. Washington, 466 U.S. 668, 686 (1984).* Mr. Kushner's failure to review the discovery with Mr. Williams, to investigate the lack of actual loss, and to challenge the Government's loss calculations and restitution amounts fell far below the standard of reasonable professional assistance. *See Greiner v. Wells, 417 F.3d 305, 321 (2d Cir. 2005); Strickland v. Washington, 466 U.S. 668 (1984).*

Mt. Kushner's deficient performance prejudiced depriving Mr. Williams of the ability to make informed decisions about his case and by exposing him to unwarranted sentencing enhancements and restitution obligations.

In light of these serious constitutional violations, it is imperative that Mr. Williams be provided with the missing discovery to properly support his § 2255 motion and to expose the full extent of his counsel's ineffectiveness. The Court should not countenance the Government's efforts to rely on discovery that has been withheld from the defendant, nor should it turn a blind eye to the pervasive evidence of Mr. Kushner's constitutionally deficient representation.

## ARGUMENT

### I. Mr. Williams Is Entitled To The Missing Discovery Under Rule 16, The Fifth Amendment, And The Sixth Amendment.

Mr. Williams' right to the missing discovery is firmly grounded in Federal Rule of Criminal Procedure 16, the Fifth Amendment's guarantee of due process, and the Sixth Amendment's assurance of effective assistance of counsel. Rule 16(a)(1)(E) requires the government to permit the defendant to inspect and copy documents and objects within its

possession, custody, or control if the item is material to preparing the defense. Fed. R. Crim. P. 16(a)(1)(E)(i).

The Second Circuit has held that evidence is material under Rule 16 "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Stevens, 985 F.2d 1175, 1180 (2d Cir. 1993) (quoting United States v. Lloyd, 992 F.2d 348, 351 (D.C. Cir. 1993))*. Materiality is a "low threshold; the evidence need not be exculpatory, but only relevant to the fairness of the trial." *United States v. Bagley, 473 U.S. 667 (1985)*.

The second and third rounds of discovery easily satisfy this materiality standard. They are unquestionably relevant to Mr. Williams' ability to substantiate his claims and rebut the Government's assertions in his § 2255 proceedings. The complete discovery will demonstrate the lack of actual loss and further expose the baselessness of the Government's loss calculations and restitution amounts. Mr. Williams cannot effectively vindicate his rights without access to the full discovery.

As the Supreme Court recognized in *United States v. Bagley*, "Impeachment evidence, however, as well as exculpatory evidence, falls within the Brady rule. *See Giglio v. United States, 405 U.S. 150, 154 (1972).* Such evidence is 'evidence favorable to an accused,' *Brady, 373 U.S., at 87,* so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." *473 U.S. 667, 676 (1985).* The missing discovery, even if not directly exculpatory, could be used to impeach the government's witnesses and potentially alter the trial's outcome, thus underscoring its materiality.

Beyond Rule 16, the missing discovery implicates Mr. Williams' due process rights under the Fifth Amendment. The Government's Brady obligations extend to post-conviction proceedings, requiring disclosure of material evidence favorable to the defendant. *See Strickler, 527 U.S. at 280-81.* The Government cannot simultaneously tout the "voluminous discovery" it provided while withholding that very discovery from Mr. Williams. Such conduct offends basic notions of fairness and due process.

The Supreme Court in *Brady v. Maryland* held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *373 U.S. 83, 87 (1963).* The Court emphasized that this rule is grounded in the "avoidance of an unfair trial to the accused," recognizing that "our system of the administration of justice suffers when any accused is treated unfairly." Id.

Here, the Government's failure to provide Mr. Williams with the second and third rounds of discovery, which his counsel received but never shared with him, violates the core holding of Brady. This missing discovery is unquestionably material to Mr. Williams' ability to substantiate his claims of actual innocence and ineffective assistance of counsel in the instant § 2255 proceedings. Its continued absence severely prejudices his ability to vindicate his constitutional rights and undermines the fairness and integrity of these post-conviction proceedings.

As the Brady Court made clear, the duty to disclose favorable evidence is absolute and is not contingent on the good faith of the prosecution. Id. at 87. Having acknowledged the "voluminous discovery" it provided to the defense, the Government cannot now equivocate and deny Mr. Williams access to that critical evidence. To do so would not only violate Brady but would offend the basic tenets of fairness and due process that are essential to our system of

7

justice. This Court should not countenance such a flagrant violation of Mr. Williams' rights and should order the immediate disclosure of the missing discovery.

The missing discovery also bears directly on Mr. Williams' Sixth Amendment right to the effective assistance of counsel. Mr. Kushner's failure to review the discovery with Mr. Williams, to investigate the lack of actual loss, and to challenge the Government's loss calculations and restitution amounts constituted deficient performance that prejudiced Mr. Williams. *See Greiner, 417 F.3d at 321; Tarricone, 996 F.2d at 1419*. Without access to the full discovery, Mr. Williams is severely hampered in his ability to demonstrate the extent of his counsel's ineffectiveness and the resulting prejudice.

In sum, the missing discovery is critical to Mr. Williams' ability to vindicate his Fifth and Sixth Amendment rights in these § 2255 proceedings. The Court should compel its immediate production to ensure the fairness and integrity of this post-conviction review.

## II. The Court Should Take Judicial Notice Of Mr. Kushner's Ineffective Assistance As Demonstrated By The Record.

The record before this Court resoundingly demonstrates that Mr. Kushner provided constitutionally deficient representation amounting to ineffective assistance of counsel, in part by failing to review or discuss the discovery with Mr. Williams in any meaningful way.

The Second Circuit has recognized that an attorney's failure to review discovery materials with a defendant can constitute ineffective assistance of counsel. *See Greiner v. Well, 417 F.3d 305 ,321 (2d Cir.2005).* Here, Mr. Kushner's billing records reveal a shocking neglect of the discovery, with only cursory references to uploading and processing, and a single paltry 1-hour entry for substantive review. (Petition at 39, 77; Ex. C). This falls far below the standard of reasonable professional assistance.

Moreover, at the June 1, 2021, status conference, Mr. Kushner assured the Court that he would review the discovery with Mr. Williams by mid-September. (6/1/21 Tr. at 3-4). No such review ever took place, as confirmed by Mr. Kushner's own billing records. (Petition at Ex. C). This broken promise to the Court further evidences Mr. Kushner's deficient performance.

The prejudice flowing from Mr. Kushner's ineffectiveness is manifest. As the Second Circuit recognized in *Greiner v. Wells,* "The prejudice flowing from Mr. Kushner's ineffectiveness is manifest. Without a thorough review of the discovery, Mr. Williams was deprived of the ability to make informed decisions about his case, participate meaningfully in his own defense, and develop a comprehensive strategy to challenge the Government's allegations. (Petition at 39-40). This prejudice is ongoing, as Mr. Williams still lacks access to the complete discovery necessary to vindicate his rights in these § 2255 proceedings." 417 F.3d at 321.

To prove ineffective assistance of counsel, Mr. Williams must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)*. The record here amply satisfies both prongs.

Federal Rule of Evidence 201 permits the Court to take judicial notice of facts that are not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The Court may take judicial notice on its own at any stage of the proceeding. Fed. R. Evid. 201(c)(1), (d). Here, the Court's own docket and transcripts, as well as Mr. Kushner's billing records submitted with the Petition, provide indisputable evidence of Mr. Kushner's ineffective assistance. The

9

Court should take judicial notice of these facts in considering Mr. Williams' § 2255 motion and the instant discovery dispute.

## CONCLUSION

For the foregoing reasons, Mr. Williams respectfully requests that the Court enter an order:

a. Compelling the Government to immediately produce the missing second and third rounds of discovery, via thumb drive or secure download link, to Mr. Williams at the following address: 835 Woodbine Road, Highland Park, Illinois 60035. Alternatively, the Government can provide a secure download link to lukewilliams317@gmail.com.

b. Taking judicial notice of the record demonstrating Mr. Kushner's ineffective assistance of counsel, including his failure to review the discovery with Mr. Williams as promised to the Court, his acquiescence to the Government's loss calculations and restitution amounts absent a diligent review of the discovery, and his actual conflict of interest in agreeing to baseless figures that directly contradicted his client's interests; and

c. Granting such other and further relief as the Court deems just and proper.

Dated: July 15, 2024
Thomson, Illinois

Respectfully Submitted,

_____
/s/ Luke Williams
Luke Williams f/k/a Larby Amirouche
Pro Se Defendant
Thomson Prison Camp