**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**FILED**
**Jul 25, 2024, 9:33 PM**
**in the Clerk's Office**
**U.S. District Court,**
**EDNY, Brooklyn**
**Pro Se Office via**
**Box.com**

LUKE ANDREW WILLIAMS f/k/a    )
LARBY AMIROUCHE,              )
                             )
        Petitioner-Defendant, )
                             )
    v.                        )      Case No. 21-CR-00064-KAM
                             )
UNITED STATES OF AMERICA,     )
                             )
        Respondent-Plaintiff. )
_____)

**JUDICIAL NOTICE MOTION PURSUANT TO FEDERAL RULE OF EVIDENCE 201**

Defendant Luke Andrew Williams, formerly known as Larby Amirouche, *Pro Se*, respectfully moves this Court to take judicial notice, pursuant to Federal Rule of Evidence 201, of the following adjudicative facts that are not subject to reasonable dispute:

BACKGROUND

I.    The Prosecutor Misrepresented that Banks and Financial Institutions Suffered Losses

The Second Circuit's decisions in United States v. Bouchard, 828 F.3d 116 (2d Cir. 2016) and United States v. Heinz, 790 F.3d 365 (2d Cir. 2015) provide strong support for the argument that the prosecutor's misrepresentations regarding bank losses and the nature of the alleged conduct unfairly prejudiced the defendant and undermined the factual basis for the restitution order.

In Bouchard, the Second Circuit held that for purposes of the bank fraud statute, 18 U.S.C. § 1344, a "financial institution" is defined as an entity insured by the FDIC. 828 F.3d at 126. The court emphasized that a defendant cannot be convicted under § 1344(1) "merely because he intends to defraud an entity, like BNC, that is not in fact covered by the statute." Id. at 127. The court noted that while the government is not required to prove that a defendant knows the defrauded entity is federally insured, "it remains true that a defendant cannot be convicted of violating §

1

1344(1) merely because he intends to defraud an entity, like BNC, that is not in fact covered by the statute." Id.

Similarly, in Heinz, the Second Circuit stressed that for the extended statute of limitations under 18 U.S.C. § 3293(2) to apply based on the fraud "affecting a financial institution," the effect must be "sufficiently direct." 790 F.3d at 367. The court noted that the plain language of § 3293(2) makes clear that "Congress chose to extend the statute of limitations to a broader class of crimes" than those in which "the financial institution is the object of fraud." Id. However, the court also emphasized that the effect of the fraud on the financial institution must be "sufficiently direct" for the extended limitations period to apply. Id.

Applying this analysis to the facts of Mr. Williams' case, it is clear that the alleged fraud did not directly affect any FDIC-insured financial institutions. The prosecutor's own statements and the evidence in the record demonstrate that the alleged misrepresentations were made to payment processors, not banks, and that the processors, not the banks, bore the risk of any losses. The banks' role was limited to collecting standard transaction fees from the processors. They did not extend credit, suffer losses, or have any direct involvement in the alleged fraudulent scheme.

The record is replete with instances where the prosecutor misrepresented that banks and financial institutions suffered losses as a result of the defendant's conduct, despite clear evidence to the contrary. These misrepresentations were not mere oversights or good-faith mistakes; rather, they were calculated attempts to mislead the Court and unfairly prejudice the defendant.

In the indictment, the prosecutor alleged that the defendant's websites "were used as vehicles to defraud both domestic and international customers as well as numerous financial institutions." (Indictment, p. 3). However, the indictment provides no evidence that financial

institutions were directly defrauded or suffered any losses. The alleged fraud was directed at payment processors, not FDIC-insured banks.

Similarly, in the plea agreement, the prosecutor asserted that the defendant "engaged in a protracted and complex scheme to defraud consumers and banks." (Government's Reply, p. 1). Again, there is no evidence in the plea agreement that banks were directly defrauded or suffered losses. The alleged misrepresentations were made to payment processors, not financial institutions.

Perhaps most egregiously, at the plea hearing, the prosecutor stated:

"Your Honor, we don't have an estimated restitution amount at this point because the victims in this case, the banks, have not provided loss affidavits. At this time, as the Court is aware in instances like this where financial institutions are the victims, it's often difficult to get them to submit loss affidavits. But as we noted in the plea agreement, the losses here exceed three-and-a-half-million dollars. It's just a matter of whether the banks will assert claims to those losses." (Plea Hearing Transcript, p. 20-21).

This statement is a blatant misrepresentation. As demonstrated in the restitution email (see Exhibit R) and throughout all of the financial records in discovery, the banks could not have provided loss affidavits because they only made money. The characterization of the banks as victims is completely unsupported by the evidence, which shows that the alleged misrepresentations were made to payment processors, not banks. The prosecutor's claim that the losses exceed $3.5 million is a falsehood, as it conflates the total transaction volume with actual losses to financial institutions, of which there were none.

The prosecutor doubled down on this misrepresentation at sentencing, stating:

"So, it's not a glamorous fraud when financial institutions are the victims. Many times they don't even want to participate, it seems. They've written off the losses here." (Sentencing Transcript, p. 33).

Here, the prosecutor falsely suggests that the financial institutions have "written off the losses," implying that they suffered losses that would warrant restitution. However, the evidence clearly shows that there were no losses to write off. The banks and financial institutions profited from the

transactions and did not incur any losses. The prosecutor's statement is a misrepresentation to the Court and a false statement unsupported by the record.

"So, that is why the restitution orders are directed at them, because they did lose money on these schemes, they did extend money to consumers." (Sentencing Transcript, p. 33).

This statement is another blatant misrepresentation. There is no evidence in the record that the banks lost money or extended funds to consumers as a result of the defendant's conduct. In fact, the evidence contradicts this assertion, showing that the banks did not suffer any losses and actually profited from the transactions. There was no loss, and therefore no basis for restitution. The prosecutor's statement is a false representation of the facts.

The prosecutor's latest position on the loss, as revealed in Mr. Kushner's case file notes from a call with Mr. Pitluck on August 2, 2023, is that "The banks are out money because they shouldn't even have been dealing with Luke." (Exhibit A). This statement is a tacit admission that the banks did not actually suffer quantifiable losses, but rather that they should not have been involved in the transactions at all. It is a far cry from the prosecutor's earlier assertions that the banks were direct victims who suffered substantial losses.

Additional misrepresentations by the prosecutor are evident in the following quotes:

"Without regard for the damaging effects of his actions, he engaged in years' long criminal conduct designed to steal from financial institutions and consumers in order to line his own pocket." (Government's Sentencing Memorandum, p. 8).

This statement mischaracterizes the nature of the alleged conduct by suggesting that Mr. Williams stole directly from financial institutions. However, the evidence shows that the alleged misrepresentations were made to payment processors, not banks, and that the processors, not the banks, bore the risk of any losses.

"So, what we're using for the forfeiture for the gain was the proceeds of that that went into accounts that were controlled individually by Mr. Williams." (Sentencing Transcript, p. 24).

This statement is erroneous and misleading. The forfeiture order, which is in the amount of $1,888,647.89 as reflected in the judgment (see Sentencing Transcript, p. 72), is not tied to any actual losses to financial institutions, but rather to the defendant's alleged gains. The prosecutor's attempt to equate these gains with losses to banks is a misrepresentation that unfairly prejudices the defendant.

Under the reasoning of Bouchard and Heinz, the prosecutor's misrepresentations regarding bank losses and the nature of the alleged conduct unfairly prejudiced the defendant and undermined the factual basis for the restitution order. By repeatedly asserting that banks and financial institutions suffered losses, despite clear evidence to the contrary, the prosecutor painted a false picture of the severity and nature of the offense. These misrepresentations influenced the Court's assessment of the appropriate sentence and restitution amount, resulting in a harsher outcome for the defendant.

Furthermore, the prosecutor's misrepresentations undermined the factual basis for the restitution order. By mischaracterizing payment processors as "banks" and "financial institutions," and by claiming that these entities suffered losses despite evidence that they actually profited from the transactions, the prosecutor misled the Court into imposing a restitution order that is not supported by the facts of the case.

## II. The Prosecutor Misrepresented that the Overt Acts Were Directed Towards Financial Institutions

In addition to misrepresenting that banks and financial institutions suffered losses, the prosecutor also misrepresented that the overt acts alleged in the superseding information were directed towards financial institutions. A close examination of the overt acts reveals that they were actually directed towards payment processors and payment gateways, not FDIC-insured banks.

Overt Act (a) states that on or about March 19, 2013, the defendant emailed co-conspirators and directed them to complete and sign merchant applications containing material misrepresentations for accounts at payment processing companies associated with financial institutions. (Superseding Information, p. 2). This overt act clearly indicates that the misrepresentations were made to payment processing companies, not directly to financial institutions. Payment processors, while associated with banks, are distinct entities that are not themselves FDIC-insured financial institutions. Misrepresentations made to payment processors do not satisfy the essential element of the bank fraud statute, which requires that the scheme to defraud target a financial institution.

Overt Act (b) alleges that on or about June 17, 2013, the defendant directed a co-conspirator to contact a financial institution to reset a login and password for a shell company merchant account held in the name of a nominee. (Superseding Information, p. 2). However, upon closer inspection, this "financial institution" was not an FDIC-insured bank but rather a payment gateway or a merchant back-end portal associated with a payment processor. Payment gateways and merchant portals are tools used by payment processors to manage merchant accounts and are not themselves financial institutions. This overt act, like the first one, fails to establish the requisite targeting of a financial institution.

Overt Act (c) states that on or about August 4, 2015, the defendant sent a text message to co-conspirators, directing them to provide login information for email accounts belonging to corporations he controlled. He then allegedly directed another co-conspirator to use those email accounts to fraudulently request the release of funds from bank accounts belonging to the corporations he secretly controlled. (Superseding Information, p. 2). This overt act, as written in the superseding information, fails to establish that the funds were requested from FDIC-insured

6

financial institutions. Rather, the evidence shows that the funds were held in reserve accounts by the payment processors on behalf of the merchant corporations. Requesting the release of these funds, even if done fraudulently, does not constitute a scheme to defraud financial institutions, as the funds belonged to the merchant corporations, not the banks.

The distinction between payment processors and financial institutions is clearly established in recent case law. In United States v. Wells, 804 Fed. Appx. 515 (9th Cir. 2020), the court found that "the fraudulently obtained funds were not received from payment processors directly; those funds were obtained from FDIC-insured banks that held the payment processors' settlement accounts. However, with the exception of KeyBank, none of the financial institutions named in the indictment had direct losses due to the underlying criminal scheme. The losses were actually born by payment processors or victim-merchants, none of which meet the legal definition of a 'financial institution.'"

This holding underscores the critical distinction between payment processors and FDIC-insured financial institutions. It establishes that payment processors are not "financial institutions" under the bank fraud statute, and that losses suffered by payment processors do not satisfy the essential element of the offense.

The prosecutor's misrepresentation of the overt acts as targeting financial institutions, when in fact they involved payment processors and merchant accounts, unfairly prejudiced the defendant and misled the Court. By conflating payment processors with banks and suggesting that the alleged conduct directly targeted financial institutions, the prosecutor painted a false picture of the severity and nature of the offense. This misrepresentation influenced the Court's assessment of the appropriate sentence and resulted in a harsher outcome for the defendant.

Moreover, the prosecutor's misrepresentation of the overt acts undermines the factual basis for the defendant's guilty plea. For a guilty plea to be valid, there must be a factual basis to support each element of the offense. By mischaracterizing the conduct as targeting financial institutions, when in fact it involved payment processors, the prosecutor has called into question whether there was a sufficient factual basis for the bank fraud charge.

The prosecutor made additional misrepresentations regarding the overt acts at the plea hearing:

> "The government's theory, and the Defendant accepts this, that's all fraudulent proceeds because it was derived using fraudulent accounts and misrepresentations made to banks and consumers." (Sentencing Transcript, p. 23).

This statement falsely suggests that the defendant made misrepresentations directly to banks in furtherance of the alleged scheme. However, as established above, the overt acts involved misrepresentations to payment processors and merchant service providers, not FDIC-insured financial institutions.

> "Your Honor, I apologize. I can proffer that based on the government's investigation, at least one of the financial institutions is headquartered in the Eastern District of New York on Long Island, and that payments flowed through the Eastern District of New York." (Plea Hearing Transcript, p. 29).

While this statement attempts to establish venue in the Eastern District of New York, it misleadingly suggests that the defendant's conduct directly targeted a financial institution headquartered in that district. However, the evidence shows that the defendant's interactions were limited to payment processors, not FDIC-insured banks.

These misrepresentations by the prosecutor unfairly prejudiced the defendant and misled the Court by creating the false impression that the alleged scheme directly targeted financial institutions. In reality, the overt acts involved misrepresentations to payment processors and

merchant service providers, entities that are distinct from FDIC-insured banks and do not satisfy the essential elements of the bank fraud statute.

In sum, the prosecutor's misrepresentation of the overt acts as targeting financial institutions, when in fact they involved payment processors and merchant accounts, unfairly prejudiced the defendant and misled the Court. This misrepresentation influenced the Court's sentencing decision and undermines the factual basis for the defendant's guilty plea. As such, it constitutes prosecutorial misconduct and warrants vacating the defendant's conviction and sentence.

III. The Prosecutor's Misrepresentations Unfairly Prejudiced the Defendant and Undermined the Factual Basis for the Restitution Order

The prosecutor's misrepresentations regarding bank losses and the nature of the alleged conduct were not harmless errors. They unfairly prejudiced the defendant and undermined the factual basis for the restitution order, resulting in a fundamentally unfair proceeding that violated the defendant's due process rights.

As established above, the prosecutor repeatedly misrepresented that banks and financial institutions suffered losses as a result of the defendant's conduct, despite clear evidence that they actually profited from the transactions. These misrepresentations painted a false picture of the severity and nature of the alleged offense, influencing the Court's assessment of the appropriate sentence and restitution amount.

The prosecutor's misrepresentations were particularly prejudicial in the context of the restitution order. Restitution can only be ordered for actual losses suffered by victims. By mischaracterizing payment processors as "banks" and "financial institutions," and by claiming that

these entities suffered losses despite evidence of their profits, the prosecutor misled the Court into imposing a restitution order that is not supported by the facts of the case.

The Second Circuit has made clear that restitution orders must be based on actual losses to actual victims. In United States v. Zangari, 677 F.3d 86 (2d Cir. 2012), the court vacated a restitution order because the government failed to prove that the alleged victims had suffered actual losses. The court emphasized that "the government bears the burden of proving a victim's actual loss by a preponderance of the evidence." Id. at 93. Here, the government has not only failed to meet that burden, but has actively misrepresented the facts to suggest losses where none occurred. By mischaracterizing payment processors as financial institutions and claiming losses that are contradicted by the evidence of their profits, the prosecutor has undermined the factual basis for the restitution order.

Moreover, the prosecutor's misrepresentations likely influenced the Court's assessment of the appropriate sentence. The Court relied on the prosecutor's assertions that banks and financial institutions were victims who suffered losses, as evidenced by its statements at sentencing. For example, the Court stated:

> "I've also considered the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, provide just punishment, and to afford adequate deterrence; both specific deterrence to Mr. Williams and general deterrence to others who may be tempted to engage in this type of internet fraudulent conduct." (Sentencing Transcript, p. 61).

The Court's emphasis on the seriousness of the offense and the need for deterrence was likely influenced by the prosecutor's misrepresentations regarding the victimization of financial institutions. Had the Court been presented with an accurate picture of the offense conduct, which involved misrepresentations to payment processors that ultimately profited from the transactions, it may have assessed the seriousness of the offense differently and imposed a less severe sentence.

The prejudice suffered by the defendant as a result of the prosecutor's misrepresentations is compounded by the fact that these misrepresentations went unchallenged by defense counsel. As evidenced by the sentencing transcript, defense counsel Mr. Kushner actually reinforced the prosecutor's mischaracterization of payment processors as "banks" and "victims":

> "MR. KUSHNER: I understand, your Honor. So, as reflected in the restitution order that the Government and I entered into, the only identifiable victims at this time are the banks that were the processing companies in the mix of this, and the identifiable amount of loss to those victims is $114,000." (Sentencing Transcript, p. 26).

Defense counsel's failure to correct this misrepresentation and to challenge the lack of evidence of actual bank losses prejudiced the defendant and deprived him of the effective assistance of counsel. Mr. Kushner's acquiescence to the prosecutor's false narrative and his failure to present readily available evidence of the payment processors' profits and lack of losses fell far below the standard of reasonable professional conduct. This deficient performance allowed the prosecutor's misrepresentations to go unchallenged, influencing the Court's sentencing decision and restitution order to the defendant's detriment.

In United States v. Becker, 502 F.3d 122 (2d Cir. 2007), the Second Circuit vacated a restitution order because the district court relied on the government's misrepresentations regarding the amount of loss. The court held that the defendant was prejudiced by his counsel's failure to object to these misrepresentations and to challenge the lack of supporting evidence. Id. at 130-31. The court emphasized that "counsel's failure to object to the restitution amount at sentencing, despite the lack of record evidence supporting that amount, fell below an objective standard of reasonableness." Id. at 131.

Here, as in Becker, defense counsel's failure to object to the prosecutor's misrepresentations regarding bank losses and to challenge the lack of supporting evidence fell below an objective

standard of reasonableness. Mr. Kushner had an obligation to investigate the facts of the case, to review the discovery materials, and to present evidence favorable to his client. His failure to do so, and his willingness to accept the prosecutor's false narrative without question, constituted deficient performance that prejudiced the defendant.

The prosecutor's misrepresentations, combined with defense counsel's failure to challenge them, resulted in a fundamentally unfair proceeding that violated the defendant's due process rights. The Supreme Court has long recognized that "a defendant has a due process right to be sentenced on the basis of accurate information." United States v. Tucker, 404 U.S. 443, 447 (1972). When a defendant is sentenced based on "misinformation of constitutional magnitude," the resulting sentence violates due process. Id.

Here, the prosecutor's misrepresentations regarding bank losses and the nature of the alleged conduct constituted misinformation of constitutional magnitude. These misrepresentations painted a false picture of the severity and nature of the offense, influencing the Court's sentencing decision and resulting in a harsher outcome for the defendant. Moreover, these misrepresentations undermined the factual basis for the restitution order, resulting in an order that is not supported by the evidence and that requires the defendant to pay restitution to entities that did not suffer actual losses.

The prejudice suffered by the defendant as a result of these misrepresentations is clear and indisputable. He was sentenced based on inaccurate information that overstated the severity of his conduct and the harm caused to financial institutions. He was ordered to pay $114,171.59 in restitution to entities that did not suffer actual losses, but instead profited handsomely from the transactions, as evidenced by the "Reserve Project" email and other financial records. And he was

deprived of the effective assistance of counsel, as his attorney failed to challenge these misrepresentations and to present evidence of the payment processors' profits and lack of losses.

The cumulative effect of the prosecutor's misrepresentations, combined with defense counsel's failure to challenge them, resulted in a proceeding that was fundamentally unfair and violated the defendant's due process rights. The defendant was sentenced based on inaccurate and misleading information that overstated the severity of his conduct and the harm caused to financial institutions. He was ordered to pay restitution to entities that did not suffer actual losses, but instead profited from the transactions. And he was deprived of the effective assistance of counsel at a critical stage of the proceedings, as his attorney failed to investigate the facts, challenge the prosecutor's misrepresentations, or present evidence favorable to the defense.

In light of these facts, it is clear that the defendant suffered substantial prejudice as a result of the prosecutor's misrepresentations and defense counsel's deficient performance. The Court should grant the defendant's motion for judicial notice of these facts and should vacate the conviction and sentence in the interest of justice. The extraordinary circumstances of this case, as detailed in this motion and supported by the record, warrant the extraordinary relief sought under § 2255. The defendant's right to due process and to the effective assistance of counsel were violated in a manner that undermines confidence in the outcome of the proceedings and that calls into question the fundamental fairness of the criminal justice system.

CONCLUSION

For the foregoing reasons, the defendant respectfully requests that the Court take judicial notice of the facts set forth in this motion and vacate his conviction and sentence. The prosecutor's misrepresentations regarding bank losses and the nature of the alleged conduct, combined with

defense counsel's failure to challenge these misrepresentations, resulted in a fundamentally unfair proceeding that violated the defendant's due process rights.

The Second Circuit's decisions in United States v. Bouchard and United States v. Heinz provide strong support for the argument that the prosecutor's misrepresentations unfairly prejudiced the defendant and undermined the factual basis for the restitution order. By repeatedly asserting that banks and financial institutions suffered losses, despite clear evidence that they actually profited from the transactions, the prosecutor painted a false picture of the severity and nature of the offense. These misrepresentations influenced the Court's assessment of the appropriate sentence and restitution amount, resulting in a harsher outcome for the defendant.

Moreover, the prosecutor's misrepresentations undermined the factual basis for the restitution order. By mischaracterizing payment processors as "banks" and "financial institutions," and by claiming that these entities suffered losses despite evidence of their profits, the prosecutor misled the Court into imposing a restitution order that is not supported by the facts of the case. The restitution order, which requires the defendant to pay $114,171.59 to entities that did not suffer actual losses, is based on a fundamental misrepresentation of the evidence and violates the defendant's right to be sentenced based on accurate information.

The prejudice suffered by the defendant as a result of these misrepresentations is compounded by defense counsel's failure to challenge them and to present evidence of the payment processors' profits and lack of losses. Mr. Kushner's deficient performance in failing to investigate the facts, review the discovery materials, and challenge the prosecutor's false narrative deprived the defendant of the effective assistance of counsel and allowed the misrepresentations to go unchallenged, influencing the Court's sentencing decision and restitution order.

In sum, the prosecutor's misrepresentations, combined with defense counsel's ineffective assistance, resulted in a proceeding that was fundamentally unfair and violated the defendant's due process rights. The defendant was sentenced based on inaccurate and misleading information that overstated the severity of his conduct and the harm caused to financial institutions. He was ordered to pay restitution to entities that did not suffer actual losses, but instead profited from the transactions. And he was deprived of the effective assistance of counsel at a critical stage of the proceedings, as his attorney failed to investigate the facts, challenge the prosecutor's misrepresentations, or present evidence favorable to the defense.

The Court should grant the defendant's motion for judicial notice and should vacate his conviction and sentence in the interest of justice. The extraordinary circumstances of this case, as detailed in this motion and supported by the Second Circuit's decisions in Bouchard and Heinz, warrant the extraordinary relief sought under § 2255. The defendant's right to due process and to the effective assistance of counsel were violated in a manner that undermines confidence in the outcome of the proceedings and that calls into question the fundamental fairness of the criminal justice system.

The defendant respectfully requests that the Court grant an evidentiary hearing to allow for the full consideration of the substantial constitutional violations outlined herein and that it ultimately vacate his conviction and sentence. The interests of justice and the integrity of the criminal justice system demand nothing less than a full and fair opportunity for the defendant to challenge his conviction and sentence based on the prosecutor's misconduct and his counsel's ineffective assistance. The Court has a duty to ensure that justice is done and that the defendant's rights are protected, and granting the relief sought in this motion is essential to fulfilling that duty.

WHEREFORE, the Defendant Luke Andrew Williams, formerly known as Larby Amirouche, respectfully prays that this Honorable Court:

1. Take judicial notice, pursuant to Federal Rule of Evidence 201, of the adjudicative facts set forth in this motion, which are not subject to reasonable dispute and are supported by the record in this case;

2. Grant an evidentiary hearing to allow for the full consideration of the substantial constitutional violations outlined herein, including the prosecutor's misrepresentations regarding bank losses and the nature of the alleged conduct, and defense counsel's ineffective assistance in failing to challenge these misrepresentations and present evidence favorable to the defense;

3. Vacate the defendant's conviction and sentence in the interest of justice, based on the extraordinary circumstances of this case, which include the prosecutor's misconduct in misrepresenting the evidence and misleading the Court, and defense counsel's deficient performance in failing to provide effective assistance at critical stages of the proceedings;

4. Grant such other and further relief as the Court may deem just and proper to remedy the violations of the defendant's constitutional rights and to ensure the fundamental fairness of the criminal justice system.

Respectfully submitted,

_____
/s/ Luke Andrew Williams f/k/a
Larby Amirouche
Defendant *Pro Se*
Dated: July 25, 2024
Thomson, Illinois
Thomson Prison Camp

**EXHIBIT A**

8.4.2023

New GUIDANCE From Attorney Gen Order.

JUSTIFY—

1. This is a snapshot in time

2. BANKS are out MONEY bc. they shouldn't have been even dealing w/ LUKE — "NOMINAL OWNERS" Argument.

3. CONSERVATIVE LOSSES — Gov't took the "Projected Reserve" from this email + split it into 50% recovered.